**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

APPLE INC.,

        Plaintiff,

v.

MOTOROLA MOBILITY, INC.

        Defendant.

Case No. 11-cv-178-BBC

## MOTOROLA MOBILITY, INC.'S ANSWER AND COUNTERCLAIMS TO APPLE INC.'S COUNTERCLAIMS

Defendant Motorola Mobility, Inc. ("Motorola") hereby responds to Counterclaim-Plaintiff Apple Inc.'s ("Apple") Counterclaims, filed in the above-captioned matter on March 11, 2011, and asserts affirmative defenses as follows:

### ANSWER TO APPLE'S COMPLAINT

#### GENERAL DENIAL

Unless expressly admitted below, Motorola denies each and every allegation Apple has set forth in its Counterclaims.

#### RESPONSE TO APPLE'S SPECIFIC ALLEGATIONS

Answering the specific allegations of Apple's Counterclaims, Motorola responds with the following paragraphs, which correspond sequentially to the paragraphs in Apple's Counterclaims:

## THE PARTIES[1]

1.      Motorola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 1 and can neither admit nor deny such allegations.

2.      Motorola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 2 and can neither admit nor deny such allegations.

3.      Motorola admits that Motorola Mobility, Inc. is a Delaware corporation having its principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois, 60048.  Motorola denies that Motorola Mobility, Inc. is a wholly-owned subsidiary of Motorola, Inc.  Motorola Mobility, Inc. is a wholly-owned subsidiary of Motorola Mobility Holdings, Inc.

## JURISDICTION AND VENUE

4.      Motorola admits that the filing of counterclaims in the U.S. International Trade Commission is authorized by 19 U.S.C. § 1337(c) and 19 C.F.R. § 210.14(e), with the condition that the respondent/counterclaimant "shall immediately file a notice of removal with a United States district court in which venue for any of the counterclaims raised by the respondent would exist under 28 U.S.C. § 1391."  To the extent the allegations in paragraph 4 relate specifically to Apple's removed Counterclaims in this action, Motorola lacks knowledge or information sufficient to form a belief as to the allegations and can neither admit nor deny such allegations.

---

[1]   For ease of reference only, Motorola has reproduced the headings Apple used in its Counterclaims.  To the extent the headings Apple used contain any allegations or characterizations, Motorola denies the truth of those allegations or characterizations.

5.      Motorola admits that Apple has filed a notice of removal of its Counterclaims with the United States District Court for the Western District of Wisconsin.

6.      Motorola admits that the United States District Court for the Western District of Wisconsin has subject matter jurisdiction over Apple's Counterclaims.

7.      Motorola admits that the United States District Court for the Western District of Wisconsin has pendent and supplemental jurisdiction over the state law claims asserted in Apple's Counterclaims.

8.      Motorola admits that the United States District Court for the Western District of Wisconsin has personal jurisdiction over Motorola for purposes of this case.

9.      Motorola denies each and every allegation contained in Paragraph 9.

10.     Motorola lacks knowledge or information sufficient to form a belief as to whether venue is proper in the United States District Court for the Western District of Wisconsin, and can neither admit nor deny such allegations.  Motorola denies Apple's allegations that it has committed and continues to commit unlawful acts in this District. Motorola further denies Apple's allegations that its deceptive, unfair and unlawful conduct with respect to its participation in the standard-setting process has had harmful and anticompetitive effects in this District.

## GENERAL ALLEGATIONS

11.     Motorola admits that Apple has asserted Counterclaims against Motorola, but Motorola specifically denies any such alleged conduct.  Motorola denies each and every remaining allegation contained in Paragraph 11.

12.     Motorola denies each and every allegation contained in Paragraph 12.

13.     Motorola admits that in October 2010, Motorola requested the U.S. International Trade Commission ("ITC") institute an investigation to determine, in part, whether certain Apple products infringe one or more Motorola patents.  Motorola admits that on November 3, 2010, the ITC granted Motorola's request and instituted Investigation No. 337-TA-745 (the "'745 Investigation").

14.     Motorola admits that it has been a member of and/or its predecessor's employees have participated in the European Telecommunications Standards Institute ("ETSI"), the Institute of Electrical and Electronics Engineers Standards Association ("IEEE"), the 3rd Generation Partnership Project ("3GPP") and the Telecommunication Industry Association ("TIA").  Motorola further admits that it has made submissions to ETSI, IEEE and TIA that it owns patents that may be essential to practicing certain standards in accordance with the policies of those organizations.  Motorola further admits that it has made assurances in accordance with the policies of those organizations that Motorola will offer licenses to patents that may be essential to practicing certain standards.  Motorola denies each and every remaining allegation contained in Paragraph 14.

15.     Motorola denies each and every allegation contained in Paragraph 15.

16.     Motorola admits that it requested the ITC institute an investigation to determine, in part, whether certain Apple products infringe one or more Motorola patents, and that the ITC issue an order excluding from the United States those Apple products found to infringe Motorola's patents.  Motorola denies each and every remaining allegation contained in Paragraph 16.

A.      **The Importance of SSOs and F/RAND Commitments in the Wireless Community**

17.     Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 17, and can neither admit nor deny such allegations.

18.     Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 18, and can neither admit nor deny such allegations.

19.     Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 19, and can neither admit nor deny such allegations.

20.     The allegations and characterizations contained in Paragraph 20 are incomplete and overbroad, and Motorola lacks knowledge or information sufficient to form a belief as to those allegations and characterizations and can neither admit nor deny such allegations and characterizations.

21.     The allegations and characterizations contained in Paragraph 21 are incomplete and overbroad, and Motorola lacks knowledge or information sufficient to form a belief as to those allegations and characterizations and can neither admit nor deny such allegations and characterizations.

22.     The allegations and characterizations contained in Paragraph 22 are incomplete and overbroad, and Motorola lacks knowledge or information sufficient to form a belief as to those allegations and characterizations and can neither admit nor deny such allegations and characterizations.

23.     Motorola admits that standards setting organizations ("SSOs") generally have policies concerning (a) the disclosure of intellectual property rights ("IPR") that may be essential to certain industry standards; and (b) whether and to what extent participants must offer assurances that they are prepared to offer licenses to their essential IPRs.  Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 23, and can neither admit nor deny such allegations.

24.     The allegations and characterizations contained in Paragraph 24 are incomplete and overbroad, and Motorola lacks knowledge or information sufficient to form a belief as to those allegations and characterizations and can neither admit nor deny such allegations and characterizations.

25.     Motorola denies that the IPR Policies at issue in this case require participants claiming Essential IPR to commit to license those IPR to any implementer of

the standard on F/RAND terms Apple uses those terms.  Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 25, and can neither admit nor deny such allegations.

26.      Motorola denies each and every allegation contained in paragraph 26.

**B.      The Relevant SSOs All Have IPR Policies Designed to Prevent Anticompetitive Hold Up**

27.      Motorola admits that it and/or its employees have been members of and/or participated in ETSI, 3GPP, IEEE and TIA.  Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 27, and can neither admit nor deny such allegations.

**(i)      ETSI's IPR Policy**

28.      Motorola admits that ETSI's IPR Policy is set forth in Annex 6 of the ETSI Rules of Procedure.  Motorola admits that paragraph 4.1 of the current version of the ETSI IPR Policy, dated 8 April 2009, states:

> Subject to Clause 4.2 below, each MEMBER shall use its reasonable endeavors, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion.  In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

The terms "MEMBER," "STANDARD," "TECHNICAL SPECIFICATION," "ESSENTIAL" and "IPR," as used in the ETSI IPR Policy, are each defined under paragraph 15 of the Policy.  Motorola lacks knowledge or information sufficient to form

a belief as to the remaining allegations contained in paragraph 28, and can neither admit

nor deny such allegations.

29.    Motorola admits that paragraph 15.7 of the current version of the ETSI

IPR Policy, dated 8 April 2009, states:

> "IPR" shall mean any intellectual property right conferred
> by statute law including applications therefor other than
> trademarks.  For the avoidance of doubt rights relating to
> get-up, confidential information, trade secrets or the like
> are excluded from the definition of IPR.

Motorola denies each and every remaining allegation contained in paragraph 29.

30.    Motorola admits that paragraph 6.1 of the current version of the ETSI IPR

Policy, dated 8 April 2009, states:

> When an ESSENTIAL IPR relating to a particular
> STANDARD or TECHNICAL SPECIFICATION is
> brought to the attention of ETSI, the Director-General of
> ETSI shall immediately request the owner to give within
> three months an irrevocable undertaking in writing that it is
> prepared to grant irrevocable licenses on fair, reasonable
> and non-discriminatory terms and conditions under such
> IPR to at least the following extent:
>
> - MANUFACTURE, including the right to make or
>   have made customized components and sub-
>   systems to the licensee's own design for use in
>   MANUFACTURE;
>
> - sell, lease, or otherwise dispose of EQUIPMENT so
>   MANUFACTURED;
>
> - repair, use, or operate EQUIPMENT; and
>
> - use METHODS.

> The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.
>
> In the event a MEMBER assigns or transfers ownership of an ESSENTIAL IPR that it disclosed to ETSI, the MEMBER shall exercise reasonable efforts to notify the assignee or transferee of any undertaking it has made to ETSI pursuant to Clause 6 with regard to that ESSENTIAL IPR.

The terms "ESSENTIAL," "IPR," "STANDARD," "TECHNICAL SPECIFICATION," "MANUFACTURE," "EQUIPMENT," and "METHOD," as used in the ETSI IPR Policy, are each defined under paragraph 15 of the Policy.  Motorola denies that Clause 6 of the ETSI IPR Policy requires ETSI members to offer licenses to Essential IPR on FRAND terms.  Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 30, and can neither admit or deny such allegations.

31.     Motorola admits that paragraph 8.1 of the current version of the ETSI IPR Policy, dated 8 April 2009, states:

> 8.1     Non-availability of licenses prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION
>
> 8.1.1   Existence of a viable alternative technology
>
> Where prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION an IPR owner informs ETSI that it is not prepared to license an IPR in respect of a STANDARD or TECHNICAL SPECIFICATION in accordance with Clause 6.1 above, the General Assembly shall review the requirement for that STANDARD or TECHNICAL SPECIFICATION and satisfy itself that a viable alternative technology is available for the STANDARD or TECHNICAL SPECIFICATION which:
>
> - is not blocked by that IPR; and

- satisfies ETSI's requirements.

### 8.1.2   Non-existence of a viable alternative technology

Where, in the opinion of the General Assembly, no such viable alternative technology exists, work on the STANDARD or TECHNICAL SPECIFICATION shall cease, and the Director-General of ETSI shall observe the following procedure:

a)   If the IPR owner is a MEMBER,

    i)    the Director-General of ETSI shall request that MEMBER to reconsider its position.

    ii)    If that MEMBER however decides not to withdraw its refusal to license the IPR, it shall then inform the Director-General of ETSI of its decision and provide a written explanation of its reasons for refusing to license that IPR, within three months of its receipt of the Director-General's request.

    iii) The Director-General of ETSI shall then send the MEMBER's explanation together with relevant extracts from the minutes of the General Assembly to the ETSI Counselors for their consideration.

b)   If the IPR owner is a third party,

    i)    the Director-General shall, wherever appropriate, request full supporting details from any MEMBER who has complained that licenses are not available in accordance with Clause 6.1 above and/or request appropriate MEMBERS to use their good offices to find a solution to the problem.

    ii)    Where this does not lead to a solution the Director-General of ETSI shall write to the IPR owner concerned for an explaation and request ultimately that licenses be granted according to Clause 6.1 above.

    iii)    Where the IPR owner refuses the Director-General's request and decides not to withdraw its refusal to license the IPR or does not answer the letter within three months after the receipt of the

Director-General's request, the Director-General shall then send the IPR owner's explanation, if any, together with relevant extracts from the minutes of the General Assembly to the ETSI Counselors for their consideration.

8.1.3   Prior to any decision by the General Assembly, the COMMITTEE should in consultation with the ETSI Secretariat use their judgment as to whether or not the COMMITTEE should pursue development of the concerned parts of the STANDARD or a TECHNICAL SPECIFICATION based on the non-available technology and should look for alternative solutions.

The terms "IPR," "STANDARD," "TECHNICAL SPECIFICATION," "MEMBER,"

"COMMITTEE," and "STANDARD," as used in the ETSI IPR Policy, are defined in

clause 15 of the Policy.  Motorola lacks knowledge or information sufficient to form a

belief as to the remaining allegations contained in paragraph 31 and can neither admit nor

deny such allegations.

32.   Motorola admits that paragraph 3.1 of the current version of the ETSI IPR

Policy, dated 8 April 2009, states:

3.1   It is ETSI's objective to create STANDARDS and TECHNICAL SPECIFICATIONS that are based on solutions which best meet the technical objectives of the European telecommunications sector, as defined by the General Assembly.  In order to further this objective the ETSI IPR POLICY seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS and TECHNICAL SPECIFICATIONS, that investment in the preparation,, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable.  In achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

The terms "STANDARD," "TECHNICAL SPECIFICATION," "POLICY,"

"MEMBERS," and "IPR," as used in the ETSI IPR Policy, are defined in paragraph 15 of

the Policy.  Motorola lacks knowledge or information sufficient to form a belief as to the

remaining allegations contained in paragraph 32 and can neither admit nor deny such

allegations.

       **(ii)**       **3GPP's IPR Policy**

33.      Motorola admits that Article 8 of the current version of the 3GPP Working

Procedures, dated 23 April 2010, states in part that "Membership in an Organizational

Partner is a pre-requisite for Individual Membership of 3GPP."  The terms

"Organizational Partner" and "Individual Member," as used in the 3GPP Working

Procedures, are defined in Annex A to the Procedures.  Motorola lacks knowledge or

information sufficient to form a belief as to the remaining allegations contained in

paragraph 33 and can neither admit nor deny such allegations.

34.      Motorola admits that Article 55 of the current version of the 3GPP

Working Procedures, dated 23 April 2010, states:

> Individual Members shall be bound by the IPR Policy of
> their respective Organizational Partner.
>
> Individual Members should declare at the earliest
> opportunity, any IPRs which they believe to be essential, or
> potentially essential, to any work ongoing within 3GPP.
> Declarations should be made by Individual Members to
> their respective Organizational Partners.
>
> Organizational Partners should encourage their respective
> members to grant licences [sic] on fair, reasonable terms
> and conditions and on a non-discriminatory basis.

> The PCG shall maintain a register of IPR declarations
> relevant to 3GPP, received by the Organizational Partners.

The terms "Individual Member" and "Organizational Partners," as used in the 3GPP

Working Procedures, are defined in Annex A to the Procedures.  Motorola lacks

knowledge or information sufficient to form a belief as to the remaining allegations

contained in paragraph 34 and can neither admit nor deny such allegations.

### (iii)    IEEE's IPR Policies

35.    Motorola denies each and every allegation contained in paragraph 35.

36.    Motorola admits that Section 6.2 of the current version of the IEEE-

Standards Association's Standards Board Bylaws, dated February, 2011, states, in part:

> IEEE standards may be drafted in terms that include the use
> of Essential Patent Claims.  If the IEEE receives notice that
> a [Proposed] [sic] IEEE Standard may require the use of a
> potential Essential Patent Claim, the IEEE shall request
> licensing assurance, on the IEEE Standards Board approved
> Letter of Assurance form, from the patent holder or patent
> applicant.  The IEEE shall request this assurance without
> coercion.
>
> The Submitter of the Letter of Assurance may, after
> Reasonable and Good Faith Inquiry, indicate it is not aware
> of any Patent Claims that the Submitter may own, control,
> or have the ability to license that might be or become
> Essential Patent Claims.  If the patent holder or patent
> applicant provides an assurance, it should do so as soon as
> reasonably feasible in the standards development process
> once the PAR is approved by the IEEE-SA Standards
> Board.  This assurance shall be provided prior to the
> Standards Board's approval of the standard.  This assurance
> shall be provided prior to a reaffirmation/stabilization if the
> IEEE receives notice of a potential Essential Patent Claim
> after the standard's approval or a prior
> reaffirmation/stabilization.  An asserted potential Essential
> Patent Claim for which an assurance cannot be obtained

(e.g., a Letter of Assurance is not provided or the Letter of Assurance indicates that assurance is not being provided) shall be referred to the Patent Committee.

Motorola admits that Section 6.1 of the current version of the IEEE Standards Association's Standards Board Bylaws defines the term "Essential Patent Claim" as used in the Bylaws.  Motorola denies each and every remaining allegation contained in paragraph 36.

37.     Motorola admits that Section 6.2 of the current version of the IEEE Standards Association's Standards Board Bylaws, dated February, 2011, further states, in part:

A Letter of Assurance shall be either:

a)  A general disclaimer to the effect that the submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard; or

b)  A statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrable free of any unfair discrimination.  At its sole option, the Submitter may provide with its assurance any of the following: (i) a not-to-exceed license fee or rate commitment, (ii) a sample license agreement, or (iii) one or more material licensing terms.

38.     Motorola denies each and every allegation contained in paragraph 38.

**(iv)     TIA's IPR Policies**

39.     Motorola admits that Section 6.5 of the current version of TIA's Engineering Manual, dated October, 2009, states in part:

> The Standards development and approval process is made more efficient if the existence of Essential Patent(s) and published pending patent application(s) are made known as early as possible in the development work.

Motorola denies each and every remaining allegation contained in paragraph 39.

40.      Motorola admits that Section 1 of the current version of the TIA Engineering Manual, dated October, 2009, states in part:

> There is no objection in principle to drafting a Standard in terms that include the use of a patented invention, if it is considered that technical reasons justify this approach.

Motorola denies each and every remaining allegation contained in Paragraph 40.

41.      Motorola admits that Section 1.2 of the current version of TIA's Engineering Manual, dated October, 2009, states in part:

> Prior to approval of each such proposed standard, TIA shall receive an effective Patent Holder Statement in the form of ANNEX H from any party identified in any manner as a Patent Holder.

Motorola admits that Section 1.3 of the current version of TIA's Engineering Manual, dated October, 2009, states in part that "a record of the Patent Holder's Statement shall be placed and retained in the files of TIA."

42.      Motorola admits that a form entitled "PATENT HOLDER STATEMENT-SPECIFIC" is attached as ANNEX H to the current version of the TIA Engineering Manual, dated October, 2009.  Motorola denies each and every remaining allegation contained in paragraph 42.

43.     Motorola admits that the form entitled "PATENT HOLDER STATEMENT-SPECIFIC" attached as ANNEX H to the current version of the TIA Engineering Manual, dated October, 2009, includes sections whereby the Patent Holder submitting the form may modify its statements to indicate that a license "will be made available only on a reciprocal basis" and/or by limiting its commitment to license to a list of Essential Patent(s) that the Patent Holder represents "contains all the undersigned's known licensable Essential Patent(s) rights, as of the date stated below, only to the extent necessary for the practice of any or all of the Normative portions of the above Reference Document."  Motorola denies each and every remaining allegation contained in paragraph 43.

44.     Motorola admits that Section 1.4 of the current version of the TIA Engineering Manual, dated October, 2009, states:

> Unless otherwise directed by the head of TIA's Standards Program, when TIA receives a Patent Holder Statement with either Paragraphs (2a) or (2b) of ANNEX H marked, the Standard shall include a note as follows:
>
> NOTE:  The user's attention is called to the possibility that compliance with this document may require use of one or more inventions covered by patent rights.
>
> By publication of this Standard, no position is taken with respect to the validity or scope of any claims of such rights or of any patent rights in connection with this Standard. The Patent Holder(s) so far identified to TIA have, however, filed statements of willingness to grant licenses under those rights on reasonable and nondiscriminatory terms and conditions (either with or without monetary compensation) to applicants desiring to obtain such licenses for the purpose of practicing any or all Normative portions of this standard for the field of use of practice of the

Standard.  Details regarding the filed statements may be obtained from the TIA.

Motorola denies each and every remaining allegation contained in paragraph 44.

45.      Motorola admits that Section 1.2 of the current version of the TIA Engineering Manual, dated October, 2009, states in part that "whenever a proposed Standard undergoes a revision necessitating a new ballot, new Patent Holder Statements will be requested from each identified party or Patent Holder unless the revision is encompassed in a previously submitted ANNEX H.1 Statement."  Motorola denies each and every remaining allegation contained in paragraph 45.

## C.      Apple's Contractual Relationship with Qualcomm

46.      Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 46 and can neither admit nor deny such allegations.

47.      Motorola admits that in January, 2011, Apple announced its intention to sell a CDMA2000-compliant version of its iPhone 4.  Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 47 and can neither admit nor deny such allegations.

48.      Motorola admits that it sent a letter to Qualcomm dated January 11, 2011, copying Apple, stating Motorola's intention to suspend certain rights granted by Motorola to Qualcomm with respect to Apple under Motorola's agreement with

Qualcomm, effective February 10, 2011.  Motorola denies each and every remaining allegation contained in paragraph 48.

49.      Motorola denies each and every allegation contained in paragraph 49.

50.      Motorola denies each and every allegation contained in paragraph 50.

51.      Motorola admits that it presently has an agreement with Qualcomm that, in part, grants Qualcomm a license to make and sell certain products that practice certain of Motorola's patents.  Motorola denies the remaining allegations contained in paragraph 51.

**D.      Motorola Has Engaged in a Course of Conduct in Violation of SSO IPR Policies, Resulting in an Anticompetitive Hold Up[2]**

52.      Motorola admits that it has been a member of and/or participated in ETSI and 3GPP.  Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 52, and can neither admit nor deny such allegations.

53.      Motorola admits that it has been a member of and/or participated in IEEE. Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 53, and can neither admit nor deny such allegations.

---

[2]   Motorola specifically denies each and every allegation and characterization contained in this heading used by Apple in its Counterclaims.

54.     Motorola admits that it has been a member of and/or participated in TIA. Motorola lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 54, and can neither admit nor deny such allegations.

55.     Motorola denies each and every allegation contained in paragraph 55.

**1.     Motorola Has Failed to Disclose Essential IPR in a Timely Fashion[3]**

56.     Motorola admits that clause 4.1 of the current ETSI IPR Policy, dated 8 April 2009, states:

> Subject to Clause 4.2 below, each MEMBER shall use its reasonable endeavors, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion.  In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

Motorola admits that Clause 15 of the current ETSI IPR Policy defines IPR to mean:

> any intellectual property right conferred by statute law including applications therefor other than trademarks.  For the avoidance of doubt rights relating to get-up, confidential information, trade secrets or the like are excluded from the definition of IPR.

Motorola denies the remaining characterizations and allegations contained in paragraph 56.

57.     Motorola denies each and every allegation contained in paragraph 57.

---

[3]   Motorola specifically denies the allegations and characterizations contained in this heading used by Apple in its Counterclaims.

     **(a)**     **Motorola failed to timely disclose United States Patent No. 6,359,898[4]**

58.     Motorola admits that it claims to be the owner by assignment of the entire right, title and interest of United States Patent No. 6,359,898 ("the '898 Patent"). Motorola admits that the '898 Patent, which claims priority to a provisional application filed on September 2, 1997, issued on March 19, 2002. Motorola admits that it has asserted claims 1-3 and 5-7 of the '898 Patent against Apple in patent infringement proceedings pending in the Western District of Wisconsin. Motorola denies each and every remaining allegation contained in paragraph 58.

59.     Motorola denies each and every allegation contained in paragraph 59.

60.     Motorola denies each and every allegation contained in paragraph 60.

     **(b)**     **Motorola failed to timely disclose United States Patent No. 5,490,230[5]**

61.     Motorola admits that it claims to be the owner by assignment of the entire right, title and interest of United States Patent No. 5,490,230 ("the '230 Patent"). Motorola admits that the '230 Patent issued on February 6, 1996. Motorola admits that it has asserted claims 6-8 of the '230 Patent against Apple in patent infringement proceedings pending in the Western District of Wisconsin. Motorola denies each and every remaining allegation contained in paragraph 61.

---

[4]  Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

[5]  Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

62.    Motorola denies each and every allegation contained in paragraph 62.

63.    Motorola denies each and every allegation contained in paragraph 63.

**(c)    Motorola failed to timely disclose United States Patent No. 6,246,697[6]**

64.    Motorola admits that it claims to be the owner by assignment of the entire right, title and interest of United States Patent No. 6,246,697 (the "'697 Patent"). Motorola admits that the application that led to the '697 Patent was filed on January 24, 1998 and that the '697 Patent was issued on June 12, 2001.  Motorola denies each and every remaining allegation contained in paragraph 65.

65.    Motorola denies each and every allegation contained in paragraph 65.

66.    Motorola denies each and every allegation contained in paragraph 66.

**(d)    Motorola failed to timely disclose United States Patent No. 6,175,559[7]**

67.    Motorola admits that it claims to be the owner by assignment of the entire right, title and interest of United States Patent No. 6,175,559 ("the '559 Patent"). Motorola admits that the application that the application that led to the '559 Patent was filed on July 7, 1999 and the '559 Patent issued on January 16, 2001.  Motorola admits that it has asserted claims 1-5 of the '559 Patent against Apple in a patent infringement

---

[6]    Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

[7]    Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

proceeding pending in the Western District of Wisconsin.  Motorola denies each and every remaining allegation contained in paragraph 67.

68.     Motorola denies each and every allegation contained in paragraph 68.

69.     Motorola denies each and every allegation contained in paragraph 69.

**2.     Motorola Has Failed to Honor Its F/RAND Obligations[8]**

70.     Motorola denies each and every allegation contained in paragraph 70.

**(a)     Motorola's False FRAND Commitments to ETSI and 3GPP[9]**

71.     Motorola admits that it has declared certain of its IPRs essential to the implementation of certain ETSI and 3GPP standards.  Motorola denies each and every remaining allegation contained in paragraph 71.

72.     Motorola denies each and every allegation contained in paragraph 72.

73.     Motorola admits that Motorola, Inc. declared the '230 Patent essential to practice the GSM standard, in particular the ETSI TS 126 190 standard (3GPP TS 26.190) and the ETSI TS 126 090 standard (3GPP TS 26.090).  Motorola denies each and every remaining allegation contained in paragraph 73.

74.     Motorola denies each and every allegation contained in paragraph 74.

75.     Motorola denies each and every allegation contained in paragraph 75.

---

[8]   Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

[9]   Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

76.     Motorola denies each and every allegation contained in paragraph 76.

77.     Motorola denies each and every allegation contained in paragraph 77.

78.     Motorola denies each and every allegation contained in paragraph 78.

79.     Motorola denies each and every allegation contained in paragraph 79.

80.     Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 80, and can neither admit nor deny such allegations.

81.     Motorola denies each and every allegation contained in paragraph 81.

82.     Motorola admits that representatives of Apple met with representatives of Motorola, Inc. in September 2007 to discuss the terms on which Motorola, Inc. would license its cellular and wireless essential patents to Apple.  Motorola denies each and every remaining allegation contained in paragraph 82.

83.     Motorola denies each and every allegation contained in paragraph 83.

84.     Motorola lacks knowledge or information sufficient to form a belief as to whether Apple made substantial investments in the research, design, manufacture, and marketing of wireless communication handsets, including the iPhone 3G, iPhone 3GS and iPhone 4, and can neither admit nor deny such allegations.  Motorola denies each and every remaining allegation contained in paragraph 84.

(b)     **Motorola's Failure to Honor Its RAND Commitments to IEEE**[10]

85.     Motorola admits that it is the owner by assignment of the entire right, title and interest in United States Patent No. 5,636,223, titled "Methods of Adaptive Channel Access Attempts," which issued on June 3, 1997, naming Karl Reardon and Bud Fraser as inventors (the "'223 Patent").  Motorola admits that it has alleged in its complaint in ITC investigation no. 337-TA-745 that certain Apple products infringe the '223 Patent by practicing the 802.11 standard for wireless local area networks.

86.     Motorola admits that it is the owner by assignment of the entire right, title and interest in United States Patent No. 5,319,712 (the "'712 Patent").  Motorola admits that Motorola, Inc. submitted a Letter of Assurance For Essential Patent Claims to IEEE dated June 14, 2007 declaring certain of its IPRs, including the '712 Patent, essential to the 802.16e standard on wireless local area networks.

87.     Motorola admits that it is the owner by assignment of the entire right, title, and interest in United States Patent No. 5,572,193 (the "'193 Patent").  Motorola admits that Motorola, Inc. submitted a Letter of Assurance For Essential Patent Claims to IEEE dated June 14, 2007 declaring certain of its IPRs, including the '193 Patent, essential to the 802.16e standard on wireless local area networks.

88.     Motorola denies each and every allegation contained in paragraph 88.

---

[10]   Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

89.     Motorola admits that Motorola, Inc. submitted an Intellectual Property Statement on the Motorola Proposals to IEEE dated March 1, 1994, stating in part that "[i]n the even the proposed standard is adopted and the standard cannot be practiced without the use of one or more issued patents which are now or hereafter owned, controlled or assigned to Motorola [Inc.], Motorola [Inc.] agrees to license those patents on a non-discriminatory basis offering fair and commercially reasonable terms." Motorola denies the remaining allegations contained in paragraph 89.

90.     Motorola denies each and every allegation contained in paragraph 90.

91.     Motorola lacks knowledge or information sufficient to form a belief as to whether Apple made substantial investments in products that practice the IEEE 802.11 standards, and can neither admit nor deny such allegations.  Motorola denies each and every remaining allegation contained in paragraph 91.

92.     Motorola denies each and every allegation contained in paragraph 92.

93.     Motorola admits that in September 2007, representatives of Apple met with representatives of Motorola, Inc..  Motorola denies each and every remaining allegation in paragraph 93.

94.     Motorola denies each and every allegation in paragraph 94.

95.     Motorola denies each and every allegation in paragraph 95.

(c)     **Motorola's Failure to Honor Its RAND Commitments to TIA**[11]

96.     Motorola admits the allegations contained in paragraph 96.

97.     Motorola admits the allegations contained in paragraph 97.

98.     Motorola admits the allegations contained in paragraph 98.

99.     Motorola denies each and every allegation contained in paragraph 99.

100.    Motorola denies each and every allegation contained in paragraph 100.

101.    Motorola lacks knowledge or information sufficient to form a belief as to Apple's allegation that "Apple made substantial investments the iPhone 4 for Verizon, which includes components that are designed to be compatible with the CDMA2000 standards."  Motorola denies each and every remaining allegation contained in paragraph 101.

102.    Motorola denies each and every allegation contained in paragraph 102.

103.    Motorola admits that in around September 2007, representatives of Apple met with representatives of Motorola, Inc..  Motorola denies each and every remaining allegation contained in paragraph 103.

104.    Motorola denies each and every allegation contained in paragraph 104.

105.    Motorola denies each and every allegation contained in paragraph 105.

---

[11]    Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

106.    Motorola denies each and every allegation contained in paragraph 106.

107.    Motorola lacks knowledge or information sufficient to form a belief as to Apple's allegation that "Apple made substantial investments in the research, design, manufacture, and marketing of wireless communication handsets," and can neither admit nor deny such allegations.  Motorola denies each and every remaining allegation contained in paragraph 107.

**E.      The Relevant Technology Markets**

108.    Motorola admits that it has claimed certain of its patents essential to the GSM, UMTS, 3GPP, IEEE 802.11 and/or CDMA2000 standards.

109.    Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 109, and can neither admit nor deny such allegations.

110.    Motorola denies each and every allegation contained in paragraph 110.

111.    Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 111, and can neither admit nor deny such allegations.

112.    Motorola denies each and every allegation contained in paragraph 112.

113.    Motorola denies each and every allegation contained in paragraph 113.

**F.      Anticompetitive Effects of Motorola's Conduct Have Injured Apple, Competition, and Consumers[12]**

114.   Motorola denies each and every allegation contained in paragraph 114.

115.   Motorola denies each and every allegation contained in paragraph 115.

116.   Motorola denies each and every allegation contained in paragraph 116.

## COUNT I

## EQUITABLE ESTOPPEL

117.   Motorola incorporates herein by reference its responses set forth in paragraphs 1-116, above.

118.   Motorola denies each and every allegation contained in paragraph 118.

119.   Motorola denies each and every allegation contained in paragraph 119.

120.   Motorola lacks knowledge or information sufficient to form a belief as to whether Apple invested billions of dollars in the applicable technology, and can neither admit nor deny such allegations.  Motorola denies each and every remaining allegation contained in paragraph 120.

121.   Motorola denies each and every allegation contained in paragraph 121.

122.   Motorola denies each and every allegation contained in paragraph 122.

123.   Motorola denies each and every allegation contained in paragraph 123.

## COUNT II

---

[12]   Motorola specifically denies the characterizations and allegations contained in this heading used by Apple in its Counterclaims.

## WAIVER OF RIGHT TO ENFORCE[13]

124.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-123, above.

125.    Motorola denies each and every allegation contained in paragraph 125.

126.    Motorola admits that it and/or its employees have been members of and/or participated in ETSI, 3GPP, IEEE and TIA.  Motorola denies each and every remaining allegation contained in paragraph 126.

127.    Motorola denies each and every allegation contained in paragraph 127.

128.    Motorola denies each and every allegation contained in paragraph 128.

129.    Motorola denies each and every allegation contained in paragraph 129.

130.    Motorola denies each and every allegation contained in paragraph 130.

131.    Motorola denies each and every allegation contained in paragraph 131.

132.    Motorola denies each and every allegation contained in paragraph 132.

## COUNT III

## BREACH OF CONTRACT – ETSI/3GPP

---

[13]   The Court dismissed Apple's Count II for Waiver to Enforce with prejudice in its June 7, 2011 order (D.I. 93).  However, because Apple incorporates by reference and relies upon the allegations set forth in paragraphs 124-132 of its Counterclaims in Counts III through XIII, it is necessary for Motorola to respond to these allegations.

133.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-132, above.

134.    Motorola denies each and every allegation contained in paragraph 134.

135.    Motorola denies each and every allegation contained in paragraph 135.

136.    Motorola denies each and every allegation contained in paragraph 136.

137.    Motorola denies each and every allegation contained in paragraph 137.

## COUNT IV

## BREACH OF CONTRACT TO WHICH APPLE
## IS A THIRD PARTY BENEFICIARY – ETSI/3GPP

138.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-137, above.

139.    Motorola denies each and every allegation contained in paragraph 139.

140.    Motorola denies each and every allegation contained in paragraph 140.

141.    Motorola denies each and every allegation contained in paragraph 141.

142.    Motorola denies each and every allegation contained in paragraph 142.

143.    Motorola denies each and every allegation contained in paragraph 143.

144.    Motorola denies each and every allegation contained in paragraph 144.

## COUNT V

## BREACH OF CONTRACT TO WHICH APPLE
## IS A THIRD-PARTY BENEFICIARY – IEEE

145.     Motorola incorporates herein by reference its responses set forth in paragraphs 1-144, above.

146.     Motorola denies each and every allegation contained in paragraph 146.

147.     Motorola denies each and every allegation contained in paragraph 147.

148.     Motorola denies each and every allegation contained in paragraph 148.

149.     Motorola denies each and every allegation contained in paragraph 149.

150.     Motorola denies each and every allegation contained in paragraph 150.

151.     Motorola denies each and every allegation contained in paragraph 151.

## COUNT VI

## BREACH OF CONTRACT – TIA

152.     Motorola incorporates herein by reference its responses set forth in paragraphs 1-152, above.

153.     Motorola denies each and every allegation contained in paragraph 153.

154.     Motorola denies each and every allegation contained in paragraph 154.

155.     Motorola denies each and every allegation contained in paragraph 155.

156.     Motorola denies each and every allegation contained in paragraph 156.

## COUNT VII

### BREACH OF CONTRACT TO WHICH APPLE IS A THIRD-PARTY BENEFICIARY – TIA

157.   Motorola incorporates herein by reference its responses set forth in paragraphs 1-156, above.

158.   Motorola denies each and every allegation contained in paragraph 158.

159.   Motorola denies each and every allegation contained in paragraph 159.

160.   Motorola denies each and every allegation contained in paragraph 160.

161.   Motorola denies each and every allegation contained in paragraph 161.

162.   Motorola denies each and every allegation contained in paragraph 162.

163.   Motorola denies each and every allegation contained in paragraph 163.

## COUNT VIII

### FALSE F/RAND COMMITMENTS AND DECEPTIVE ACTS IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT

164.   Motorola incorporates herein by reference its responses set forth in paragraphs 1-163, above.

165.   Motorola denies each and every allegation contained in paragraph 165.

166.   Motorola denies each and every allegation contained in paragraph 166.

167.   Motorola denies each and every allegation contained in paragraph 167.

168.   Motorola denies each and every allegation contained in paragraph 168.

169.   Motorola denies each and every allegation contained in paragraph 169.

170.   Motorola denies each and every allegation contained in paragraph 170.

## COUNT IX

## UNFAIR COMPETITION AND UNLAWFUL BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.

171.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-170, above.

172.    Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 172, and can neither admit nor deny such allegations.

173.    Motorola denies each and every allegation contained in paragraph 173.

174.    Motorola denies each and every allegation contained in paragraph 174.

175.    Motorola denies each and every allegation contained in paragraph 175.

176.    Motorola denies each and every allegation contained in paragraph 176.

177.    Motorola denies each and every allegation contained in paragraph 177.

178.    Motorola denies each and every allegation contained in paragraph 178.

179.    Motorola denies each and every allegation contained in paragraph 179.

## COUNT X

## DECLARATORY JUDGMENT THAT MOTOROLA'S OFFERS HAVE NOT BEEN ON F/RAND TERMS

180.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-179, above.

181.    Motorola denies each and every allegation contained in paragraph 181.

182.    Motorola denies each and every allegation contained in paragraph 182.

183.    Motorola denies each and every allegation contained in paragraph 183.

**COUNT XI**

**DECLARATORY JUDGMENT OF NO ENTITLEMENT
TO INJUNCTIVE RELIEF**

184.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-183, above.

185.    Motorola admits that there is a dispute between the parties whether Motorola is entitled to injunctive relief in the event that it prevails on any of its patent infringement claims.  Motorola denies each and every remaining allegation contained in paragraph 185.

186.    Motorola denies each and every allegation contained in paragraph 186.

187.    Motorola denies each and every allegation contained in paragraph 187.

**COUNT XII**

**DECLARATORY JUDGMENT OF PATENT MISUSE**

188.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-187, above.

189.    Motorola admits that it has sued Apple for patent infringement, and the parties dispute whether Motorola's asserted patents are enforceable.  Motorola denies each and every remaining allegation contained in paragraph 189.

190.    Motorola denies each and every allegation contained in paragraph 190.

191.    Motorola denies each and every allegation contained in paragraph 191.

192.    Motorola denies each and every allegation contained in paragraph 192.

## COUNT XIII

## INTERFERENCE WITH CONTRACT

193.    Motorola incorporates herein by reference its responses set forth in paragraphs 1-192, above.

194.    Motorola lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 194, and can neither admit nor deny such allegations.

195.    Motorola denies each and every allegation contained in paragraph 195.

196.    Motorola denies each and every allegation contained in paragraph 196.

197.    Motorola denies each and every allegation contained in paragraph 197.

198.    Motorola denies each and every allegation contained in paragraph 198.

## DEMAND FOR JURY TRIAL

199.    Motorola admits that Apple demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

200.    Motorola denies each and every allegation contained in paragraph 200, including Apple's allegations that it is entitled to or should be granted any relief in this matter, including any of the relief Apple seeks in paragraph 200, subparts (a) through (n).

## MOTOROLA'S AFFIRMATIVE AND OTHER DEFENSES

### First Defense (Waiver)

Upon information and belief, Apple has waived its right to assert that Motorola may not seek an injunction for Apple's infringement of Motorola's essential patents.

### Second Defense (Estoppel)

Upon information and belief, Apple is estopped from alleging that Motorola engaged in anticompetitive misconduct by failing to disclose declared-essential patents.

### Third Defense (Repudiation)

Upon information and belief, Apple has repudiated and/or rejected the benefits of Motorola's purported FRAND commitments.

### Fourth Defense (Anticipatory Breach)

Upon information and belief, Apple has anticipatorily breached the purported contract between the parties by indicating that it refuses to negotiate for or accept a license on FRAND terms leading to Motorola having to file a lawsuit; that it will not make payments under any license to Motorola's declared-essential patents because it

denies that such patents are in fact essential; and/or by failing to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary, and is thus not entitled to the benefit of Motorola's performance of its purported FRAND commitments.

### Fifth Defense (No Injunctive Relief)

Upon information and belief, Apple is not entitled to injunctive relief because any alleged injury to Apple is not immediate or irreparable, and Apple has adequate remedies at law.

### Sixth Defense (Statute of Limitations – Breach of Contract)

Upon information and belief, each of Apple's claims for breach of contract is barred by the applicable statutes of limitations.

### Seventh Defense (Statute of Limitations – Breach of Contract to which Apple is a Third Party Beneficiary)

Upon information and belief, each of Apple's claims for breach of contract to which it is a third party beneficiary is barred by the applicable statutes of limitations.

### Eighth Defense (Statute of Limitations – Sherman Act)

Upon information and belief, Apple's claim for violations of Section 2 of the Sherman act is barred by the applicable statute of limitations.

### Ninth Defense (Statute of Limitations – Cal. Bus. & Prof. Code §17200 et seq.)

Upon information and belief, Apple's claim for violations of California Business & Professions Code § 17200 et seq. is barred by the applicable statute of limitations.

**Tenth Affirmative Defense (Laches)**

Upon information and belief, each of Apple's claims is barred by the doctrine of laches.

**Eleventh Affirmative Defense (Privilege)**

Upon information and belief, Apple's claim for interference with contract is barred, because Motorola's actions were reasonable steps to protect Motorola's own legal rights, including Motorola's own contractual rights and other intangible business interests.

**Twelfth Affirmative Defense (Failure to State a Claim
Upon Which Relief Can Be Granted)**

Upon information and belief, Apple has failed to state a claim against Motorola upon which relief may be granted.

**Thirteenth Affirmative Defense (Reservation of Remaining Defenses)**

Motorola reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent and Antitrust Laws of the United States and any other defenses, at law, or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

**MOTOROLA'S COUNTERCLAIMS**

1.      Counterclaim-Plaintiff Motorola Mobility, Inc. ("Motorola"), for its counterclaims against Counterclaim-Defendant Apple, Inc. ("Apple"), alleges as follows:

## PARTIES

2.      Motorola Mobility, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.  Motorola Mobility, Inc. is a wholly-owned subsidiary of Motorola Mobility Holdings, Inc.

3.      In its Counterclaims, Apple alleges that it is a corporation organized and existing under the laws of the State of California, having a principal place of business at 1 Infinite Loop, Cupertino, California 95104.

## JURISDICTION AND VENUE

4.      These are counterclaims for Breach of Contract and Anticipatory Breach, for which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Apple and Motorola are citizens of different states and the amount in controversy exceed the sum or value of $75,000.00, exclusive of interest and costs, and for which this Court has pendent and supplemental jurisdiction under 28 U.S.C. § 1367 because the state and federal claims arise from a common nucleus of operative facts.

5.      This Court has personal jurisdiction over Apple by virtue of the Counterclaims Apple filed in this Court and Apple's significant contacts with this forum. On information and belief, Apple manufactures (directly or indirectly through third party manufacturers) and/or assembles products that are and have been offered for sale, sold, purchased, and used in the Western District of Wisconsin.  On information and belief, Apple, directly and/or through its distribution network, places devices within the stream of commerce, with the knowledge and/or understanding that such devices will be sold in

the Western District of Wisconsin and expects or should reasonably expect its actions to have consequences in the Western District of Wisconsin.  Moreover, on information and belief, Apple operates retail stores within the Western District of Wisconsin.  Therefore, exercise of jurisdiction over Apple will not offend traditional notions of fair play and substantial justice.  Such an exercise is consistent with Wis. Stats. § 801.05, including at least under § 801.05(1)(d), because Apple is engaged in substantial and not isolated activities within Wisconsin and this judicial district.

6.      Venue is proper in this District pursuant to 28 U.S.C. § § 1391(b)-(c) and 1400(b).

## FIRST COUNTERCLAIM

## BREACH OF CONTRACT – ETSI/3GPP

7.      Motorola incorporates by reference the preceding averments set forth in Counterclaim Paragraphs 1-6.

8.      On information and belief, Apple alleges that it has entered into express and/or implied contracts with Motorola concerning performance of the parties' obligations under the Intellectual Property Rights Policies ("IPR Policies") of ETSI and/or 3GPP.

9.      On information and belief, Apple has failed to perform its obligations under each of its purported contracts with Motorola and/or has materially breached those contracts by refusing to license purportedly Essential IPR, including by failing to seek out and refusing to accept a license to Motorola's declared-essential patents on FRAND

terms, and by continuing to infringe Motorola's essential patents despite having refused to accept a license to those patents on FRAND terms.

10.     As a result of these multiple contractual breaches, Motorola has been injured, including in its business or property.  Motorola has been forced to expend resources resolving this licensing dispute and has lost royalty income to which it is entitled under the purported agreements.

## SECOND COUNTERCLAIM

## BREACH OF CONTRACT – TIA

11.     Motorola incorporates by reference the preceding averments set forth in Counterclaim Paragraphs 1-6.

12.     On information and belief, Apple alleges that it has entered into express and/or implied contracts with Motorola concerning performance of the parties' obligations under the IPR Policies of TIA.

13.     On information and belief, Apple has failed to perform its obligations under each of its purported contracts with Motorola and/or has materially breached those contracts by refusing to license purportedly Essential IPR, including by failing to seek out and refusing to accept a license to Motorola's declared-essential patents on RAND terms, and by continuing to infringe Motorola's essential patents despite having refused to accept a license to those patents on RAND terms.

14.     As a result of these multiple contractual breaches, Motorola has been injured, including in its business or property.  Motorola has been forced to expend

resources resolving this licensing dispute and has lost royalty income to which it is entitled under the purported agreements.

## THIRD COUNTERCLAIM

## REPUDIATION/ANTICIPATORY BREACH

15.     Motorola incorporates by reference the preceding averments set forth in Counterclaim Paragraphs 1-6 and allegations set forth in Counterclaim Paragraphs 7-14.

16.     As set forth above, Apple alleges that it is a party or third party beneficiary to contracts with Motorola concerning the parties' performance of obligations under the IPR Policies of various Standards Setting Organizations.

17.     As set forth above, Apple has indicated that it will not perform its obligations under its purported agreements with Motorola.  Particularly, Apple has indicated that it refuses to negotiate for and will not accept a license to Motorola's declared-essential patents on FRAND terms leading to Motorola having to file a lawsuit; that it will not make payments under any license agreements because it believes Motorola's patents are not essential patents, not infringed by any Apple product, unenforceable and/or invalid; and has failed to satisfy the conditions precedent to any obligations that it was owed as an alleged third party beneficiary.

18.     As a result of Apple's breach of its purported agreements with Motorola by wrongful anticipatory breach and/or repudiation, Motorola has been injured, including in its business or property.  Motorola has been forced to expend resources resolving this licensing dispute, has lost royalty income to which it is entitled under the purported

agreements, and has not received payments and other benefits which it reasonably expected to receive under the purported agreements.

19. As a result of Apple's breach of its purported agreements with Motorola by wrongful anticipatory breach and/or repudiation, Motorola is furthermore entitled to treat Apple's breach as immediate and to terminate its agreements with Apple.

## DEMAND FOR JURY TRIAL

20. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Motorola demands a trial by jury of this action.

## REQUEST FOR RELIEF

21. WHEREFORE, Motorola respectfully prays for relief as follows:

A. A judgment that Apple has breached its agreements with Motorola through its failure to accept a license to Motorola's patents on FRAND terms;

B. A judgment that Apple has breached its agreements with Motorola by anticipatory breach/repudiation;

C. A judgment awarding Motorola all damages to compensate Motorola for Apple's breach of contract and inequitable contract; and

D. Such other relief as the Court may deem just and equitable.

Dated: July 1, 2011

Respectfully submitted,

MOTOROLA MOBILITY, INC.

By:    *s/ Brian C. Cannon*
       Brian C. Cannon

Scott W. Hansen
Lynn M. Stathas
Lisa Nester Kass
Reinhart Boerner Van Deuren s.c.
22 East Mifflin Street
P.O. Box 2018
Madison, WI 53701-2018
Telephone: (608) 229-2200
Facsimile: (608) 229-2100
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097
Email: shansen@reinhartlaw.com
     lstathas@reinhartlaw.com
     lkass@reinhartlaw.com

David A. Nelson
Jennifer A. Bauer
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison St., Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email: davenelson@quinnemanuel.com
     jenniferbauer@quinnemanuel.com

Edward J. DeFranco
Alexander Rudis
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: eddefranco@quinnemanuel.com
alexanderrudis@quinnemanuel.com

Kevin Johnson
Brian C. Cannon
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: kevinjohnson@quinnemanuel.com
     briancannon@quinnemanuel.com

*Attorneys for Defendant Motorola Mobility, Inc.*