# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

APPLE INC.,

        Plaintiff and Counterclaim-
        Defendant,

v.

MOTOROLA MOBILITY, INC.

        Defendant and Counterclaim-
        Plaintiff.

Case No. 11-CV-178 (BBC)

**JURY TRIAL DEMANDED**

**REPLY BRIEF IN SUPPORT OF PLAINTIFF APPLE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.     APPLE'S CONTRACT CLAIMS BASED ON MOTOROLA'S FRAND
COMMITMENTS.......................................................................................................... 3

     A.     Motorola is Contractually Bound by Its Written FRAND Commitments .............. 4

     B.     Apple is a Third-Party Beneficiary of Motorola's FRAND Commitments............ 7

II.     APPLE'S CLAIMS BASED ON MOTOROLA'S UNTIMELY DISCLOSURE........... 11

     A.     ETSI's IPR Policy Unambiguously Called For Disclosure of Essential IPR
Prior to Adoption of the Relevant Standard........................................................ 11

     B.     The Three Patent Applications at Issue Were Not Confidential........................... 14

     C.     Motorola Does Not Dispute That It Did Not Disclose Its Patent
Applications Prior to Adoption of the Standards at Issue..................................... 15

CONCLUSION.................................................................................................................... 16

## TABLE OF AUTHORITIES

CASES                                                                                              PAGE(S)

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)...........................................................................................................1

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-cv-1846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)............................................10

*Broadcom Corp. v. Qualcomm, Inc.*,
    501 F.3d 297 (3d Cir. 2007)................................................................................1, 2, 6, 12

*Danielson v. Gasper*,
    623 N.W.2d 182 (Wis. Ct. App. 2000) ...................................................................................8

*Holmes v. Fed. Ins. Co.*,
    820 N.E. 2d 526 (Ill. App. Ct. 2004) .....................................................................................8

*Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.*
    942 N.Y.S.2d 718 (N.Y. App. Div. 2012) ..............................................................................8

*Microsoft Corp. v. Motorola, Inc.*,
    No. C10-1823, 2012 WL 2030098 (W.D. Wash. June 6, 2012)......................................4, 6, 9

*Microsoft Corp. v. Motorola, Inc.*,
    No. C10-1823, 2012 WL 627989 (W.D. Wash. Feb. 27, 2012) .........................................2, 7

*Schilling v. Emp'rs Mut. Cas. Co.*,
    569 N.W.2d 776 (Wis. Ct. App. 1997) ...................................................................................8

*Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.*,
    605 N.W.2d 620 (Wis. Ct. App. 1999) ...................................................................................8

## INTRODUCTION

In the first paragraph of its opposition brief, Motorola informs the Court that it "does not dispute that it made commitments to the industry groups," and "does not dispute that obligations flow from those commitments." Motorola's Memo. in Opp. to Apple's Mot. for Partial Summary Judgment ("Opp."), Dkt. No. 164, at 1. Motorola provides no explanation as to what it means by "obligations" and "commitments," but it goes on to argue that no one—not Apple and not even the standard-setting organizations ("SSOs") themselves—can ever require Motorola to honor the written promises it made to obtain incorporation of its patents into the standards at issue in this case. Motorola's attempt to render its admitted commitments *meaningless* is not only baseless but, if accepted, would call into question the integrity and legality under the antitrust laws of the entire standard-setting process. As the Supreme Court explained in *Allied Tube & Conduit Corp. v. Indian Head, Inc.*:

> [P]rivate standard-setting associations have traditionally been objects of antitrust scrutiny. When, however, private associations promulgate safety standards based on the merits of objective expert judgments and *through procedures that prevent the standard-setting process from being biased by members with economic interests in stifling product competition*, those private standards can have significant procompetitive advantages.

486 U.S. 492, 500-01 (1988) (emphasis added) (internal citations omitted).

In a case involving the same ETSI standards at issue here, the Third Circuit explained that standard-setting that might otherwise be viewed as a "naked agreement" not to compete is tolerated "'only on the understanding that it will be conducted in a nonpartisan manner offering procompetitive benefits' and in the presence of 'meaningful safeguards.'" *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 309-10 (3d Cir. 2007) (internal citation omitted) (quoting *Allied Tube*, 486 U.S. at 501, 506-07). The Court went on to highlight the critical role played by the two "meaningful safeguards" at issue in Apple's motion—the FRAND commitment and the

obligation to disclose essential patents—in ensuring the fundamental integrity of the standard-setting process.  *See id*. at 312-14.  The contrast between the *Broadcom* opinion and Motorola's brief could not possibly be more stark.

First, the *Broadcom* opinion explained that "FRAND commitments become important safeguards" because of the risk that companies will be "locked in to a standard requiring the use of a competitor's patented technology."  *Id.* at 314.  According to Motorola, however, a FRAND commitment is utterly feckless because it can never be enforced by anyone.  Indeed, without offering any evidence, Motorola makes the startling assertion that "IEEE does not view FRAND commitments to be enforceable contracts, and does not intend to enforce those commitments itself."  Opp. at 7 (identical assertion as to IEEE and ETSI).  To the contrary, however, IEEE submitted a lengthy *amicus* brief in *Broadcom* railing against such attempts to gut the FRAND obligation and explaining that SSOs "seek assurance from holders of essential patents because the assurances are necessary to avoid 'patent hold-up.'  Avoiding hold-up outcomes (with their exorbitant and exclusionary license demands) is critical to ensuring that a standard will be genuinely 'open' to implementation by all interested parties."  Lannin Reply Dec. Ex. 1[1] (Brief for Inst. of Elec. & Elecs. Eng'rs, et al. as *Amici Curiae* in Support of Neither Party.)[2]

Second, the *Broadcom* court explained that some standard-setting organizations also "rely on structural protections, such as rules requiring the disclosure of IPRs."  501 F.3d at 312.  Motorola's disdain for these important safeguards is again palpable.  Motorola begins by confessing that it "*does not dispute* that it submitted no IPR Information and Declaration

---

[1] All "Lannin Reply Dec." citations refer to the Declaration of Cortlin Lannin filed herewith.

[2] *See also Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012 WL 627989, at *7 (W.D. Wash. Feb. 27, 2012) ("It seems unlikely to the court that either the IEEE or the ITU would deem a patent essential for a certain standard only to permit that patent holder to turn around and abuse that power by seeking outrageously high royalty rates.").

Statement forms to ETSI specifically listing the '697, '559 or '898 patent by number prior to the incorporation of technologies covered by those patents into the relevant ETSI standards."  Opp. at 13 (emphasis added).  It then brushes aside this clear admission of a *pattern* of non-disclosure with the unsupported assertion that it had no obligation to disclose:  "ETSI does not *require* participants to disclose patents or patent applications at the time a proposal is made."  *Id.* at 14 (emphasis in original).  The ETSI IPR policy that Motorola concedes was in effect at the time, however, states, in plain and unambiguous terms:

> Each MEMBER *shall* use its reasonable endeavors to timely inform ETSI of ESSENTIAL IPRs it becomes aware of.  In particular, a MEMBER submitting a technical proposal for a STANDARD *shall*, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL *if that proposal is adopted*.

*Id.* at 13 (emphasis added).

The fact that Motorola disputes whether it is even bound by its written promises to ETSI and IEEE is not only an affront to the same organizations for which it tirelessly refers to itself as a "good corporate citizen," it is also a clear indication of its intent to disrupt the orderly presentation of evidence at trial in this matter.  As stated in Apple's carefully targeted motion for partial summary judgment, the trial in this case should be about whether Motorola breached its contractual obligations, not whether those contractual obligations exist in the first place.

## ARGUMENT

## I.    APPLE'S CONTRACT CLAIMS BASED ON MOTOROLA'S FRAND COMMITMENTS

Apple's narrowly focused motion seeks partial summary judgment (1) that a contract was formed through Motorola's commitments to IEEE and ETSI to license its patents on FRAND terms, and (2) that Apple, as a user of the IEEE and ETSI standards, is a third-party beneficiary of those agreements.  Last week—in a case involving the identical IEEE contract at issue here—

Judge Robart rejected Motorola's very same arguments and reaffirmed entry of summary

judgment for Microsoft on precisely these points:

> Here, a contract is formed through Motorola's (or any essential
> patent holder's) commitment to the IEEE or the ITU to license
> patents on RAND terms.  When the IEEE or the ITU learns that
> one of its standards or recommendations (as referred to by the
> ITU) may cover a private patent, both standard setting
> organizations ask the patent holder to [provide a RAND
> commitment] . . . so that the IEEE and the ITU may choose
> whether to incorporate the patented technology into a standard.
> Indeed, if the IEEE cannot obtain such a Letter of Assurance from
> the patent holder, it will refer the situation to the IEEE Patent
> Committee.  Historically, the IEEE has not included technology
> into a standard unless it could obtain a Letter of Assurance.
>
> *        *        *
>
> Motorola's commitments to the IEEE and the ITU are for the
> direct benefit of Motorola's potential licensees, including
> Microsoft.  Motorola committed to the IEEE and the ITU to license
> its essential patents on RAND terms to an unrestricted number of
> applicants.  These commitments are clearly designed to benefit
> potential licensees of Motorola's standard essential patent by
> ensuring that such patents are readily accessible to everybody at
> reasonable rates . . . .  Accordingly, Microsoft is a third-party
> beneficiary to Motorola's agreements with the IEEE and the ITU
> to license its standard essential patents on RAND terms, and
> therefore, Microsoft may sue for breach of that agreement.

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012 WL 2030098, at *5-6 (W.D. Wash. June

6, 2012).  Apple has moved for partial summary judgment on the same basis.

### A.   Motorola is Contractually Bound by Its Written FRAND Commitments

Motorola asserted eight patents[3] against Apple as essential to ETSI or IEEE standards, all

of which are among the patents that are subject to the FRAND commitments Motorola made to

ETSI or IEEE.  Motorola argues that Apple has failed to establish the basic elements of the

---

[3] Seven of the eight patents have now been dismissed, or voluntarily dropped by Motorola, in the
infringement actions, leaving the single patent that is the subject of an initial ALJ determination
currently being reviewed by the International Trade Commission.

4

contracts between Motorola and IEEE or ETSI because "the only evidence Apple points to are the FRAND assurances that Motorola submitted." Opp. at 5. Apple's contract claims, however, are based on Motorola's FRAND commitments *and* the ETSI and IEEE IPR Policies that required Motorola to submit them. Memo. in Support of Apple's Mot. for Partial Summary Judgment ("Mot."), Dkt. No. 144, at 2. As succinctly articulated in this Court's Order denying Motorola's motion to dismiss, the contractual elements of offer, acceptance, and consideration are, in this case, based on the IPR policies, Motorola's decision to become a member of ETSI and IEEE, its participation in the standard-setting process, and its submission of the FRAND commitments. Order Granting in Part & Denying in Part Mot. to Dismiss, Dkt. No. 93, at 16-17. As a result, it is the "combination of the policies and Motorola's [FRAND] assurances" that "constitute a contractual agreement." *Id.* at 19-20.

Motorola actually concedes all of these facts. It does not dispute the existence or admissibility of the applicable IPR Policies (Resp. to PPFF, Dkt. No. 165, at PPFF 11, 17-18); that it chose to become a member of ETSI and IEEE (PFOF, Dkt. No. 152, at PFOF 1); that it availed itself of the benefits of membership in those organizations through its participation in the standard-setting process that resulted in its standard-essential patents (PFOF 2); and that it made multiple written FRAND commitments to ETSI and IEEE (Resp. to PPFF 15-16, 19).[4]

Motorola argues that its "unilateral [FRAND] commitments" alone do not "on their face" refer to any consideration flowing to Motorola. Opp. at 1, 6. It makes no argument and cites no evidence suggesting there was in fact any lack of consideration to Motorola. Nor could it since it does not dispute that it participated—quite actively—in the standard-setting process that resulted

---

[4] "PPFF" refers to the proposed findings of fact Apple has submitted during the parties' summary judgment briefing; "PFOF" refers to Motorola's proposed findings of fact.

in the standard-essential patents at issue.  As explained by Judge Robart:  "Finally, regarding consideration, each standard setting organization promised to include, or at least consider including, the patent holder's technology in its standard in exchange for Motorola's promise to license its essential patents on RAND terms.  Thus the requisite consideration exists for contract formation."  *Microsoft*, 2012 WL 2030098, at *6.

Motorola also contends that FRAND commitments are not intended to be binding.  Opp. at 7.  This is simply preposterous.  First of all, if FRAND obligations were not binding, they would do nothing to "prevent the standard-setting process from being biased by members with economic interests in stifling product competition."  *Allied Tube*, 486 U.S. at 501; *see also Broadcom*, 501 F.3d at 313 ("To guard against anticompetitive patent hold-up, most [SSOs] require firms supplying essential technologies for inclusion in a prospective standard to commit to licensing their technologies on FRAND terms.").  Moreover, the language of the documents that constitute the contracts at issue in this case refute Motorola's contention.  Section 6.14 of the ETSI IPR Policy, for example, expressly states:  "Any violation of the POLICY by a MEMBER *shall be deemed to be a breach, by that MEMBER, of its obligations to ETSI*."  Apple Resp. to Motorola Add'l PFOF 2 (emphasis added).  Similarly, Motorola's FRAND commitment to IEEE expressly provides that "Motorola *agrees* to license those patents on a non-discriminatory basis offering fair and commercially reasonable terms."  Motorola Resp. to PPFF 19 (emphasis added).

Finally, Motorola argues that it would be inappropriate for the Court to make a determination as to the mere *existence* of these contracts because "the facts concerning Motorola's FRAND commitments are the subject of bitter dispute between the parties and go to the heart of the issues in this case."  Opp. at 8.  But that is precisely why Apple filed a very limited motion for *partial* summary judgment, noting that once the Court determines the

existence of the contracts, "all that will remain for the trial on these claims is a determination of whether, in fact, Motorola breached its contracts with ETSI and IEEE by demanding of Apple exorbitant licensing fees . . . and the amount of Apple's damages for this breach."  Mot. at 2-3. In FRAND cases such as this, narrowing the issues to those actually in dispute is clearly an appropriate use of the summary judgment mechanism.  *See Microsoft*, 2012 WL 627989, at *7 (granting partial summary judgment on existence of contract and third-party beneficiary elements even though the parties "disagree as to the terms and conditions of a RAND license, leaving the courthouse as the only viable arena to determine the meaning of 'reasonable' under the circumstances").

**B.      Apple is a Third-Party Beneficiary of Motorola's FRAND Commitments**

Apple is also entitled to summary judgment that it is a third-party beneficiary of Motorola's FRAND commitments based on the truism that a commitment to grant licenses on FRAND terms is plainly intended to benefit those to whom such a license may be granted. Stated more bluntly, Motorola admits it promised ETSI and IEEE, in writing, that it would not make unreasonable and discriminatory royalty demands.  Clearly Apple, as a party seeking a license from Motorola, is an intended beneficiary of those promises.  Not even Motorola can dispute this.

Instead, Motorola asserts that "[t]hough Motorola does not dispute that SSO members and others who seek to practice standards may benefit from its FRAND commitments by negotiating for licenses to Motorola's essential patents, Motorola disputes that this is the *primary* intent of its FRAND submissions."  Opp. at 11 (emphasis in original).  The first problem with this argument is that this appears to be the *only* intent reflected in Motorola's FRAND submissions, which are themselves no more than a few sentences in length.  Motorola Resp. to PPFFs 15 (ETSI) & 19 (IEEE).  Then there are the IPR Policies themselves.  For example,

7

Section 3.3 of ETSI's IPR Policy ("Policy Objectives") recognizes the need for ETSI to "take reasonable measures to ensure" that standards are "available to potential users" such as Apple. Apple Resp. to Motorola Add'l PFOF 11.  In order to "ensure" this expressly stated "objective," Section 6.1 of the IPR Policy, titled "Availability of Licenses," provides for the submission of declarations indicating that the patent holder "is prepared to grant irrevocable licenses" on FRAND terms.  PPFF 10.  Thus, contrary to Motorola's assertion that the benefit to Apple is merely "ancillary," both the IPR Policy that required Motorola to license parties such as Apple on FRAND terms, as well as the actual promise by Motorola to do so, make clear that Apple is an intended third-party beneficiary.

Moreover, while Motorola is correct that third-party beneficiary status requires that the contract be entered into "directly and primarily for the benefit of the third party," it fails to quote the rest of the language recognizing what is required to satisfy this standard:

> The person claiming third-party beneficiary status must show that the contracting parties entered into the agreement for the direct and primary benefit of the third party, *either specifically or as a member of a class intended to benefit from the contract*.

*Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.*, 605 N.W.2d 620, 623 (Wis. Ct. App. 1999) (emphasis added) (citing *Schilling v. Emp'rs Mut. Cas. Co.*, 569 N.W.2d 776, 780 (Wis. Ct. App. 1997)).  There is no question that Apple is a "member of the class" intended to benefit from Motorola's FRAND commitments.[5]

---

[5] Absent a genuine conflict between Wisconsin law and the law of another potentially applicable jurisdiction, the Court may apply Wisconsin law.  *Danielson v. Gasper*, 623 N.W.2d 182, 184 (Wis. Ct. App. 2000).  Although Motorola addresses only Wisconsin third-party beneficiary law, Apple notes that the law of New York (where IEEE is based) and Illinois (where Motorola is based) are consistent.  *See, e.g.*, *Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.,* 942 N.Y.S.2d 718, 720 (N.Y. App. Div. 2012) (where "performance is rendered directly to the third party, it is presumed that the contract was for his or her benefit"); *Holmes v. Fed. Ins. Co.*, 820 N.E. 2d 526, 530 (Ill. App. Ct. 2004) (sufficient that the contract "define the party benefited by the description (continued…)

Indeed, it is now beyond question that Apple is a third-party beneficiary of Motorola's FRAND assurances.  After conceding just a few months ago that Microsoft is a third-party beneficiary of the very same FRAND commitment to IEEE at issue here, *Microsoft*, 2012 WL 2030098, at *5 n.5 ("Your Honor, that is correct, we would agree that Microsoft can fairly claim to be the third-party beneficiary of the assurance."), Motorola reversed course and argued that its FRAND commitments "were in fact unilateral offers to grant licenses on RAND terms."  *Id.* at *5.  The outcome was the same:  "The court disagrees with Motorola's analysis of contract formation and reaffirms its holding from its February 27, 2012 order."  *Id.*  To state the obvious, if Microsoft is an intended third-party beneficiary of Motorola's FRAND assurance to IEEE, then so is Apple.[6]

Motorola's only response is that because *Microsoft* involved IEEE and not ETSI, "the Microsoft case is not binding on the Court or on Motorola *at least with respect to Apple's ETSI allegations*."  Opp. at 9 (emphasis added).  With respect to the ETSI claim, however, Motorola has conceded the contractual nature of its FRAND commitment to ETSI in yet another, separate case.  Lannin Reply Dec. Ex. 2 (*Research In Motion Ltd. v. Motorola, Inc.*, No. 3:08-CV-0284-G (N.D. Tex.), Dkt. No. 33 (Motorola's Memorandum in Support of Motion to Dismiss)).  In *Research In Motion*, RIM asserted breach of contract and promissory estoppel claims based on Motorola's unreasonable royalty demands with respect to patents it had declared essential to

---

of a class").  With respect to the ETSI claim, the parties agree that French law applies and, as discussed on pages 10-11 *infra*, French law is consistent with Wisconsin law as well.

[6] Motorola implies in a footnote that *Microsoft* may be different in some unspecified way.  *See* Opp. at 7 n.2.  It is not.  As stated above, "the formalities of contract formation" *were* disputed.  And in transferring Motorola's patent infringement case to Judge Robart, this Court noted that Microsoft's Seattle action alleges that "Motorola is breaching an agreement to license various patents, including the patents asserted in this case, at reasonable rates."  *Motorola Mobility, Inc. et al. v. Microsoft Corp.*, No. 3:10-cv-00699-bbc (W.D. Wis.), Dkt No. 44, at 4.

ETSI standards (including all four of the patents Motorola has asserted against Apple).  Arguing that promissory estoppel applies only in the absence of a contract, Motorola sought dismissal of that claim because "RIM has admitted that Motorola's FRAND obligations to standards organizations are contractual."  *Id.* at 21.

Finally, Motorola argues that although the ETSI contract "is governed by the laws of France, Apple fails to meet its *prima facie* burden of setting forth the law under which it claims it is entitled to summary judgment."  Opp. at 3.  To the contrary, Apple's motion and the supporting expert declaration detailed the applicable French law.  Apple's motion points to French law as governing; it explains that, as under Wisconsin law, Apple is entitled to partial summary judgment under French law; and it includes a detailed report from an expert on French law.  *See* Mot. at 16-17; PPFFs 60-62; Dkt. No. 159, Report of Professor Philippe Delebecque ("Delebecque Rep.").  Among other things, Prof. Delebecque explains, with citation to applicable French law, that Apple is a third-party beneficiary of Motorola's contractual obligation to license on FRAND terms.  *See* Delebecque Rep. at ¶ 25.  Apple therefore followed the appropriate mechanism for proving foreign law.  *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd.,* No. 11-cv-1846,  2012 WL 1672493, at *10 (N.D. Cal. May 14, 2012) (finding ETSI FRAND commitment governed by French law and denying motion to dismiss based on expert testimony that "has been and will likely continue to be the basic mode of proving foreign law").[7]

---

[7] Motorola makes no attempt to address French law and does not suggest it differs from Wisconsin law; it did not submit an expert report either in rebuttal or with its opposition to this motion; and when Apple relied on Prof. Delebecque's declaration in its proposed findings of fact, Motorola's only response was: "Dispute. PPFF-62 presents a question of law, not a fact."

Apple therefore asks that the Court grant partial summary judgment that:  (1) Motorola entered into binding contracts with ETSI and IEEE to license its patents on FRAND terms; and (2) Apple is a third-party beneficiary of Motorola's contractual obligations.

## II.   APPLE'S CLAIMS BASED ON MOTOROLA'S UNTIMELY DISCLOSURE

Apple's motion seeks partial summary judgment on three discrete and undisputed aspects of its failure to disclose claims, two of which Motorola has now opposed.  Given the nature of Motorola's opposition, however, Apple feels compelled to begin by identifying what is <u>not</u> at issue in this motion.

Apple's motion expressly noted that Apple is not seeking summary adjudication of whether Motorola had *violated* ETSI's IPR Policy:  "it does not seek a summary determination as to whether Motorola's failure to disclose was intentional or whether Motorola complied with the *bona fide* disclosure requirement of ETSI's IPR Policy."  Mot. at 5.  Nevertheless, Motorola's opposition is replete with arguments that "Apple has failed to prove that Motorola violated" ETSI's disclosure requirements, or that Motorola's "reasonable endeavors" satisfied the "*bona fide*" disclosure requirement of ETSI's policy.  Opp. at 1, 12, 13, 16.  Apple did not seek summary judgment on such issues—which it agrees are to be resolved at trial—so it will not respond to those arguments here.

### A.   ETSI's IPR Policy Unambiguously Called For Disclosure of Essential IPR Prior to Adoption of the Relevant Standard

Apple seeks summary determination that ETSI's IPR Policy called for the disclosure of essential patents *prior to adoption of the relevant standard* incorporating them.  Mot. at 20-22. Motorola makes no attempt to dispute this point.  Instead, Motorola argues that "ETSI does not require participants to disclose patents or patent applications *at the time a technical proposal is made*."  Opp. at 14 (emphasis added).  Having set up this straw man, Motorola launches into a

11

lengthy discussion—complete with a two-page recitation of deposition testimony—regarding its position that "patent applications are not disclosed in working groups at the time a technical submission is made to ETSI." *Id.* at 14-16.  Of course, Motorola is required to respond to the motion Apple filed, not the motion it wishes Apple had filed.

Apple seeks summary judgment that ETSI required disclosure prior to adoption, not that it required disclosure at the time of a technical submission.  The difference is significant.  As Motorola has conceded, many months (often years) pass between the time a technical proposal is submitted and the time it is adopted into the relevant standard.  Motorola Resp. to PPFFs 32, 36, 40-41, 46, 52, 56.  And regardless of whether disclosure is made at the time of the technical submission or at some subsequent point, it is the fact that disclosure occurs prior to adoption of the standard that mitigates the risk of patent hold-up.  *See, e.g.*, *Broadcom*, 501 F.3d at 310 ("An [SSO] may complete its lengthy process of evaluating technologies and adopting a new standard, only to discover that certain technologies essential to implementing the standard are patented.  When this occurs, the patent holder is in a position to 'hold up' industry participants from implementing the standard.").

Apple's motion is based on ETSI's IPR Policy.  The parties agree that the ETSI IPR policy in effect at the relevant time stated as follows:

> Each MEMBER shall use its reasonable endeavors to timely inform ETSI of ESSENTIAL IPRs it becomes aware of.  In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL *if that proposal is adopted*.

Opp. at 13 (emphasis added).

Without disputing that this plain language requires pre-adoption disclosure, Motorola argues that "in practice ETSI would permit general licensing declarations in lieu of requiring

submissions identifying specific patents by number prior to the standard being adopted, with specific patents identified later." Opp. at 17.[8]   The single document upon which Motorola relies for this proposition—a communication from Motorola to ETSI having nothing to do with the standards at issue in this case—actually demonstrates that Apple is entitled to summary judgment.   In that communication, Motorola tells ETSI "we believe we have IP that is essential" to a proposed standard being adopted within a matter of days, but that Motorola needs more time to identify the "specific" patents that are essential to that standard.   As a result, Motorola asks ETSI "if it would be possible to grant us an extension" of four weeks to provide "identification of the specific patents."   Bordonaro Dec. Ex. 3, Dkt. No. 166-3, at MOTO-APPLE-0007144704. This shows that Motorola understood that pre-adoption disclosure was required—otherwise there would have been no reason for it to ask ETSI to "grant an extension."   Armed with the pre-adoption knowledge that Motorola claimed to have patents essential to the particular technical specification under consideration, ETSI agreed to accept a general licensing declaration with the understanding that Motorola was engaged in a *bona fide* effort to provide a "proper and detailed identification of IPR" within a matter of weeks.   *Id.*   The "extension" Motorola requested and obtained therefore does not support its arguments; to the contrary, under the legal principle *exceptio probat regulam in casibus non exceptis* (colloquially, "the exception proves the rule"), it re-affirms ETSI's pre-adoption disclosure requirement.

With respect to the patents at issue in this case, Motorola is free to present at trial whatever admissible evidence it has showing that it made a *bona fide* effort to comply with

---

[8] Motorola concedes that ETSI's Guide on IPR states that:  "Use of the General IPR licensing declaration does not take away the obligation for members to declare essential patents to ETSI as stated in 2.1.1."   *See* Motorola Resp. to PPFF 66.

ETSI's pre-adoption disclosure requirement.  But Apple is entitled to summary judgment that

what the unambiguous language of ETSI's policy called for was *pre-adoption disclosure.*

> **B.     The Three Patent Applications at Issue Were Not Confidential**

Apple seeks summary judgment that Motorola was required to disclose to ETSI the

patent applications for the three patents at issue.  The parties agree that ETSI's IPR policy called

for disclosure not just of patents, but also of "applications therefore."  Motorola Resp. to PPFF

24.  In the past, Motorola has suggested that ETSI does not require the disclosure of

"confidential" patent applications.  Apple's motion does not go to that question, the premise of

which is that the patent applications were confidential.  Instead, the sole basis for Apple's motion

is that the three patent applications at issue were not *in fact* confidential.  In support of its

motion, Apple provided a variety of evidence establishing the non-confidentiality of each of

these patent applications.  Mot. at 22-24.

Motorola makes no attempt to respond to the evidence presented by Apple.  Instead,

Motorola argues that disclosure would not have been required if one were to *assume* its patent

applications were confidential.  Specifically, it points to the fact that U.S. law at the time

prohibited the Patent and Trademark Office from publishing patent applications "without

authority of the applicant."  Opp. at 18-19.  Of course, the law did not prevent the applicant itself

from disclosing its patent applications, which is precisely what Motorola did here.

Motorola's failure to come forward with any evidence to support its position is

particularly telling because Apple pointedly challenged Motorola's litigating position as a post-

hoc justification having no basis in fact.  Mot. at 23.  Furthermore, the basis for Apple's motion

could not have been more clear:  "In short, the fact that a patent application is *unpublished* does

not automatically mean that it is *confidential*.  And if an unpublished patent application is not

confidential, it is plainly subject to ETSI's timely disclosure obligation."  *Id.* at 24 (emphasis in

original).  Apple presented substantial evidence—including the testimony of Motorola's own

expert—establishing that the three patent applications at issue were not in fact confidential.  Mot.

22-24.  As Apple predicted, Motorola has come forward with no evidence to support its litigating

position.  Apple is therefore entitled to summary judgment on this point.

C.      **Motorola Does Not Dispute That It Did Not Disclose Its Patent Applications Prior to Adoption of the Standards at Issue**

Motorola has not disputed Apple's motion for summary judgment as to the simple and

uncontested timing of events that show that Motorola did not disclose to ETSI the three patent

applications at issue prior to adoption of the standards to which it claims the patents are essential:

| '898 Patent | |
|---|---|
| September 1997 | Patent Application |
| November 1997 | Motorola Submits Technical Proposal |
| April 2001 | Technical Proposal Incorporated into ETSI Standard |
| March 2002 | Issuance of '898 Patent |
| April 2003 | Motorola Disclosure of '898 Patent to ETSI |

| '559 Patent | |
|---|---|
| July 7, 1999 | Patent Application |
| July 13-16, 1999 | Motorola Submits Technical Proposal |
| March 2000 | Technical Proposal Incorporated into ETSI Standard |
| January 2001 | Issuance of '559 Patent |
| September 2002 | Motorola Disclosure of '559 Patent to ETSI |

| '697 Patent | |
|---|---|
| January 1998 | Patent Application |
| March 1998 | Motorola Submits Technical Proposal |
| December 1999 | Technical Proposal Incorporated into ETSI Standard |
| June 2001 | Issuance of '697 Patent |
| September 2002 | Motorola Disclosure of '697 Patent to ETSI |

Motorola has confirmed that it does not dispute the facts set forth above establishing the

chronological timing of its submissions to ETSI.  *See* Opp. at 12-13; Motorola Resp. to PPFFs

32-34, 36-38, 39-41, 44, 46-48, 50-52, 56-58.  Apple is therefore entitled to summary judgment

15

that Motorola did not disclose the three patent applications at issue to ETSI prior to adoption of the standards to which it claims the patents are essential.[9]

## **CONCLUSION**

For the foregoing reasons, Apple's Motion for Partial Summary Judgment should be granted.

Dated: June 11, 2012                    Respectfully submitted,

                                        */s/ Samuel F. Ernst*
                                        Robert D. Fram (CA Bar No. 126750)
                                        rfram@cov.com
                                        Christine Saunders Haskett (CA Bar No. 188053)
                                        chaskett@cov.com
                                        Samuel F. Ernst (CA Bar No. 223963)
                                        sernst@cov.com
                                        Cortlin H. Lannin (CA Bar No. 266488)
                                        clannin@cov.com
                                        COVINGTON & BURLING LLP
                                        One Front Street
                                        San Francisco, CA 94111-5356
                                        Telephone:  (415) 591-6000
                                        Facsimile:  (415) 591-6091

                                        Robert T. Haslam (CA Bar No. 71134)
                                        rhaslam@cov.com
                                        COVINGTON & BURLING LLP
                                        333 Twin Dolphin Drive, Suite 700
                                        Redwood Shores, CA 94065-1418
                                        Telephone:  (650) 632-4700
                                        Facsimile:  (650) 632-4800

                                        Deborah A. Garza
                                        dgarza@cov.com
                                        Jason C. Raofield
                                        jraofield@cov.com

---

[9] Out of an abundance of caution, Apple again confirms that it does not seek summary judgment as to whether Motorola violated its obligation to make timely disclosure to ETSI on a *bona fide* basis.  The parties agree that such issues are to be resolved at trial.  Opp. at 12-13.

16

COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

Matthew D. Powers
Matthew.Powers@tensegritylawgroup.com
Steven Cherensky
Steven.Cherensky@tensegritylawgroup.com
TENSEGRITY LAW GROUP LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:  650-802-6000
Facsimile: 650-802-6001

Mark G. Davis
mark.davis@weil.com
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Catherine Cetrangolo
cetrangolo@cetralaw.com
CETRA LAW FIRM LLC
20 North Carroll Street
Madison, WI 53703
Tel: 608-535-9220

*Attorneys for Plaintiff Apple Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel F. Ernst, an attorney, do hereby certify that I caused a copy of the foregoing to be electronically filed with the Court and served on all parties on June 11, 2012 using the Court's electronic case filing system.

By: <u>*/s/ Samuel F. Ernst*          </u>
         Samuel F. Ernst