UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| APPLE INC. ) | |
| ) | |
| Plaintiff and Counterclaim ) | Case No. 1:11-cv-178 (BBC) |
| Defendant, ) | |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| MOTOROLA MOBILITY, INC. ) | |
| ) | |
| Defendant and Counterclaim ) | |
| Plaintiff. | |

**DEFENDANT MOTOROLA'S BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING PRIOR LITIGATION JUDICIAL DECISIONS REGARDING THE PATENTS-IN-SUIT**

Defendant Motorola Mobility LLC ("Motorola") now moves this Court *in Limine* to exclude any evidence and argument concerning prior litigation judicial decisions regarding the Patents-in-Suit, pursuant to FEDERAL RULES OF EVIDENCE 402, 403, and 802.

**PRELIMINARY STATEMENT**

Apple should be precluded from introducing evidence regarding prior litigation dispositions for the patents in suit because these interlocutory judicial decisions are not relevant to the remaining breach of contract claims. The claims remaining in the case are not based upon a different court's determinations regarding the validity or infringement of a few of the hundreds of patents within Motorola's standards-essential portfolio. Nor would these later-made determinations have any effect on the reasonableness of licensing terms offered at a time when the patents that are the subject of these judicial decisions were valid and believed to be infringed. Apple's only claims that survived summary judgment are breach of contract claims based upon

Motorola's offer to license its standards-essential patent portfolio for a royalty of 2.25% and alleged failure to make timely disclosure to the European Telecommunications Standards Institute ("ETSI") of certain Intellectual Property Rights ("IPR").

## **PROCEDURAL HISTORY**

In its remaining claims, Plaintiff Apple, Inc. ("Apple") alleges that Motorola breached its contractual obligations to the ETSI by "failing to timely disclose purportedly Essential IPR, and to grant licensees to its purportedly Essential IPR on [Fair, Reasonable, and Non-Discriminatory ("FRAND")] terms." (Compl. at ¶ 144.) With respect to its ETSI-related allegations, Apple identifies the following Motorola patents: U.S. Patent No 6,359,898 ("'898 Patent") which Motorola declared as essential to "practice the GPRS functionality of the GSM standard," and U.S. Patent Nos. 5,490,230 ("'230 Patent"), 6,246,697 ("'697 Patent"), and 6,175,559 ("'559 Patent"), which Motorola declared as essential to "practice the UMTS standard." (Compl. ¶¶ 63-95.) Apple also alleges that Motorola breached its contractual obligations with the Institute of Electronical and Electronics Engineers ("IEEE") "by refusing to license its purportedly Essential IPR" to "Apple on [FRAND] terms." (Compl. ¶ 159.) With respect to its IEEE-related allegations, Apple identifies four Motorola patents – U.S. Patent Nos. 5,636,223 ("'223 Patent"), 5,311,516 ("'516 Patent"), 5,319, 712 ("'712 Patent"), and 5,572,193 ("'193 Patent") – all of which Motorola declared as essential to the IEEE 802.11 standard. (Compl. ¶¶ 113-17.)

All of the above-named patents (the "Patents-in-Suit") have been the subject of prior litigations between Motorola and Apple, Inc. The '697 and '223 Patents were the subject of *Certain Wireless Communication Devices, Portable Music and Data Processing Devices, Computers and Components Thereof*, U.S.I.T.C. Investigation No. 337-TA-745 ("ITC 745 Investigation"). In his Commission Opinion, the Administrative Law Judge ("ALJ") found that

the accused Apple products did not infringe either the '697 and the '223 Patents. (Ex. 1,[1] Commission Opinion at 23, 47.) The '898 Patent, '559 Patent, '516 Patent, '712 Patent, '230 Patent, and '193 Patent were all the subject of *Apple Inc. v. Motorola, Inc., et al.*, No. 1:11-cv-8540 (N.D. Ill.) (the "Illinois Action"). Motorola voluntarily withdrew the '516 and '230 Patents from suit. On summary judgment, the district found that that the '193 Patent was invalid and that the '712 and '559 Patents were not infringed. *Apple Inc.*, No. 1:11-cv-8540 (Dkt. nos. 526, 1002).

## ARGUMENT

Apple should be precluded from offering the above-identified decisions relating to the Patents-in-Suit because such evidence is irrelevant, constitutes hearsay, and, with regard to any determinations of the International Trade Commission("ITC determination"), has no preclusive effect. *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir. 2011) *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996).

Evidence of the prior litigation dispositions of the Patents-in-Suit have no bearing on Apple's remaining breach of contract claims and should therefore be excluded. *See* FED. R. EVID. 402. To succeed on its breach of contract claims, "Apple must prove that Motorola breached a contract by failing to make bona fide efforts to disclose its patents to ETSI in a timely manner and by failing to offer a license to its essential patents to Apple on fair, reasonable, and nondiscriminatory terms." (Dkt. No. 194, Opinions and Order, entered Aug. 10, 2012 at 46.) Determinations in the Illinois Action and ITC 745 Investigation regarding validity and

---

[1] "Ex. _" refers to the exhibits to the Declaration of Stephen A. Swedlow in Support of Motorola Mobility LLC's Motion i*n Limine* to Exclude Evidence and Argument Concerning Prior Litigation Judicial Decisions Regarding the Patents-In-Suit, filed concurrently herewith.

infringement have nothing to do with Motorola's disclosure of IPR to ETSI or licensing offers for Motorola's standard essential-patent portfolio.

The court's and ALJ's findings in the Illinois Action and ITC 745 Investigation, respectively, issued long after Motorola disclosed the Patents-in-Suit as essential and began its licensing negotiations with Apple. Motorola disclosed the '697 and '559 Patents as essential on September 20, 2002, (Ex. 2), the '898 Patent as essential on April 8, 2003, (Ex. 3), and identified those patents as part of its portfolio to Apple on August 6, 2007 and July 24, 2008, respectively. (Exs. 4 and 5.) Motorola began negotiating with Apple for a license to Motorola's standards-essential patent portfolio in August 2007. (Dkt. 50, Dailey Decl. ¶¶ 13-16.) At the time the patents were declared and during the parties' subsequent negotiation, all of the Patents-in-Suit were presumed valid. Indeed, the mere fact that the patents issued creates a legal presumption of validity. 35 U.S.C. § 282. As detailed in claim charts sent to Apple in 2007 and 2008, Motorola believed Apple to be infringing during the negotiation period. (*See* Exs. 4 and 5.) The fact that the court in the Illinois Action and the ALJ in the ITC 745 Investigation found certain of the Patents-in-Suit invalid or not infringed is not relevant to Motorola's disclosure and licensing activities that predated those determinations and should be excluded.

Further, as of July 2011, Motorola's standard-essential patent portfolio included 1,522 UMTS-essential patents, 731 GSM-essential patents, and 377 GPRS-essential patents. (Ex. 6.) Although the current and prior litigations have involved a specifically identified subset of Motorola's standards-essential patents, it is well established (and is not disputed) that Motorola does not license any of the Patents-in-Suit on an individual basis. *(See, e.g.,* Dkt. 263, Blasius 2/22/12 Dep. Tr. 235:2-236:21) Instead, each of the Patents-in-Suit was offered only as part of a portfolio license. (*Id.*) Apple has not offered any evidence to establish whether and to what

extent a finding of invalidity or non-infringement of a single patent or even a few patents within that portfolio would have on licensing of the entire portfolio of patents. In particular, none of Apple's experts have opined that the Illinois court's or ALJ's findings have had any impact on the value of Motorola's standard-essential patent portfolio or Apple's alleged FRAND rate. As such, Apple has no evidence that losing one or two patents from within a given portfolio would have caused Motorola to decrease its valuation of that portfolio. The only relevant inquiry for the remaining FRAND breach of contract claims is whether Motorola's offer was FRAND *at the time it was made*. In any event, the Parties voluntarily agreed pursuant to Rule 408 that none of the licensing negotiations after January 4, 2011 could be admissible in this or any other case. (*See* Exh. 7 at § 4.)

Finally, judicial opinions from prior litigations are considered hearsay under Rule 802. *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *U.S. v. Dupree*, 833 F. Supp. 2d 255, 279-80 (E.D.N.Y. 2011). Introduction of evidence concerning the prior litigation dispositions of the Patents-in-Suit constitutes an out of court statement being offered for the truth of the matter asserted – namely, a *different* court's opinion that a patent is invalid or not infringed. FED. R. EVID. 801. Such judicial statements do not fall within the purview of any of the hearsay exceptions. In fact, only two hearsay exceptions allow for the admission of judgments. Rule 803(22) is limited to prior judgments involving criminal convictions subject to more than one year of imprisonment, and Rule 803(23) is limited to judgments used to provide "proof of matters of personal, family or general history, or boundaries." Neither is applicable here. The only other potential exception, Rule 803(8), has been found inapposite. *Nipper*, 7 F.3d at 417; *Dupree*, 833 F. Supp. 2d at 279 (exception applies only to "public agencies and offices with a legal duty to make such [factual] findings after an

investigation"). Therefore, evidence of the prior litigation dispositions of the Patents-in-Suit constitutes inadmissible hearsay.

## CONCLUSION

For the foregoing reasons, Motorola respectfully moves this Court *in Limine* to exclude any evidence and argument concerning prior judicial decisions regarding the Patents-in-Suit, pursuant to FEDERAL RULES OF EVIDENCE 402, 403, and 802.

Dated: September 28, 2012                                   MOTOROLA MOBILITY LLC

                                                                      By:   */s/ Stephen A. Swedlow*
                                                                           Stephen A. Swedlow

| | |
|---|---|
| Scott W. Hansen<br>Lynn M. Stathas<br>Lisa Nester Kass<br>Reinhart Boerner Van Deuren s.c.<br>22 East Mifflin Street<br>P.O. Box 2018<br>Madison, WI 53701-2018<br>Telephone: (608) 229-2200<br>Facsimile: (608) 229-2100<br>1000 North Water Street, Suite 1700<br>Milwaukee, WI 53202<br>Telephone: 414-298-1000<br>Facsimile: 414-298-8097<br>Email: shansen@reinhartlaw.com<br>lstathas@reinhartlaw.com<br>lkass@reinhartlaw.com | David A. Nelson<br>Stephen A. Swedlow<br>Amanda S. Williamson<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>500 West Madison St., Suite 2450<br>Chicago, IL 60661<br>Telephone: (312) 705-7400<br>Facsimile: (312) 705-7401<br>Email: davenelson@quinnemanuel.com<br>stephenswedlow@quinnemanuel.com<br>amandawilliamson@quinnemanuel.com<br><br>Edward J. DeFranco<br>Alexander Rudis<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br>Email: eddefranco@quinnemanuel.com<br>alexanderrudis@quinnemanuel.com<br><br>Brian C. Cannon<br>Meghan Bordonaro<br>Shawna M. Reeder<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100<br>Email: briancannon@quinnemanuel.com<br>meghanbordonaro@quinnemanuel.com<br>shawnareeder@quinnemanuel.com<br><br>*Attorneys for Defendant Motorola Mobility LLC* |