# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

APPLE INC.,

    Plaintiff,   )

           )

           )  Case No. 11-cv-178-bbc

  v.        )

MOTOROLA

MOBILITY, INC.,

    Defendant.  )

## MOTOROLA'S MOTION FOR CLARIFICATION

### INTRODUCTION

On October 29, 2012, this Court issued an order ruling on the parties' outstanding motions *in limine,* some of which relate to the scope of trial and to potential relief that may be granted by this Court.. *See*, Dkt. No. 424. The Court has determined that if Apple establishes that Motorola breached its obligations with IEEE and ETSI (specifically the FRAND obligations), the Court may allow Apple to seek specific performance as a remedy under the circumstances of this case. *See*, Dkt. 424 at 8. The Court noted that "it makes little sense to order the parties to continue negotiating a license when they have been unable to reach an agreement through five years of negotiation." *Id.*[1] For purposes of this Motion, Motorola seeks clarification with respect to the contract and terms to which specific performance may apply in the event the Court does "determine license terms." *Id.* at 9. If the Court intends to resolve the dispute between Motorola and Apple regarding the Motorola ETSI and IEEE essential patents at

---

[1] Motorola respectfully disagrees with the Court that it either has jurisdiction or will have the information required to determine a FRAND rate or FRAND terms for the portfolios at issue and intends to demonstrate this at trial.

issue by establishing licensing terms, the Court must also enforce those terms against Apple and require it to pay the license fees established by the Court for all worldwide sales (both past and future) of devices practicing the ETSI and IEEE standards at issue.  Otherwise, Apple would improperly obtain an advisory opinion from this Court.  As discussed below, this case is different *Microsoft v. Motorola* in that Microsoft has explicitly represented that it is "ready and willing" to accept the FRAND rate Judge Robart will determine.

The Court previously held that the "contracts" at issue are the ETSI and IEEE policies to which the Court previously held Apple to be a third party beneficiary.  Further, the Court has specifically limited these claims to the commitments for UMTS, GPRS and 802.11.

> Apple's breach of contract claims are premised on Motorola's commitments to ETSI and IEEE with respect to certain standards, including ETSI's Universal Mobile Telecommunications System standard, the General Packet Radio Service functionality of ETSI's Global System for Mobile Communications standard and the IEEE's 802.11 standard.

*See,* Dkt. No. 424 at 13.  In the event Motorola is found to be in breach of its ETSI and IEEE FRAND obligations and this Court establishes "license terms," then Apple must be required in that same context to accept the license to Motorola's essential patents on the license terms established by this Court.  The concerns regarding inefficiency and continued patent infringement litigation between Apple and Motorola can only be addressed (in the event Motorola is found to be in breach) if the remedy of specific performance binds Apple insofar as Apple is required to pay the license fee for all accused devices.  These devices include all of Apple's worldwide past and future sales of all models of the  iPhone and iPad as well as any other devices compliant with the relevant standards.  The Court would have to exclude sales in Germany – where the parties have negotiated a license agreement and have submitted the to the Orange Book proceedings in that jurisdiction to establish the royalty rate.  In order for this Court

to fashion a meaningful remedy of specific performance for Motorola's alleged breach, Apple must be bound to pay the license terms – including, but not limited to, the geographic scope and applicable time period for payment.

## ARGUMENT

In the October 29, 2012 order, this Court stated as follows:

> Unless and until Motorola gives Apple a fair license to its declared-essential patents, Apple will continue to face the threat of patent infringement litigation from Motorola.  It would be highly inefficient to require Apple to bring a new lawsuit for monetary damages or declaratory relief each time Motorola sues it for patent infringement.  Additionally, it makes little sense to order the parties to continue negotiating a license when they have been unable to reach an agreement through five years of negotiating.

*See*, Dkt. 424 at 8.  It necessarily follows that unless and until Apple is required to pay the license terms established through the remedy of specific performance, the continued patent infringement litigation between the parties would be an inevitability.  As this Court is aware, the only mechanisms for Motorola to recover royalties for patent infringement of ETSI and IEEE essential patents from Apple would be either: (1) through this litigation, or (2) by filing patent infringement litigation for all of the hundreds of Motorola declared essential patents applicable to the standards at issue in this case.  If the Court believes a remedy of specific performance is necessary to avoid the inevitable continued litigation between these parties, the Court must also require Apple to pay the "licensing terms" established in that event.  Of course, Apple is not entitled to this remedy if it cannot establish Motorola's breach as a threshold matter.

As the Court notes in its 10/29/12 Order at 9, "both ETSI and IEEE have declared their unwillingness to assist parties in determining license terms or in resolving disputes between the parties."  *Id*. at 9.  The Court also cites an ETSI Guide stating that "specific licensing terms and negotiations are commercial issues between the companies and shall not be addressed within

ETSI." *Id.* (internal citations omitted). While Motorola maintains that the specific licensing terms between Apple and Motorola for the Motorola portfolios should be considered "commercial issues between the companies" resolved through negotiation, if this Court intends to effectively establish a patent license agreement between Motorola and Apple , it must require Apple to comply with that license agreement. If not, the license agreement established by this Court (and its concomitant licensing terms) would be purely advisory and would not lead to any resolution of any portion of the dispute between the parties. In other words, if Apple is seeking licensing terms, it must be ready and willing to pay for the patent licenses on those same terms it seeks.

In its October 29 Order, this Court cited the District Court for the Western District of Washington, noting that Judge Robart "explained recently in a similar case involving Motorola's license commitments to IEEE" why Judge Robart was willing to set a FRAND range and rate for the patents at issue in that case. Dkt No. 424 at 9 (citing *Microsoft Corp. v. Motorola, Inc.*, Case No. C10-1823JLR, 2012 WL 4827743, *6 (W.D. Wash. Oct. 10, 2012). However, the critical procedural and substantive distinction between the Microsoft/Motorola case pending before Judge Robart and this case (currently) is that Microsoft (for its part) has repeatedly affirmed (and the court has so held) that Microsoft: (1) needs a license, and (2) is ready and willing to pay the license terms established by that court. *See*, *Microsoft Corp. v. Motorola, Inc.*, Case No. C10-1823JLR, 2012 WL 4827743, *8 (W.D. Wash. Oct. 10, 2012) ("Microsoft has repeatedly represented to the Court that it believes it needs a license and that it is ready and willing to accept a license to Motorola's essential patents on RAND terms."); *See*, *Microsoft Corp. v. Motorola, Inc.*, Case No. C10-1823JLR, 2012 WL 2030098, *9 (W.D. Wash. June 6, 2012)

("Microsoft has stated to this court that not only does it believe it needs a license, it is ready and willing to accept a license on RAND terms.") (internal citations omitted).

As a threshold matter, Apple's Complaint in this action does not seek to establish license terms for Motorola's relevant standards essential patents.  The only allegation in Apple's Complaint that even refers to specific performance states nothing about establishing licensing terms between Apple and Motorola.  *See,* Apple Cplt. Dkt. 110 ¶197(h).  The only basis Apple has ever cited for Apple's recent request for this Court to set a FRAND is its request for relief seeking "an order ordering Motorola to specifically perform its contractual commitment to license its essential patents on F/RAND terms."  *Id.*  Motorola has in good faith always understood this request to relate to an obligation to negotiate on FRAND terms.  Motorola understands Apple's current desire to seek a FRAND rate to be based on its desire to obtain the relief that Microsoft is requesting in *Microsoft v. Motorola* in Washington - namely that the court draft a license for the parties.  Judge Robart has conditioned his potential consideration of such relief on Microsoft's representation that it will absolutely take a license on the terms the that the court sets.  If Apple seeks the potential remedy Microsoft seeks in its case, the Apple must at least make the same commitment Microsoft made to accept the license terms and pay.

Finally, Motorola respectfully reserves its rights to object to the setting of a FRAND rate as a "license term" under Apple's request for specific performance.  This constitutes a change in the scope of this case.  The expert testimony in the *Microsoft v. Motorola* case will address the actual patents at issue in that case under those two standards and the technological value of each of the patents involved in the license the court intends to establish.   In contrast, neither party will present to this Court any testimony regarding the subject matter, technology or value of almost all of the patents at issue in ETSI and IEEE Motorola portfolios applicable to Apple's devices.

As this Court noted in its October 29, 2012 Order, "as Apple's own experts have testified, the value of Motorola's declared-essential patents should be determined by an assessment of their value over any non-infringing alternatives at the time Motorola's patents were incorporated into the standard." *See*, Oct. 29, 2012 Order, Dkt. 424 at 17-18.  Tellingly, Apple will be unable to offer this evidence for most of the patents in Motorola's portfolios.  If Apple had actually pled a claim for FRAND rate-setting relief, Motorola could have offered technical expert testimony and/or other expert testimony on the value over non-infringing alternatives for the entire portfolio.  Motorola has effectively been denied this opportunity.  Although the Court declined to grant Motorola's motion *in limine* regarding Apple's failure of proof on the value of the relevant Motorola portfolios for purposes of establishing licensing terms, this is not simply a criticism of the methods used by Apple's experts.  Instead, it is a failure of either party to present the evidence Apple's own expert believes is appropriate for the Court to establish a FRAND rate as a license term applicable to the parties.  This failure of proof is a result of the fact that Apple added this request for a FRAND royalty rate-setting procedure well after expert disclosures.  Motorola maintains its objection to this procedure because the Court cannot determine the value of the patents at issue in Motorola's IEEE and ETSI portfolios and should not establish the royalty rate for those patents.

## CONCLUSION

For the reasons stated herein, Apple must commit to pay the FRAND rate set by the Court before it may seek the remedy of specific performance to set such a rate for Motorola's breaches.  Otherwise, any such remedy would be advisory.

Dated: October 30, 2012

Respectfully Submitted,

MOTOROLA MOBILITY LLC

By:      _s/ Stephen A. Swedlow_
         Stephen A. Swedlow

Scott W. Hansen
Lynn M. Stathas
Lisa Nester Kass
Reinhart Boerner Van Deuren s.c.
22 East Mifflin Street
P.O. Box 2018
Madison, WI 53701-2018
Telephone:  (608) 229-2200
Facsimile:   (608) 229-2100
1000 North Water Street, Suite 1700
Milwaukee, WI  53202
Telephone:  414-298-1000
Facsimile:   414-298-8097
Email:  shansen@reinhartlaw.com
         lstathas@reinhartlaw.com
         lkass@reinhartlaw.com

David A. Nelson
Stephen A. Swedlow
Jennifer A. Bauer
Amanda S. Williamson
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison St., Suite 2450
Chicago, IL 60661
Telephone:  (312) 705-7400
Facsimile:   (312) 705-7401
Email:  davenelson@quinnemanuel.com
         stephenswedlow@quinnemanuel.com
         jenniferbauer@quinnemanuel.com
         amandawilliamson@quinnemanuel.com

Edward J. DeFranco
Alexander Rudis
David Elihu
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100
Email:  eddefranco@quinnemanuel.com
         alexanderrudis@quinnemanuel.com
         davidelihu@quinnemanuel.com

Brian C. Cannon
Meghan Bordonaro
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100
Email:  briancannon@quinnemanuel.com
         meghanbordonaro@quinnemanuel.com

_Attorneys for Defendant Motorola Mobility LLC_

7