# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | Case No. 11-CV-178-bbc |
| v. | Hon. Barbara B. Crabb |
| MOTOROLA MOBILITY, INC. | |
| Defendant. | |

## APPLE'S OPPOSITION TO MOTOROLA'S MOTION FOR CLARIFICATION

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. The Court Should Deny Motorola's Attempt to Seek Reconsideration on the Scope of the FRAND Trial ....................................................................................... 2

    B. Motorola's Request That the Court Compel Apple to Accept Motorola's Court-Ordered Rate Is Outside the Scope of Motorola's Pleadings and Discovery Responses ................................................................................................. 4

    C. Any Court-Set FRAND Rate Applies Worldwide and Should Not Carve Out Germany ..................................................................................................................... 6

    D. Although It Is Not So Obligated, Apple Is Willing To Pay the FRAND Rate of Not More Than $1 Per Unit Going Forward ......................................................... 8

III. CONCLUSION .................................................................................................................. 9

**I.     INTRODUCTION**

For the third time in a month, Motorola attempts to redefine the scope of this FRAND trial, this time in the guise of a motion for "clarification." Motorola's eve-of-trial motion is one part improper request for reconsideration, and one part untimely request to amend its pleadings. Neither part should succeed.

Incredibly, Motorola bases its new motion on surprise—that despite Apple's explicit request in the pleadings for an order of specific performance against Motorola "to license its essential patents on F/RAND terms," and despite the fact that Motorola embraced the concept of a court-ordered RAND rate in the *Microsoft* case, Motorola never believed <u>this</u> Court could order such relief. *See* Motion at 5. Whether or not Motorola's surprise is genuine and somehow explains its failure to offer expert testimony on what the FRAND rate should be in what it always knew was a litigation about FRAND, Motorola's motion must fail because the Court has already rejected Motorola's argument. Motorola twice moved to constrain the scope of the trial, first in its motions *in limine*, and next in its motion for guidance on the length of trial. The Court has resolved the issue. Motorola has no new basis to request reconsideration.

Next, Motorola's motion includes an entirely new and unpled request for affirmative relief: that the Court compel Apple to pay Motorola cash immediately upon the Court setting the FRAND rate on Motorola's portfolio. Motorola has never even hinted at this affirmative relief in any of its pleadings or discovery responses, and this request is contrary to Motorola's continued insistence—even in the present motion—that the Court cannot set the FRAND rate. The contracts at issue do not support Motorola's belated request. Motorola's commitment to standard-setting organizations to offer a FRAND rate does not bind Apple to write a blank check and accept that offer. While Motorola points out that Microsoft agreed that Microsoft would

1

commit to pay Motorola at the conclusion of the *Microsoft* case, Motorola never made a similar request of Apple here, and thus it never became a condition of the Court's FRAND remedy. This part of Motorola's motion is untimely, is inconsistent with Motorola's pleadings, and should be rejected.

Apple has however been an outspoken leader in the industry on FRAND and has repeatedly urged that a rational and consistent framework for determining FRAND rates for wireless standards-essential portfolios must be set. Apple's actions in both licensing and litigation have matched its words in public. Because of that, Apple is willing to pay the FRAND rate this Court sets going forward if that rate is less than or equal to $1 per unit for its worldwide sales of covered products, as further discussed below in Section II.D. This is the rate that Apple believes is appropriate in these circumstances, a rate that flows from Apple's articulated FRAND framework, and the only rate that can be supported by experts at this trial. To the extent the Court sets the rate higher than $1 per unit, Apple reserves the right to exhaust all appeals and also reserves the right available to any party offered a license: the right to refuse and proceed to further infringement litigation. The Court has stated that it intends to set the "current fair license rate for purposes of specific performance." Dkt. No. 424 at 18. With regard to Motorola's request for an order requiring Apple to pay Motorola for the past (which is also beyond the scope of the specific performance remedy requested), Apple is confident that parties can negotiate a resolution once the Court sets a FRAND rate going forward.

## II. ARGUMENT

### A. The Court Should Deny Motorola's Attempt to Seek Reconsideration on the Scope of the FRAND Trial

Under the guise of a motion for clarification, Motorola submits a motion that is in large part a motion for reconsideration that does not meet this Court's requirement to introduce new

evidence or argument. Motorola repeats the arguments it lost three days ago in its motions *in limine* and Daubert motions. *Compare* Dkt. No. 444 (Motion for Clarification) at 5-6 (alleging that setting the rate exceeds Apple's evidence) *with* Dkt. No. 386 (Motion for Guidance on Trial Schedule) at 2 (alleging that setting a FRAND rate "exceeds the scope of the . . . evidence and expert reports in this matter.") But Motorola's motion lacks any new evidence or argument that would cause this Court to reconsider its 57-page opinion.

It is Motorola, not Apple, that suffers from a lack of proof on key FRAND-rate issue. This Court held on Monday that it will set the FRAND rate that Motorola must offer to Apple (provided that Apple proves the breach of Motorola's contracts with ETSI and IEEE). Dkt. 424 (MIL Order of Oct. 29, 2012) at 10. The Court further held that Motorola's only expert, Dr. Leonard, "did not offer any opinion about what particular rate or range or rates would constitute a FRAND royalty" and thus cannot testify about a particular rate at trial. *Id*. at 49. Faced with these significant adverse holdings, Motorola attempts now to salvage its case in which it failed to provide a competent evaluation on the appropriate FRAND rate.

Apple has consistently and methodically pursued and amassed evidence on what the proper FRAND rate is. In the spring of this year, Apple's expert, Louis Berneman, submitted an expert report, which in no uncertain terms set forth Apple's view of the proper FRAND rate. He stated: "Thus a royalty payment of no more than $1.01 per (iPhone) unit would have been consistent with Motorola's F/RAND obligations." Dkt No. 447-2 (Berneman Rpt. (Sept. 15, 2011)) at 55. Motorola thus could not have reasonably believed that Apple would not ask this Court to set the FRAND rate.

As Apple will show at trial next week, there is copious real-world evidence—including Motorola's contemporaneous licenses—that establishes a ceiling for the FRAND rate Motorola

3

could charge Apple for Motorola's worldwide portfolio. That ceiling is $1 per phone, which is more than Motorola was charging to Apple and others the moment the iPhone entered the market, more than Motorola has received in value from its competitors, and substantially more per-patent than Apple has paid for its other standards-essential licenses. Apple's experts and employees will explain why this framework is proper and how Motorola has utterly failed to provide a fair offer on these terms, which Apple asks the Court to set. Motorola's renewed arguments about lack of evidence on the proper FRAND rate continue to be baseless and must again be rejected.

**B.    Motorola's Request That the Court Compel Apple to Accept Motorola's Court-Ordered Rate Is Outside the Scope of Motorola's Pleadings and Discovery Responses**

Motorola's eleventh-hour request to the Court that it compel Apple to pay immediately on the FRAND rate the Court may set is the first time Motorola has raised this request for affirmative relief. Motorola's pleadings contained no such request for specific performance. Motorola has not pursued this claim in discovery, and has not stated it in any of its discovery responses. Not even Motorola's proposed special verdict filed on Monday included the request for this relief. *See* Dkt. No. 438 (Motorola's Special Verdict Form). In fact, Motorola still continues to strenuously object to the Court's ability to even set the FRAND rate. Dkt. No. 444 (Motion for Clarification) at 5-6. Moreover, this Court has consistently made it clear that it will not allow the parties to expand the scope of this case by inserting new unpled theories, let alone new forms of affirmative relief. Dkt. No. 424 (Order on MILs) at 37.

Even if the request were timely, Motorola cannot support an argument that Apple is somehow bound to perform under *Motorola's contract* with the SSOs, which requires only that *Motorola* offer a FRAND license. The remedies in this case focus on Motorola's obligation to offer a FRAND license *to Apple*. In fact, the Court repeatedly so stated:

- Apple is seeking "an order requiring **Motorola to offer a [FRAND] license to Apple**."

4

- Apple seeks "an order requiring specific performance of **Motorola's contractual commitments**."
- "Apple intends to ask the court to order **Motorola to offer a license** for its standards-essential patents to Apple on fair, reasonable and nondiscriminatory terms.

Dkt. No. 424 (MIL Order of Oct. 29, 2012) at 5, 7 (emphases added).

Apple's request is rooted in *Motorola's* contracts with ETSI and IEEE to offer its essential patents on FRAND terms. Dkt. No. 194 (Summary Judgment Order of Aug. 10, 2012) at 46. Motorola's commitment to the SSOs does not create a contractual obligation on Apple to accept the rate that Motorola offers, let alone to blindly accept any such offer and write a blank check before it even knows exactly what that offer is. The Court should therefore determine whether Motorola was required to offer the particular rate to Apple, not whether Apple had to accept that rate.

Motorola now suggests that the Court should be writing a full license at the end of this case. Dkt. No. 444 (Motion for Clarification) at 1-2. That is not what this case is about and Motorola's assertion is directly contrary to Motorola's positions stated as recently as last week and in this motion where it continues to argue that the Court cannot even set the FRAND rate. Apple has consistently pled, pursued evidence, and provided expert opinions aimed at the ultimate order that Motorola has breached its obligation to *offer* a FRAND rate, and that Motorola is obligated to offer Apple that particular rate. This Court acknowledged that in stating that Apple was seeking "the trial [that would] result in a determination of **a specific rate or range** that constitutes a fair, reasonable and nondiscriminatory license for Motorola's patents and an order requiring Motorola to offer that license to Apple." Dkt. 424 (MIL Order of Oct. 29, 2012) at 5 (emphasis added). The Court also held that it will determine "what **rate or range of rates** would qualify as a fair, reasonable and nondiscriminatory license offer for Motorola's standards-essential patents. *Id*. at 10 (emphasis added). In fact, contrary to Motorola's

5

assertions, that is what the *Microsoft* case is about as well: "Again, the court reiterates that the November 13 trial will not result in the creation of a RAND license agreement, but instead will determine a RAND royalty range and a RAND royalty rate." Dkt. No. 420-16 (Order of Oct. 10, 2012 in *Microsoft Corp. v. Motorola, Inc.*, Case No. C10-1823JLR (W.D. Wash.) ) at 17-18. Apple has also made it abundantly clear that the rate at issue is one on Motorola's standards-essential portfolio. *See, e.g.*, Dkt. No. 419 (Apple's Opp. to Motorola's Motion for Guidance on Trial Schedule) at 17-18. Apple is not asking the Court to execute a cross-license between the parties, and no party is asking the Court to set a FRAND rate for Apple's standards essential portfolio. *Id*.

What Motorola actually seeks is a voluntary commitment by Apple to pay Motorola upon the completion of the case. Motorola could have made such a request months ago—the issue could not have been a surprise given the parallel nature of these cases and the fact that Motorola is represented by the same counsel in both—but Motorola chose not to. It is simply too late to ask the Court to compel this relief.

> **C.   Any Court-Set FRAND Rate Applies Worldwide and Should Not Carve Out Germany**

Motorola not only now seeks a fully executed and paid license with Apple at the conclusion of the case, it seeks for the first time a carve-out of Germany from a "worldwide" FRAND license. There can be no question that the FRAND rate this Court sets should apply globally. First, Motorola initiated and pursued its negotiations with Apple based on its worldwide standards-essential portfolio. As this Court noted, "[a]t the initial meeting between the companies, Motorola presented information to Apple concerning its licensing program and stated that its standard royalty rate was 2.25% for a worldwide license to its portfolio of standards-essential patents." Dkt. No. 194 (Summary Judgment Order of Aug. 10, 2012) at 12.

Motorola's contract at issue in fact obligates it to offer a license to its worldwide portfolio. *See, e.g.,* Dkt. No. 439 (Apple's Proposed Findings of Fact) at 7 (quoting IEEE's request to members to provide "a statement that a license … will be made available to an unrestricted number of applicants on worldwide basis."). Even in this motion Motorola refers to worldwide sales. Dkt. No. 444 (Motion for Clarification) at 2.

Second, there is no basis to exclude Germany—or any other country—from the reach of the FRAND rate this Court may set. This litigation, filed March 11, 2011, arose from the 745 ITC Investigation, commenced at October 6, 2010. Thus, this litigation commenced years before the start of the Orange Book "rate setting" proceedings Motorola references although the German patent infringement proceedings had been ongoing before that. In fact, the license Motorola refers to was not executed until late April 2012, and the rate-setting proceeding commenced recently. (Indeed, this litigation substantially precedes even the German infringement actions that prompted that license.) Accordingly, Apple expects that the judgment of this Court will moot the later-filed German rate-setting action. Therefore, before this motion there has never been any suggestion from Motorola that the Court would somehow be prevented from resolving this FRAND dispute on a worldwide basis, and Motorola's one-sentence argument in this Motion does not change that. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, Case No. 12-35352, 2012 U.S. App. LEXIS 20349, at *30 (9th Cir. Sept. 28, 2012) (upholding the district court's anti-suit injunction against Motorola's German proceeding, the Court confirmed the primacy of the U.S. contract action that included Motorola's contract with an SSO to offer a license on worldwide basis and thus including patent rights at issue in Germany as well).

7

### D.   Although It Is Not So Obligated, Apple Is Willing To Pay the FRAND Rate of Not More Than $1 Per Unit Going Forward

Apple has publicly spoken about the necessity for setting a rational and reciprocal framework for assessing the FRAND rate on wireless declared standards-essential portfolios. In fact, Apple has been a leader in adhering to FRAND policies for licensing cellular standards-essential patents on rates proportional to the share of standards patents and on common bases that actually embody the standardized technology. Apple's litigation conduct has been fully consistent with its public statements regarding the proper approach to evaluating the FRAND rate. And as an industry leader, Apple conducts itself responsibly and owns up to its own public statements.

Although Apple does not believe that Motorola may now seek an order compelling Apple to pay the rate this Court sets, Apple would be willing to pay a Court-ordered FRAND rate of less than or equal to $1 per covered product on the going-forward basis. This is the rate that Apple believes is appropriate in these circumstances for Motorola's portfolio of cellular and WiFi essential patents. It is also consistent with the reasoned framework Apple has publicly articulated, and the only rate that can be supported by the evidence at this trial. Because neither party is asking this Court to draft a fully executable cross-license with all the necessary terms, Apple does expect that further negotiation will need to take place before the parties actually come to an agreement, covering topics such as the FRAND value of Apple's cross-license, the role of Apple's existing license to Motorola's portfolio through Qualcomm, and the treatment of past sales. That this is so does not by any measure make this trial "advisory," as Motorola contends. Motorola's contracts require it to perform a discrete legal act – offer a FRAND rate to Apple – and an order requiring Motorola to do just that is among the concrete relief Apple seeks as remedy here. Further, Apple's expectation is that the Court's judgment on this point will have

8

a palpable, powerful effect on the parties' broader, ongoing global settlement discussions (extending beyond standards-essential patents), a substantial sticking point in which is the very question the Court will adjudicate: what are Motorola's standards-essential patents worth?

Motorola cannot offer evidence at this trial that the rate should be higher than $1 per phone, but to the extent the Court sets the rate higher than $1 per unit, Apple reserves the right to exhaust all appeals and needs also to reserve the right available to any party offered a license: the right to refuse and proceed to further infringement litigation. Make no mistake, that is not an outcome Apple desires. The parties have spent an exhausting two years litigating against each other around the world. But if the Court were to set, for example, the rate Motorola is seeking (2.25% of Apple's covered product revenue), that would amount to billions of dollars per year. That is orders of magnitude more than Apple is paying for even substantially larger standards-essential patent portfolios. Indeed, over several years such a figure would eclipse the recent entire cost of acquisition of Motorola. In such circumstances, Apple may need Motorola to demonstrate that its *declared* essential patents are *in fact* essential patents and worth that amount of money, a hurdle Motorola has thus far been unable to clear with what are presumably its best patents.

## III. CONCLUSION

For the foregoing reasons, Motorola's "motion" should be denied.


Dated: October 31, 2012

Respectfully submitted,

*/s/ Samuel F. Ernst*_____
Robert D. Fram (CA Bar No. 126750)
rfram@cov.com
Christine Saunders Haskett (CA Bar No. 188053)

9

chaskett@cov.com
Samuel F. Ernst (CA Bar No. 223963)
sernst@cov.com
Nathan E. Shafroth (CA Bar No. 232505)
nshafroth@cov.com
Danielle L. Goldstein (CA Bar No. 257486)
dgoldstein@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Jason C. Raofield (DC Bar No. 463877)
jraofield@cov.com
Richard Anthony Lopez (DC Bar No. 995719)
rlopez@cov.com
Matthew John Connolly (DC Bar No. 997905)
mconnolly@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Matthew D. Powers
Matthew.Powers@tensegritylawgroup.com
Paul Ehrlich
Paul.Ehrlich@tensegritylawgroup.com
Azra Hadzimehmedovic
azra@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001

Catherine Cetrangolo
cetrangolo@cetralaw.com
CETRA LAW FIRM LLC
20 North Carroll Street
Madison, WI 53703
Telephone: (608) 535-9220
*Attorneys for Plaintiff Apple Inc.*

## **CERTIFICATE OF SERVICE**

      I, Samuel F. Ernst, an attorney, do hereby certify that I caused a copy of the foregoing to be electronically filed with the Court and served on all parties on October 31, 2012 using the Court's electronic case filing system.

      By: */s/ Samuel F. Ernst*
      Samuel F. Ernst