IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPLE, INC.,

                                                                                  OPINION and ORDER

                     Plaintiff,

                                                                 11-cv-178-bbc

     v.

MOTOROLA MOBILITY, INC.,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In an order entered October 29, 2012 resolving the parties' motions in limine, dkt. #424, I denied Motorola's motion to preclude Apple from seeking specific performance. Id. at 7-11. In its amended complaint, Apple had requested "[a]n order ordering Motorola to specifically perform its contractual commitment to license its essential patents on F/RAND terms." Dkt. #110 at ¶ 197(h). From this request for relief, I understood Apple to be requesting an order requiring Motorola to offer a license for its standards-essential patents to Apple and to be representing that Apple was ready and willing to accept such a license, or at least that Apple would be bound by the license rate set by the court for Motorola's standards-essential patents. In denying Motorola's motion in limine, I stated that "specific performance *may* be an appropriate remedy under the circumstances of this case" because

> [u]nless and until Motorola gives Apple a fair license to its declared-essential patents, Apple will continue to face the threat of patent infringement litigation from Motorola. It would be highly inefficient to require Apple to bring a new lawsuit for monetary damages or declaratory relief each time Motorola sues it for patent infringement. Additionally, it makes little sense to order the parties to continue negotiating a license when they have been unable to reach an agreement

1

through five years of negotiations.

Dkt. #424 at 8.

Since issuing the October 29 order, it has become clear that Apple's interest in a license is qualified. In its response to Motorola's motion for clarification on the specific performance issue, Apple states that it will not commit to be bound by any FRAND rate determined by the court and will not agree to accept any license from Motorola unless the court sets a rate of $1 or less for each Apple phone. Apple's Resp. Br., dkt. #448 at 8. In other words, if Apple is unsatisfied with the rate chosen by the court, it "reserves the right to refuse and proceed to further infringement litigation." Id. at 2. Despite its position, Apple maintains that it is entitled to specific performance in the form of the court determining what a FRAND rate is for Motorola's patents. At the final pretrial conference, I asked Apple to explain why it believed the court should determine a FRAND rate even though the rate may not resolve the parties' licensing or infringement disputes. I questioned whether it was appropriate for a court to undertake the complex task of determining a FRAND rate if the end result would be simply a suggestion that could be used later as a bargaining chip between the parties. Apple responded that the rate would resolve the dispute in this particular case, namely, whether Motorola's license offer was FRAND and if not, what the rate should have been.

Apple's response was not satisfactory and did not assuage my concerns about determining a FRAND rate that may be used solely as a negotiating tool between the parties. After further consideration, I believe it would be inappropriate to grant Apple's clarified request for specific performance. As I explained in the October 29 order, the normal remedy for a breach of contract is an award of damages, while specific performance is an "exceptional" remedy. Dkt.

#424 at 8. It may have been appropriate to order exceptional relief in this case if it would have prevented continued patent infringement litigation or protracted negotiations. However, it is now clear that specific performance would not resolve those concerns.

Moreover, because specific performance is a request for equitable relief in the form of a "positive injunction," Chicago United Industries, Ltd. v. City of Chicago, 445 F.3d 940, 945 (7th Cir. 2006), a party requesting specific performance must satisfy the four-factor test set forth in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). This test applies to requests for injunctive relief in federal court, regardless whether the underlying claim is premised on patent law, federal statutory law or state law. E.g., Sierra Forest Legacy v. Sherman, 646 F.3d 1161, 1184 (9th Cir. 2011) (stating "[e]ven in [National Environmental Policy Act] cases,[a]n injunction should issue only if the traditional four-factor test is satisfied") (citation omitted); Kartman v. State Farm Mutual Automobile Insurance Co., 634 F.3d 883, 886, 892 (7th Cir. 2011) (using four-factor eBay test to analyze whether proposed class of plaintiffs might obtain injunction for claims originally brought in state court alleging breach of contract, bad-faith denial of insurance benefits and unjust enrichment); e360 Insight v. Spamhaus Project, 500 F.3d 594, 596, 604 (7th Cir. 2007) (citing eBay in support of "conclu[sion] that a more substantial inquiry . . . was necessary prior to the entry of equitable relief" for various torts). Under ebay, a plaintiff seeking an injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc., 547 U.S. at 391.

Apple's request for a FRAND rate that may or may not resolve the licensing and infringement disputes between the parties and would likely be used simply as a starting point for future negotiations does not satisfy these basic requirements for an injunction. First, Apple has not shown that it would suffer irreparable harm without its requested relief. In its trial brief, Apple's only allegation of irreparable harm is that Motorola has sued it for patent infringement and has sought to enjoin or exclude Apple from selling its products in the United States. Apple contends that if its products were enjoined or excluded from the United States, it would suffer lost profits, loss of potential customers, loss of goodwill and other irreparable harm.

Apple's allegations of "irreparable harm" have at least two problems. The first problem is that Apple's request for specific performance in the form of court declaration of a FRAND rate without any obligation by Apple to accept the rate would not prevent Motorola from suing Apple for patent infringement and requesting injunctive relief. In other words, if Apple refuses to be bound by the rate determined by the court, Motorola could continue to sue Apple for patent infringement and request injunctive relief.

The second problem is that Apple has provided no reason why its injuries would not be remedied by an award of money damages. It is undisputed that Motorola has failed to obtain any exclusion order or permanent injunction against Apple in the related patent infringement proceedings. Further, although Apple suggests that it will continue to face threats of permanent injunction or exclusionary orders related to Motorola's standards-essential patents, it is not clear why this would be so if this court had resolved Apple's claim for money damages in its favor. If Apple had been awarded money damages in this case, the court would have necessarily determined that Motorola breached a contract by failing to offer Apple a FRAND rate. Under

4

such circumstances, Apple would have an obvious defense in any future proceeding in which Motorola sought an injunction or exclusionary order against Apple.

With respect to the remaining eBay factors, I am particularly convinced that the public interest factor weighs against granting Apple's request for specific performance in this case. As I explained at the final pretrial conference, courts are not in the best position to determine a FRAND rate for a portfolio consisting of hundreds of patents that would be used later in licensing negotiations between two highly sophisticated parties. Both parties in this case employ licensing experts whose job it is to negotiate these types of licenses and who are in a much better position than the court to determine a FRAND rate. Apple's request that the court determine the FRAND rate places an enormous and possibly unjustifiable burden on the judiciary's resources. In light of this reality, it would not be in the public interest for the court to spend such enormous resources to determine a FRAND rate that may ultimately lead only to additional litigation and would set a troubling precedent for future cases involving FRAND commitments. As the Court of Appeals for the Seventh Circuit has said, courts should consider the practicality of a requested injunction and "as a practical matter, . . . what purpose would be served by" a proposed injunction. Kartman, 634 F.3d at 893.

Finally, although Apple suggested at the final pretrial conference that this court could determine a FRAND rate as part of Apple's request for declaratory relief, regardless of the requirements for seeking specific performance, it would be inappropriate to "declare" a FRAND rate for the same reasons explained above. The decision whether to grant declaratory relief is discretionary, 28 U.S.C. § 2201(a) (courts "may" issue declaratory judgments), and it is inappropriate to issue declaratory judgment if "such a judgment would have no practical effect." Apple, Inc. v. Motorola, Inc., Case No. 1:11-CV-08540, 2012 WL 2376664, *23 (N.D. Ill. June

5

22, 2012).

In light of these observations, I am prepared to conclude that the court will not "declare" a specific FRAND rate for Motorola's standards-essential patents. This would mean that, with respect to Apple's breach of contract claim arising from Motorola's FRAND commitments, the trial would resolve only the issue whether Motorola's 2.25% licensing offer and subsequent negotiations complied with its FRAND obligations. However, this leads to an obvious question: what purpose would be served by the court's declaring that Motorola's actions constituted a breach of its FRAND contracts? Such a declaration would lead to the same situation as a declaration of a particular FRAND rate; the parties would be sent back to the negotiation table to hammer out the details of a license. Further, although a declaration might be useful for Apple as a defense to a future patent infringement suit brought by Motorola, Apple has not shown at this point that future patent infringement suits are likely or that it would be appropriate to declare that Motorola breached its contracts simply to provide Apple a defense in hypothetical future infringement actions. This leads to the question whether any trial should be held on Apple's breach of contract claim relating to the FRAND contracts.

Additionally, these observations lead to the question whether a trial should be held regarding Apple's other claims. Along with its claim that Motorola breached its FRAND commitments, Apple is asserting claims that Motorola violated disclosure obligations to ETSI and engaged in patent misuse. Apple is seeking extraordinary equitable and declaratory remedies on these claims, including an order rendering Motorola's patents unenforceable against Apple. However, its allegations of irreparable harm and its arguments about the insufficiency of monetary damages focus on the possibility that Motorola may sue Apple for infringement and

6

seek an exclusionary order against Apple in the future. Apple's Trial Br., dkt. #465, at 35, 52. As explained above, Apple has not explained why money damages would not be a more appropriate and adequate remedy, and in particular, why Apple believes that Motorola could obtain an injunction or exclusionary order against it after this court had determined that Motorola had injured Apple by breaching its duty to disclose its patents to ETSI.

Before making any final decisions on these issues, I will give the parties an opportunity to respond to the concerns raised in this order. I understand that the parties are working hard to prepare for the trial at this point and it is unfortunate that these issues were not raised earlier in this case so that they could have been resolved before the eve of trial. However, they need resolution and I am confident the parties will be able to respond promptly. Therefore, the parties may have until Sunday, November 4, 2012 at 12:00 p.m. to respond to this order. The parties should be prepared to discuss these issues on Monday morning at 9:00 a.m.

At this point I cannot say that I will be able to make a final decision on Monday morning so the parties should be prepared to commence the trial at 1:00 after discussion of these issues.

Entered this 2d day of November, 2012.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge