IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> MOTOROLA MOBILITY, INC. <br><br> Defendant. | Case No. 11-CV-178-bbc <br><br> Hon. Barbara B. Crabb |

**APPLE'S MOTION FOR RECONSIDERATION WHETHER MOTOROLA BREACHED ITS CONTRACTS BY SEEKING AN INJUNCTION IN THE ILLINOIS CASE AND AN EXCLUSIONARY ORDER IN THE INTERNATIONAL TRADE COMMISSION**

**I.     INTRODUCTION**

In a motion *in limine*, Apple asked this Court to preclude Motorola from introducing evidence that it was entitled to seek injunctions and exclusion orders to enforce its declared standards-essential patents, and that doing so was not a breach of its FRAND obligations. Apple's motion argued, in the first instance, that Motorola breached the express terms of its SSO contracts. Apple also argued, however, that Motorola breached the covenant of good faith and fair dealing that inheres in these contracts, because the pursuit of injunctions and exclusion orders violates a core purpose of such agreements.

The Court denied Apple's motion, holding that while Apple's arguments were persuasive as a matter of policy, Motorola's SSO contracts did not expressly preclude it from pursuing injunctions, although seeking an injunction before making a FRAND offer might be such a breach. S*ee* Dkt. 424 at 29. Although the Court's order did not expressly address the implied covenant of good faith and fair dealing, portions of its order addressed a related concept of whether the Court should "infer" an obligation not to seek injunctive relief. Dkt. No. 424 at 28. The Court declined to infer such an obligation because doing so would improperly "reform" the agreement, as there was no provision in the agreement from which to draw the inference. *Id.* To the extent that the Court's holding was addressing Apple's argument that by seeking injunctions, Motorola breached the implied covenant of good faith and fair dealing, Apple respectfully moves the Court for reconsideration.

Apple respectfully submits that a finding of breach of the implied covenant of good faith and fair dealing is supported by Wisconsin law and would not require the Court to reform the relevant contracts or create wholly new obligations, as had been the Court's concern. The law is clear that a party to a contract breaches the covenant of good faith and fair dealing when it denies other parties to that contract the benefits that the parties intended should flow from the

1

agreement. This is so even if the breaching party should happen to comply with the letter of the agreement. Courts have recognized the covenant as a gap-filling mechanism, and have thus used it to infer missing or additional contractual terms based on the contract's overall purpose.

Here, Motorola's pursuit of injunctions and exclusion orders violates two fundamental benefits of its agreements with ETSI and IEEE. First, such conduct is incompatible with the SSOs' intent to make the practice of their standards available to all comers. Second, such conduct is also incompatible with the widely recognized notion that the FRAND commitment serves to prevent holders of standards-essential patents from realizing royalty rates that reflect patent hold-up rather than the actual value of their technology over the available alternatives.

The Court has acknowledged the strength of these policy and economic arguments, but has concluded that this does not elevate them to the level of contractual provisions. Apple maintains that even where a prohibition on the pursuit of injunctions may be absent from the face of a contract, conduct incompatible with the above principles violates the covenant of good faith and fair dealing and is therefore a breach of contract. Accordingly, Apple respectfully moves the court for reconsideration.

## II.     ARGUMENT

In its October 29, 2012 *in limine* order, the Court held that no provision of the ETSI and IEEE contracts "expressly precludes Motorola or any patent owner from pursuing an injunction or other relief as a remedy for infringement." Dkt. No. 424 at 28. The Court further held that it would not "infer that the contracts bar injunctive relief as a matter of contract law" because Apple had not indicated any provision in the contracts from which the Court could draw such an inference. *Id.* The Court rested its decision on the principle that in interpreting a contract, "a court's role . . . is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they

did agree to, as evidenced by the language they saw fit to use." *FPL Energy Point Beach, LLC v. Energy Resource of Australia Ltd.*, 565 F. Supp. 2d 999, 1004 (W.D. Wis. 2008) (quoting *Miller v. Miller*, 227 N.W.2d 626, 629 (1975)).

Apple does not seek reconsideration of this portion of the Court's order. However, in addition to its argument that Motorola has breached the express terms of its SSO contracts by pursuing injunctions and exclusion orders, Apple separately argued that such conduct was a breach of the covenant of good faith and fair dealing.[1] Dkt. No. 310 at 7 n.5. To the extent the Court was addressing this argument, Apple respectfully asks the Court to reconsider its decision.

While the Court expressed concern that finding for Apple would involve making or reforming Motorola's SSO contracts, Apple had not asked the Court to take such drastic steps. Rather, Apple asked the Court to fill a gap in these contracts that the Court itself had noted when it found that "[t]he contracts at issue are not clear" regarding the availability of injunctions. Dkt. No. 424 at 29. The implied covenant of good faith and fair dealing allows the Court to do so; indeed the entire purpose of the implied covenant is to fill such "gaps" that would allow a party to claim adherence to the terms of an agreement while still frustrating a core purpose of that contract.

---

[1] Motorola opposed this argument on the grounds that Apple did not plead such a breach in its complaint. *See* Dkt. No. 366 at 13 n.3. Apple need not have done so, because "[a] plaintiff is not required to identify a specific contract provision that was breached in order to plead breach of contract under the federal pleading standard." *Jones v. Int'l Ass'n of Bridge Structural Ornamental and Reinforcing Iron Workers*, No. 10-C-560, 2012 WL 1067154, at *9 (E.D. Wis. March 28, 2012). Breach of the covenant of good faith and fair dealing is not an independent claim from breach of contract. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). Rather, the covenant of good faith and fair dealing is a contractual term that is implied in every contract. *Id.; see also Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1106 (7th Cir. 1997) (affirming dismissal of an independent claim for breach of the covenant of good faith and fair dealing because there is no "independent claim based on the implied covenant of good faith and fair dealing").

The covenant of good faith and fair dealing "requires each party to refrain from acting in a way that 'will have the effect of injuring or destroying the ability of the other party to receive the benefits of the contract.'" *Northern Crossarm Co., Inc. v. Chemical Specialties, Inc.*, 318 F. Supp. 2d 752, 763 (W.D. Wis. 2004) (quoting Wis. JI-Civil 3044).  As the Supreme Court of Wisconsin has recognized, "good faith is another way to describe the effort to devise terms to fill contractual gaps." *Metropolitan Ventures, LLC v. GEA Associates*, 717 N.W.2d 58, 66 n.9 (Wis. 2006); *see also Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir. 1992) (same).  As such, "good faith has nothing to do with contract formation." *Metropolitan Ventures*, 717 N.W.2d at 66 n.9.  "[A] party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled." *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 212 (Wis. App. 1995).  Likewise, the covenant "may apply to conduct on which the contract is silent." *Northern Crossarm*, 318 F. Supp. 2d at 763 (W.D. Wis. 2004).

Thus, courts have used the covenant of good faith and fair dealing to infer contractual obligations based on the intended benefit of the contract, without tying the obligation to any provision explicitly set forth in the document.  For instance, in *In re Estate of Chayka*, 176 N.W.2d 561 (Wis. 1970), a husband and wife executed a will giving all of their property to the survivor, and providing that on the death of that survivor, the property shall go to a named third person.  *See id.* at 562.  After the husband died, the wife gave most of the property to her second husband, leaving little for disposition to the third person.  *See id.*  The court found that the will was founded on contract and held that while the wife had complied with the agreement in form, her transfer of the property, not forbidden by the explicit text of the instrument, had "stripped nearly all of the flesh from the bones" of the agreement by "accomplishing exactly what the

4

agreement of the parties sought to prevent." *Id.* at 564. As such, she had breached the covenant of good faith and fair dealing. *See id.*

Likewise, in *West Bend Co. v. Chiaphua Indus., Inc.*, 112 F. Supp. 2d 816 (E.D. Wis. 2000), the court held that the duty of good faith and fair dealing should be read to imply a timely notice provision regarding indemnification in a purchase agreement. West Bend had settled a product liability suit but had waited nearly eight years before seeking indemnity from Chiaphua, which had supplied the product. *See id.* at 820. The court held that under the duty of good faith and fair dealing, timely notice was an implied condition of the indemnification clause in the parties' purchase agreement because it effectuated a basic purpose of that provision: "the indemnitor cannot defend or indemnify in connection with a claim that it does not know about." *Id.* at 826.

Here, too, allowing Motorola to pursue injunctive relief would violate the core purpose of Motorola's contracts with ETSI and IEEE and deny Apple the intended benefit of those contracts for at least two reasons. *First*, the right of potential users to have available the technology to comply with the standards at issue is a central benefit of Motorola's contracts with the SSOs. Motorola's ETSI Contract makes clear that it is the intent of ETSI to "enable STANDARDS to be available to potential users in accordance with the general principles of standardization." Dkt. No. 148-14 (ETSI IPR Policy (Nov. 18, 1997)) ¶ 3.3. In pursuit of this goal of making standards available to potential users, the ETSI policy states the securement of this benefit as a central purpose of the contract:

> [T]he ETSI IPR Policy seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD being unavailable.

Id. ¶ 3.1.

5

*Second*, it is also a purpose of Motorola's SSO contracts to prevent the holders of standards-essential patents from exercising the considerable power conferred on them by the inclusion of their IPR in the relevant standards by using the threat of an injunction to "hold up" would-be market participants and demand extortionate royalties in exchange for practicing those same standards. This policy purpose has been widely recognized. As Judge Posner explained in holding that seeking injunctions is incompatible with the purpose of the FRAND commitment, "How could [Motorola] be permitted to enjoin Apple from using an invention that it contends Apple *must* use if it wants to make a cell phone with UMTS telecommunications capability— without which it would not be a cell *phone*." Dkt. No. 207-9 (No Injunction Order) at 18-19 (emphases in original).

The Federal Trade Commission likewise acknowledged that a central benefit of FRAND contracts lies in their aim of preventing patent hold-up, a goal that can be realized only if patentees are unable to seek injunctions:

> [A] royalty negotiation that occurs under threat of an exclusion order may be weighted heavily in favor of the patentee in a way that is in tension with the RAND commitment. High switching costs combined with the threat of an exclusion order could allow a patentee to obtain unreasonable licensing terms despite its RAND commitment, not because its invention is valuable, but because implementers are locked in to practicing the standard. The resulting imbalance between the value of patented technology and the rewards for innovation may be especially acute where the exclusion order is based on a patent covering a small component of a complex multicomponent product. In these ways, the threat of an exclusion order may allow the holder of a RAND-encumbered SEP to realize royalty rates that reflect patent hold-up, rather than the value of the patent relative to alternatives.

Dkt. No. 207-9 (No Injunction Order) at 19 (quoting "Third Party United States Federal Trade Commission's Statement on the Public Interest," *In re Certain Wireless Communication Devices, Portable Music & Data Processing Devices, Computers & Components Thereof*, Inv. No. 337-

TA-745 (June 6, 2012)). Indeed, just yesterday the FTC issued a staff report recommending that the agency sue Google for violating the antitrust laws based on this very practice.[2]

As the Court has already recognized, neither making the practice of the standards available nor the desire to prevent hold-up can be compatible with the ability to obtain an injunction. In its *in limine* order the Court agreed with Apple that "from a policy and economic standpoint . . . in most situations owners of declared-essential patents that have made licensing commitments to standards-setting organizations should be precluded from obtaining an injunction or exclusionary order that would bar a company from practicing the patents." Dkt. No. 424 at 27.

These policy and economic considerations are at the heart of Motorola's SSO contracts— they are the chief reasons why these organizations require holders of standards-essential patents to make a FRAND commitment. Seeking injunctions and exclusion orders denies the intended beneficiaries of these contracts, like Apple, these fundamental benefits. Because in doing so, Motorola has "destroy[ed] the ability of [] other part[ies] to receive the benefits of the contract[s]," it has breached its duty of good faith and fair dealing. *Northern Crossarm Co., Inc.*, 318 F. Supp. 2d at 763 (quoting Wis. JI-Civil 3044).

## III. CONCLUSION

For the foregoing reasons, Apple respectfully asks the Court for reconsideration of its October 29, 2012 Order.

Dated: November 2, 2012

---

[2] *See* "FTC staff recommends Google be sued over patents - report," Reuters, November 1, 2012, *available at* http://www.reuters.com/article/2012/11/01/google-ftc-patent-idUSL1E8M1GDH20121101.

Respectfully submitted,

*/s/ Samuel F. Ernst*
Robert D. Fram (CA Bar No. 126750)
rfram@cov.com
Christine Saunders Haskett (CA Bar No. 188053)
chaskett@cov.com
Samuel F. Ernst (CA Bar No. 223963)
sernst@cov.com
Nathan E. Shafroth (CA Bar No. 232505)
nshafroth@cov.com
Danielle L. Goldstein (CA Bar No. 257486)
dgoldstein@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Jason C. Raofield (DC Bar No. 463877)
jraofield@cov.com
Richard Anthony Lopez (DC Bar No. 995719)
rlopez@cov.com
Matthew John Connolly (DC Bar No. 997905)
mconnolly@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Matthew D. Powers
Matthew.Powers@tensegritylawgroup.com
Paul Ehrlich
Paul.Ehrlich@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001

Catherine Cetrangolo
cetrangolo@cetralaw.com
CETRA LAW FIRM LLC
20 North Carroll Street
Madison, WI 53703

8

Telephone: (608) 535-9220
*Attorneys for Plaintiff Apple Inc.*

## **CERTIFICATE OF SERVICE**

  I, Samuel F. Ernst, an attorney, do hereby certify that I caused a copy of the foregoing to be electronically filed with the Court and served on all parties on November 2, 2012 using the Court's electronic case filing system.

                    By: */s/ Samuel F. Ernst*
                    Samuel F. Ernst