IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

APPLE INC.,

        Plaintiff,

  v.

MOTOROLA MOBILITY, INC.

        Defendant.

Case No. 11-CV-178-bbc

Hon. Barbara B. Crabb

# APPLE'S MOTION TO EXCLUDE
# MOTOROLA'S NEWLY DISCLOSED FRAND THEORIES

**PUBLIC VERSION**

**I.     INTRODUCTION**

Apple recognizes that the Court has not yet ruled on whether a trial will be held on its claims.  As the Court has asked that the parties be prepared to commence trial on Monday afternoon, Apple is submitting this motion to address issues to be determined if the Court finds that a trial should take place.

Apple served interrogatories asking Motorola to explain its contention as to what is a FRAND rate.  Motorola refused to provide a substantive answer to these interrogatories and pointed to its expert reports.  It is undisputed that none of Motorola's experts has provided any opinion on what is the proper FRAND rate.  Now on the eve of the trial, Motorola has for the first time, in its trial brief, introduced two new "alternative frameworks" for determining a FRAND rate.  *See* Dkt. No. 481 (Motorola Trial Brief) at 47.  Allowing Motorola to raise these previously undisclosed theories on a FRAND rate on the eve of trial would be highly prejudicial to Apple and inconsistent with the Court's other rulings precluding the introduction of new theories close to trial.  Not only did Motorola refuse to reveal these theories during discovery, they properly fall within the realm of expert opinion.  Apple thus asks this Court to exclude Motorola's untimely disclosed "alternative frameworks" for setting a FRAND rate.

**II.    ARGUMENT**

    **A.     Motorola Refused to Reveal Its Methodology for Determining a FRAND Rate in Discovery**

During discovery, Apple served interrogatories asking Motorola to reveal its basis for contending that 2.25% was a FRAND royalty.  *See* Ex. 1 (Apple's Fourth Set of Interrogatories) at Interrog. 18 ("With respect to the patents that Motorola offered to license to Apple, state all facts supporting your position that 2.25% reflects the value of those patents prior to incorporation of those patents into ETSI and IEEE standards."); Interrog. No. 24 ("State the

method used by Motorola to conclude that application of a rate of 2.25% applied against the total resale value of the accused device complies with Motorola's FRAND obligations."). Motorola refused to provide any substantive answer to this question, pointing only to its pleadings, depositions, and expert reports. *See* Ex. 2 (Motorola's Amended Objections and Responses to Apple's Fourth Set of Interrogatories) at 2-4, 19.

Having refused to reveal its methodology for determining a FRAND rate, Motorola cannot now, on the eve of trial, introduce new theories for calculating a FRAND royalty – information that Motorola withheld from Apple during discovery.

### B. Motorola's Experts Do Not Opine On the Proper FRAND Rate

The deadline for the disclosure of expert testimony in this matter was April 15, 2012. *See* Dkt. No. 132. Motorola has made no motion to supplement its expert testimony. Further, in its response to Apple's interrogatories regarding Motorola's basis for its position on the appropriate FRAND rate, Motorola pointed to its expert reports. However, it is undisputed that Motorola's experts do not opine on the proper FRAND rate, and they certainly do not offer expert testimony on FRAND rates under either of the two "alternative frameworks" Motorola now seeks to present. *See, e.g.*, Dkt. No. 424 (Order of Oct. 29, 2012) at 49 ("Motorola concedes that Dr. Leonard did not offer any opinion about what particular rate or range or rates would constitute a fair, reasonable and nondiscriminatory royalty."). Accordingly, this court has already ruled that Dr. Leonard "may not testify about a particular rate at trial." *Id.*

### C. Apple Would Be Greatly Prejudiced By Allowing Motorola to Introduce Previously Undisclosed Expert Opinion on Calculating a FRAND Rate

Notwithstanding this Court's order that Dr. Leonard cannot offer a previously undisclosed expert opinion on the appropriate FRAND rate, Motorola has revealed, for the first time, in its trial brief two new "alternative frameworks" for calculating a FRAND rate: (1)

2

applying 2.25% to the price differential between the iPhone without a carrier contract and the iPod Touch, and (2) looking only at cherry-picked nominal rates contained within cherry-picked license agreements, without any analysis of the actual effective royalty rates of said agreements. Motorola should not be permitted to argue these new theories at trial for two reasons: (1) they refused to reveal these theories during discovery; and (2) they properly fall within the scope of expert opinion, and Apple's experts have not been given the opportunity to demonstrate all of the flaws and gaps in these theories.

### 1. Motorola's New iPod Touch Theory

Motorola's first new theory is that 2.25% should be applied to the difference in price between an iPod Touch and the unsubsidized iPhone (without a carrier contract). While the math appears simple, this theory is not as simple as Motorola would like the court to believe. One of the many faulty assumptions underlying this approach is the assumption that this price differential is the value of cellular communication to Apple. Notably, none of Motorola's experts has opined that this is the case. Not only does Dr. Leonard fail to equate this price difference to the value of cellular communication, he states, "Because the iPod Touch is accused as well, its price does not provide an appropriate baseline of comparison for the iPhone." Dkt. No. 209 (Leonard Report (Apr. 15, 2012)) ¶ 40 n.26. And even the math is not as simple as it might first seem. Motorola's own expert in a related case has opined that the estimated operating profit differential between the iPod Touch and the iPhone without a contract was ▇▇ per unit between 2007 and December 2011 – a far cry from the $400 to $450 Motorola now asks the Court to apply. *See* Trial Ex. 495 ¶ 145. The same expert also looked at the profitability of the iPad 3G with the Wi-Fi-only iPad and opined that the estimated operating profit differential for these two products was only ▇ per unit. *Id.* ¶ 148.

3

There is a multitude of reasons why the difference between the price of the iPod Touch and the price of the iPhone without a contract does not represent the value of cellular communication to Apple. The discrepancy between the expert opinion Motorola set forth in a related case ███████ in supposed cellular value) and its claim in this case that Apple receives $400 to $450 in value from cellular functionality provides just one example of why Motorola's new iPod Touch theory properly belongs in the realm of expert opinion. Motorola should not be permitted to introduce such untimely disclosed expert opinion on the eve of trial via "fact" witnesses. After all, Motorola "agrees that neither party should be ambushed at trial with expert opinions on which it did not have adequate notice." Dkt. No. 365 (Motorola's Opposition to MIL No. 8) at 1. Because Motorola failed to timely disclose this expert opinion, Apple has been deprived the opportunity to fully develop both the factual record and the opinions of its own experts to demonstrate the many flaws of Motorola's iPod Touch theory.

### 2.    Motorola's New Comparable License Theory

Motorola's second theory is that the proper FRAND rate should be ███████ of the entire sales price of the iPhone based on the ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Motorola would like the court to believe that looking at these license agreements is so simple that it requires no expert opinion or explanation. This is belied by the opinion of Motorola's own FRAND expert. Dr. Leonard opined that "a proper comparable analysis—one that examines and adjusts for all the substantive differences between the economic circumstances that surrounded Motorola's cross licenses with other companies and the economic circumstances that surrounded Motorola's offer to Apple—is a complex exercise." Dkt. No. 209 (Leonard Report) ¶ 74. This complex exercise requires expert opinion. Because

4

Motorola's experts have not provided any such expert opinion, Motorola simply cherry picks a handful of licenses without any explanation of why these five agreements and one offer – out of over fifty Motorola license agreements – are the relevant comparable licenses for setting a FRAND rate for Apple.

Further compounding this problem, Motorola cherry picked license terms from these cherry-picked agreements, relying on some terms while ignoring others, and has not provided any explanation of how agreements with caps and lump sum payments can be compared to a running royalty. For example, Motorola points to an ▮▮▮▮▮▮ lump sum offer from ▮▮▮▮▮▮ Motorola cannot simply point at a lump sum as supporting a FRAND rate without providing expert opinion explaining how this lump sum can be compared to or converted into a running royalty. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009) (pointing out that "certain fundamental differences exist between lump-sum agreements and running-royalty agreements" and requiring a basis to "recalculate in a meaningful way the value of any of the running royalty agreements to arrive at the lump-sum damages award").

To give the impression of simplicity, Motorola suggests that the ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. No. 481 (Motorola Trial Brief) at 49. In fact, Motorola ignores the complexity of the payment terms in the ▮▮ ▮▮▮▮▮▮ Just to list a few, these payment terms include: ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████  *See* Trial Ex. 129 at MOTO-APPLE-0003985471 to MOTO-APPLE-0003985476. ██

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████

These are just a few examples of the complexity of the comparable license analysis, which clearly falls within the realm of expert opinion. Motorola failed to disclose any expert opinion of the proper FRAND rate based on comparable licenses and should be precluded from introducing this untimely disclosed expert opinion.

As this Court has held, it would be highly prejudicial to allow a party to raise a new theory on the eve of trial. *See* Dkt. No. 424 (Order of Oct. 29, 2012) at 37 (precluding Apple's patent exhaustion theory because "[a]llowing Apple to raise this new theory on the eve of trial . . . would be highly prejudicial to Motorola"). This prejudice is exacerbated by the fact that Motorola's new theory comprises untimely disclosed expert opinion – which would properly be critiqued by Apple's experts. Apple's experts have not been given the opportunity to demonstrate all of the deficiencies and faulty assumptions underlying Motorola's new FRAND theories. In excluding Dr. Cimini's August 14, 2012 expert report, this Court found:

> If I allowed Apple to rely on the new opinion at trial, Motorola would have to devote resources to rebutting that opinion when it otherwise could be preparing for other aspects of trial. Motorola's ability to prepare for trial should not be hampered in order to accommodate Apple's untimely supplemental opinion.

*Id*. at 53. If Motorola were permitted to introduce its untimely disclosed expert opinions on FRAND through "fact" witnesses, Apple would face the same prejudice, compounded by the fact that Motorola's new theories were not disclosed until the filing of Motorola's trial brief on October 31, 2012, less than one week before the start of trial.

6

### III. CONCLUSION

For the reasons set forth above, Apple respectfully asks the Court to exclude Motorola's newly disclosed theories on how to calculate a FRAND rate.

Dated:  November 3, 2012

        Respectfully submitted,

        */s/ Samuel F. Ernst*
        Robert D. Fram (CA Bar No. 126750)
        rfram@cov.com
        Christine Saunders Haskett (CA Bar No. 188053)
        chaskett@cov.com
        Samuel F. Ernst (CA Bar No. 223963)
        sernst@cov.com
        Nathan E. Shafroth (CA Bar No. 232505)
        nshafroth@cov.com
        Danielle L. Goldstein (CA Bar No. 257486)
        dgoldstein@cov.com
        COVINGTON & BURLING LLP
        One Front Street
        San Francisco, CA 94111-5356
        Telephone: (415) 591-6000
        Facsimile: (415) 591-6091

        Jason C. Raofield (DC Bar No. 463877)
        jraofield@cov.com
        Richard Anthony Lopez (DC Bar No. 995719)
        rlopez@cov.com
        Matthew John Connolly (DC Bar No. 997905)
        mconnolly@cov.com
        COVINGTON & BURLING LLP
        1201 Pennsylvania Avenue, NW
        Washington, DC 20004-2401
        Telephone:  (202) 662-6000
        Facsimile:  (202) 662-6291

        Matthew D. Powers
        Matthew.Powers@tensegritylawgroup.com
        Paul Ehrlich
        Paul.Ehrlich@tensegritylawgroup.com
        TENSEGRITY LAW GROUP, LLP
        555 Twin Dolphin Drive, Suite 360
        Redwood Shores, CA 94065

Telephone: (650) 802-6000
Facsimile: (650) 802-6001

Catherine Cetrangolo
cetrangolo@cetralaw.com
CETRA LAW FIRM LLC
20 North Carroll Street
Madison, WI 53703
Telephone: (608) 535-9220
*Attorneys for Plaintiff Apple Inc.*

Case: 3:11-cv-00178-bbc Document #: 494 Filed: 11/03/12 Page 9 of 10

## **CERTIFICATE OF SERVICE**

      I, Samuel F. Ernst, an attorney, do hereby certify that I caused a copy of the foregoing to be electronically filed with the Court and served on all parties on November 3, 2012 using the Court's electronic case filing system.

                                                     By: */s/ Samuel F. Ernst*
                                                     Samuel F. Ernst