**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| APPLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-178-bbc |
| | ) | |
| MOTOROLA MOBILITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTOROLA'S BRIEF REGARDING JURISDICTION AND
AVAILABILITY OF REMEDIES**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 5

I.      THE COURT IS CORRECT IN FINDING IT INAPPROPRIATE TO GRANT
        APPLE'S CLARIFIED REQUEST FOR SPECIFIC PERFORMANCE. ......................... 5

        A.      Apple's Case Lacks Article III Jurisdiction ..................................................... 5

        B.      The Court Is Correct In Finding Apple's Request For Injunctive Relief
                Cannot Satisfy *eBay* ...................................................................................... 10

        C.      The Court Is Correct In Declining To "Declare" A FRAND Rate ..................... 12

II.     THERE CAN BE NO TRIAL ON FRAND BECAUSE THERE IS NO REMEDY ........ 12

III.    THERE CAN BE NO TRIAL ON THE REMAINING CLAIMS BECAUSE
        APPLE CANNOT DEMONSTRATE A RIGHT TO THE EXTRAORDINARY
        REMEDY IT SEEKS ..................................................................................................... 14

        A.      Apple's Remedies For The '898 Patent Are Simply Affirmative Defenses
                To Patent Infringement That Have Already Been Raised by Apple In
                Another Case ..................................................................................................... 15

        B.      The Court Will Not Be Remedying Any Cognizable Harm ................................ 16

        C.      Apple Is Not Entitled To Equitable Relief ......................................................... 16

        D.      Without A Remedy There Can Be No Trial ........................................................ 17

        E.      Apple's Patent Misuse Claim Also Fails As A Matter of Law ........................... 17

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ........................................................................................ 8

*Apple, Inc. v. Motorola, Inc.*,
   -- F. Supp. 2d ---, 2012 WL 2376664 (N.D. Ill. June 22, 2012) ................... 12, 13, 15

*Bedrossian v. Nw. Memorial Hospital*,
   409 F.3d 840 (7th Cir. 2005) ........................................................................ 17

*Bird v. Penn Central Co.*,
   351 F. Supp. 700 (E.D. Pa. 1972) ................................................................ 9

*Cherry v. F.C.C.*,
   641 F.3d 494 (D.C. Cir. 2011) ...................................................................... 8

*Chicago & Southern Air Lines v. Waterman S. S. Corp.*,
   333 U.S. 103 (1948) ...................................................................................... 6

*Chicago Unified Indus. v. City of Chicago*,
   445 F.3d 940 (7th Cir. 2006) ........................................................................ 10

*Clinton v. Acequia, Inc.*,
   94 F.3d 568 (9th Cir. 1996) .......................................................................... 9

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ...................................................................................... 10, 11

*Estate of Luster v. Allstate Ins. Co.*,
   598 F.3d 903 (7th Cir. 2010) ........................................................................ 17

*Flast v. Cohen*,
   392 U.S. 83 (1968) ........................................................................................ 5

*Gordon v. United States*,
   69 U.S. 561, 1864 WL 6626 (1864) .............................................................. 6

*H&R Block E. Enters., Inc. v. Raskin*,
   591 F.3d 718 (4th Cir. 2010) ........................................................................ 6, 7

*Huddy v. F.C.C.*,
   236 F.3d 720 (D.C. Cir. 2001) ...................................................................... 8

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
   342 U.S. 180 (1952)). .................................................................................... 16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... 7

*Microwave Acquisition Corp. v. FCC*,
   145 F.3d 1410 (D.C. Cir. 1998) .................................................................... 8

*MindGames, Inc. v. Western Publishing Co.*,
   218 F.3d 652 (7th Cir. 2000) ........................................................................ 13

*Oppedahl & Larson v. Network Solutions, Inc.*,
   3 F. Supp. 2d 1147 (D. Colo. 1998) ............................................................ 9

*Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*,
   970 F.2d 273 (7th Cir. 1992) ........................................................................ 11

*Polymer Tech., Inc. v. Bridwell*,
   103 F.3d 970 (Fed. Cir. 1996) ...................................................................... 17

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) ............................................................................. 5
*Regional Rail Reorganization Act Cases*,
    419 U.S. 102 (1974) ............................................................................. 8
*Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*,
    572 F. Supp. 1210 (N.D. Ill. 1983) ..................................................... 16
*TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*,
    491 F.3d 625 (7th Cir. 2007) ............................................................... 17
*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) .......................................................................... 8, 9
*Trippe Mfg. Co. v. Am. Power Conversion*,
    46 F. 3d 624 (7th Cir. 1995) ............................................................... 16
*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ........................................................................... 17
*Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.*,
    276 F. Supp. 2d 1046 (E.D. Cal. 2003) ................................................ 9
*Windsurfing Int'l Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) ............................................................ 18

**Statutes**
28 U.S.C. § 2201(a) ................................................................................. 12

**Other Authorities**
22 Am. Jur. 2d, Damages § 9 .................................................................. 13
Donald S. Chisum, CHISUM ON PATENTS § 19.04 (2008) ........................ 18

iii

Motorola submits this brief in response to the Court's order of November 2, 2012. Dkt. 487.

## INTRODUCTION

Since 2007, when Apple introduced the first iPhone, Motorola has always tried to reach agreement with Apple on licensing terms—as it has with other cell phone makers—for the extensive and continuing use of Motorola's valuable intellectual property.  Apple has built its profitable business on technology standards that others developed.  In this case, Motorola was genuinely surprised when Apple declared on the eve of trial that it wanted the Court to set a FRAND rate.   Motorola would welcome a final license agreement with Apple and a process to make that happen.  However, the Court is correct that it would be inappropriate to grant Apple's request that the Court set a FRAND rate that would not bind Apple.  As a result, there can be no trial because there are no remedies available to Apple in this case.  There is no justiciable case or controversy before the Court now that Apple has refused to commit to the terms of the specific performance that it seeks. Importantly, there are scores of companies with essential patents, and many more companies that seek to implement standards and negotiate licenses. Should the Court accept Apple's request to declare a non-binding fair, reasonable, and non-discriminatory rate that Apple chooses not to pay, it is an open invitation for other companies to file contract-based declaratory judgment actions and burden this Court with similar requests for an advisory rate that would similarly not provide resolution of their disputes.

At the final pretrial conference held November 1, 2012, the Court and the parties "discussed at length questions about the justiciability of the issues raised by Apple and the implications of the court's picking a specific FRAND rate in view of Apple's statement that it does not consider itself bound to accept any rate determined by the court." Dkt. 485.  The Court "questioned whether it was appropriate for a court to undertake the complex task of determining

a FRAND rate if the end result would be simply a suggestion that could be used later as a bargaining chip between the parties." Dkt. 487 at 2. The Court concluded "it would be inappropriate to grant Apple's clarified request for specific performance." *Id.* The Court is entirely correct. Indeed, given Apple's position in refusing to be bound by the FRAND rate, jurisdictional limits, as well as principles of equity, support concluding that no trial is possible.

As the Court noted, monetary damages are the "normal" remedy for breach of contract. What Apple now seeks is an extraordinary remedy of specific performance whereby the Court would set the FRAND rate that Apple would treat as non-binding and advisory. Apple will not submit to being bound by that rate and claims the right to escape the Court's finding if it is not to its liking, a circumstance no U.S. court has abided. Even if Apple "accepts" the Court's rate, Apple claims the right to bargain down from there—thus prolonging indefinitely the very licensing "case or controversy" this Court planned to resolve. Apple's "have my cake but may not want to eat it" approach is wasteful of resources and incompatible with the established limits of this Court's Article III jurisdiction. To adjudicate FRAND terms that would bind only Motorola while doing nothing more than inform Apple's ensuing next licensing offer (should it wish to make any offer) would amount to rendering an advisory opinion without redressing any actual grievance or resolving a ripe case or controversy.

Jurisdictional limits aside, the Court is also correct that Apple's request fails the four-factor test of *eBay*. Apple identifies no harm that is irreparable; nor has it shown that money damages (which it sought then dropped) are inadequate. Also, the licensing negotiations and lawsuits that constitute the supposed injury posed by Motorola's alleged FRAND breach stand to persist regardless of whether the Court sets a non-binding rate. Likewise, the public interest

factor favors declining to provide equitable relief.  Once Apple's request for equitable remedies is taken off the table, there is no  purpose for an advisory  trial on the FRAND question.

The remaining issues in this case are likewise unsuitable for trial because, without damages, there are no appropriate remedies. Apple alleges that Motorola's '898 patent was untimely disclosed to ETSI.  This, according to Apple, is a breach of contract and patent misuse even though the '898 patent is not asserted in this contract case. Apple seeks only equitable relief:  Apple asks this Court to find the '898 patent unenforceable and also requests an injunction precluding Motorola from seeking an injunction in other cases in other courts in which Motorola might assert the '898 patent.  The primary problem with this extraordinary relief is that it is in reality an affirmative defense to an assertion of patent infringement.  These issues ought to be tried in the forum where the '898 patent is actually asserted. Indeed, Apple raised these exact affirmative defenses to Motorola's assertion of the '898 patent in a recent case before Judge Posner that is currently on appeal.  Should the Court accept Apple's request to find prospectively that the '898 patent is unenforceable when it is not asserted in this action, this again would serve as an invitation for other parties to file timeliness lawsuits in this District (or elsewhere) about patents before those patents are ever asserted or raised.  In addition, Apple's remedies are all equitable, discretionary, and require Apple to demonstrate that damages are inadequate to compensate for any alleged harm.  This, Apple cannot do.

## BACKGROUND

The FRAND contract at issue states:

6.1　　When an ESSENTIAL IPR relating to a particular STANDARD is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory terms and conditions under such IPR

[…]

3

> The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.

Ex. 653, ETSI Rules of Procedure at § 6.1. Apple alleged that Motorola breached this contract, and Apple sought damages. Dkt. 110 (2d Amended Complaint). Apple later withdrew its claim for damages in this case. Dkt. 255. In dropping any claim for damages except nominal damages, Apple acknowledged that all its remaining remedies seek "equitable remedies and declaratory relief for which there is no right to a jury trial." *Id*. at 2.

After Apple for the first time (effectively on the eve of trial) asked the Court to set a FRAND rate for Motorola's portfolio under the guise of specific performance, Motorola filed a motion for guidance. Dkt. 386. In that motion, Motorola disputed that the Court can or should set an actual royalty rate under the circumstances presented in this action. *Id*.

The Court in its October 29, 2012, order ruled that it may, in the event that it finds a breach, set license terms. According to the Court, it might thus end the impasse between the parties. Dkt. 424 at 8 ("it makes little sense to order the parties to continue negotiating a license when they have been unable to reach agreement through five years of negotiations."). The Court based its ruling, at least in part, on Judge Robart's decision in a pending case between Motorola and Microsoft concerning FRAND terms for a different standard. *Id*. at 9.

Motorola filed a motion on October 30, 2012, seeking clarification and explaining that, in Judge Robart's case, Microsoft claimed it sought a judicial accounting, agreed it needed a license, submitted to the jurisdiction of the Court, and expressly agreed to be bound by the Court's decision—none of which Apple has done in this case.[1] Dkt. 444.

---

[1] Notably, despite Microsoft's willingness to accept the terms set by the court, Judge Robart has not yet determined whether he will create a RAND license between the parties. ("Insofar as Motorola's motion asks that the court refrain from creating a license agreement at

Apple's response on October 31, 2012 erased any doubt as to Apple's position: Apple stated that it need not accept the Court's licensing terms and would voluntarily accept the Court's ruling if and only if the Court agrees with Apple and determines that the royalty rate would be $1 or less. Dkt. 448. Otherwise, according to Apple, it can essentially walk away, forcing Motorola to sue Apple repeatedly for patent infringement. *Id.* at 8-9. In other words, Apple wants to have its cake served by the Court, then decide whether it wants to eat it. It wants to enforce a contract, yet not be bound by its terms. Indeed, even if Apple gets what it wants and convinces the Court to set a rate of $1 per phone, and even if Apple "accepts" it (which it says it does not have to do), that would only be the beginning, not the end—for Apple would want to bargain down from there.

## ARGUMENT

## I.     THE COURT IS CORRECT IN FINDING IT INAPPROPRIATE TO GRANT APPLE'S CLARIFIED REQUEST FOR SPECIFIC PERFORMANCE.

### A.     Apple's Case Lacks Article III Jurisdiction

Apple's position exceeds constitutional bounds. This Court lacks jurisdiction to proceed as Apple requests to set a rate that Apple is not bound to accept. "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and a federal court cannot render an advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also Flast v. Cohen*, 392 U.S. 83, 97 (1968). Mindful of these limitations, it has "been the firm and unvarying practice of Constitutional Courts to render no judgments not binding and conclusive on the parties." *Chicago & Southern Air Lines v. Waterman S. S. Corp.*,

---

the November 13, 2012 trial, the court GRANTS Motorola's Motion. To be clear, the court will not create a license agreement at the November 13, 2012 trial, but does not dismiss the availability of such relief, if appropriate, at a later stage of this litigation.") October 11, 2012 Amendment to Order.

333 U.S. 103, 113-14 (1948); *see also H&R Block E. Enters., Inc. v. Raskin*, 591 F.3d 718, 724 (4th Cir. 2010) (vacating and remanding district court's judgment, because "the court's ruling . . . was neither 'binding' nor 'conclusive' on Block, rendering its opinion advisory.").

Accordingly, the Supreme Court has cautioned that no federal court should "express an opinion on a case where its judicial power could not be exercised, and where its judgment would not be final and conclusive upon the rights of the parties, and process of execution awarded to carry it into effect." *Gordon v. United States*, 69 U.S. 561, 1864 WL 6626, at *5 (1864).  In so doing, the Court has emphasized the imperative that a federal court render an enforceable final judgment that definitively resolves rights and redresses grievance:

> The award of execution is a part, and an essential part of every judgment passed by a court exercising judicial power. It is no judgment, in the legal sense of the term, without it.  Without such an award the judgment would be inoperative and nugatory, leaving the aggrieved party without a remedy.  It would be merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties . . . .

*Id.*

These principles themselves establish the inappropriateness of what Apple contemplates. Apple would now have this Court set a FRAND rate that may at most serve as a jumping off point for further negotiations.  Setting an abstract FRAND rate, as Apple urges, would only prolong the negotiations and ensure that Apple may never have to pay; Apple is using the Court as a strategic piece of its negotiation strategy, not as the source of authoritative redress for a concrete case or controversy.  Apple is thus seeking the very sort of advisory opinion that this Court should not enter.  To accept Apple's invitation to render a non-binding opinion on a FRAND rate would open the door for every other patent infringer to seek opinions from the Court that they could use in their FRAND negotiations to seek unfair rates. This is not the Court's role.

6

Federal courts confronting like requests have consistently agreed that Article III powers do no extend so broadly or so loosely for a variety of distinct reasons.

1. ***Advisory Opinions:***  For instance, the Fourth Circuit concluded that a district court had issued an improper advisory opinion where one party had reserved rights to continue prosecuting the same case or controversy regardless of how the court ruled:  "Had the court ruled against Block on the Preemption Counts by determining that the NBA does not in any respect preempt the CSBA, Block could then proceed to state court—as it reserved the right to do—and further litigate its contention . . . that the CSBA is wholly inapplicable to it."  *H&R Block E. Enters., Inc.*, 591 F.3d at 724.  Apple's reservation of rights here is materially indistinguishable, for it means Apple may proceed as it sees fit regardless of what this Court may set as the prevailing FRAND rate between the parties.

2. ***Redressabilty:***  In a similar vein, this Court has expressed concern about whether, if Apple were to reject the FRAND rate as too high, the Court would be "just rolling the ball down the road a little bit.  It's not deciding the case and ending it."  *See* Nov. 1, 2012 Hrg. Tr. at 21:9-11; *see also id.* at 15:17-24 ("But then in the response to Motorola's motion for clarification, you advise the Court and Motorola that you will not accept any rate in excess of a dollar. So if I were to decide that the rate should be $3.10 or 27 cents or whatever, anything -- I'm sorry, I should say $3.10 or $1.20, wouldn't you walk away from the negotiation process and wouldn't we be back at square one?").  The Court thereby echoes sister courts, *supra*, that have dismissed suits for want of standing simply because they had no secure means of redressing the supposed injury they would be setting out to cure.

To fall within Article III, a plaintiff's injury in fact must be redressable.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "Redressability examines whether the relief

7

sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410, 1413 (D.C. Cir. 1998) (internal citation omitted).  In keeping with this requirement, courts have found a complete absence of standing where ultimate redress would depend on intervening actions beyond a court's immediate control.  *See id.* at 1413 (plaintiff failed to establish redressability and therefore lacked standing, because court knew of no action it could take to restore the remedy that plaintiff claimed had been lost); *Huddy v. F.C.C.*, 236 F.3d 720, 724 (D.C. Cir. 2001) (where "we have no reason to believe that [the appellant] would even reap his desired [relief], he flunks the redressability criterion"); *Cherry v. F.C.C.*, 641 F.3d 494, 499 (D.C. Cir. 2011) ("[E]ven if causation were properly established, the relief that this court might give Cherry would not remedy the injuries alleged, because this court has no authority over Zwirn's foreclosure action or the New York court's appointment of a receiver.").  In this instance, of course, the ultimate redress this Court would be setting out to provide – establishment of an actual FRAND license – would be wholly beyond its control and left to Apple's ensuing whim.  All of these precedents indicate that the Court cannot proceed in such a profile.

   *3.  Ripeness:*  Finally, courts insist that a dispute ripen before it comes to court.  This ripeness requirement serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  As a result, "ripeness is peculiarly a question of timing," *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974), and a federal court normally ought not resolve issues "involv[ing] contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (internal quotation and citation omitted).  It follows that a federal court should not weigh in

8

about contractual matters unless and until a contractual term has gone live and adjudication of it will bind the parties. *See Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir.1996) (quoting *Union Carbide* and holding that a breach-of-contract claim presented "no live case or controversy" where the claim hinged on future conduct by one of the parties to the contract); *see also Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.*, 276 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003) ("Short of this real difference of opinion as to the law, however, this case does not present a live, justiciable controversy. The contracts in question have yet to be finalized or executed. . . . The posture of this case thus renders it unfit for judicial resolution at this time."); *Bird v. Penn Central Co.*, 351 F. Supp. 700, 701-02 (E.D. Pa. 1972) ("They are instead asking us, in effect, to assume that the validity of the insurance contracts has been established and to advise them of their rights as if that particular hypothetical situation were a reality. The validity of the policies is the subject of pending litigation, the outcome of which nobody can know. The Underwriters may succeed in their efforts to have the insurance contracts declared void ab initio, in which case the question of coverage would obviously be moot; or they may fail. Until and unless it is finally determined that there are valid insurance policies, anything we might say about the extent of coverage would be entirely speculative and advisory."); *Oppedahl & Larson v. Network Solutions, Inc.*, 3 F. Supp. 2d 1147, 1164 (D. Colo. 1998) ("Because the court cannot resolve on summary judgment the status of the parties contractual relationship, it is also not possible to resolve Oppedahl & Larson's declaratory judgment claim. . . . A court need not supply a missing contract term without a dispute which requires it."). Again, the same result obtains here, for there is no contract in place and Apple would not be bound by any contractual terms this Court might set.

B.      The Court Is Correct In Finding Apple's Request For Injunctive Relief Cannot
        Satisfy *eBay*

In the November 2, 2012 order, the Court correctly observed that specific performance is

an equitable remedy in the form of a "positive injunction."  Dkt. 487 at 3 (*quoting Chicago*

*Unified Indus. v. City of Chicago*, 445 F.3d 940, 945 (7th Cir. 2006).  Such a request must satisfy

the four-factor test set forth in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Dkt.

487 at 3.  The Court is entirely correct that "Apple's request for a FRAND rate that may or may

not resolve the licensing dispute between the parties and would likely be used simply as a

starting point for future negotiations does not satisfy [*eBay*'s] basic requirements for an

injunction."  *Id*. at 4 (explaining Apple's lack of irreparable harm).

The only harm identified by Apple in its trial brief is Motorola bringing patent

infringement actions against Apple.  As the Court observed, the remedy sought by Apple will not

correct that harm because Apple may decline to agree to a rate, leaving negotiations to proceed

and further lawsuits to ensue.

Likewise, the Court is correct that the public policy favors declining to render equitable

relief.  *See* Dkt 487 at 5 (explaining that courts are not in the best position to determine FRAND

license terms for complex transactions and courts must consider the practicalities of the

request).[2]  Indeed, public policy should weigh dispositively against Apple's requested relief

considering Apple's refusal to commit to licensing and refusal to commit to the terms the Court

might set.   As this Court knows, questions surrounding the courts' appropriate role in

adjudicating disputes over FRAND licensing are complex and fraught with controversy.

Whereas Apple has loudly complained about perceived FRAND abuse by Motorola, it has never

_____

[2]   In a recent filing, Apple conceded the "complexity" of portfolio patent licenses
between sophisticated companies. Dkt. 489 at 5-6 (addressing a Motorola-HTC license).

10

paid a penny for its continuing and extensive infringement of Motorola's valuable intellectual property. Patent holders ought to be fairly compensated for use of their property and, in order for good-faith FRAND negotiations to unfold between parties as they should, prospective licensees such as Apple must have their own incentives to seek out, negotiate, and pay for licensing. Only thus will judicial intervention be the exception and not the rule. Otherwise, there is every prospect that prospective licensees will infringe standards-essential patents with impunity, never making meaningful attempts at licensing. As worrisome as that prospect is, Apple's position in this case is more worrisome still. By Apple's conception, the prospective licensor can *not only* hold out, but also call upon a court for extraordinary judicial compulsion and setting of a FRAND rate that binds *only* the patent holder, and that the infringer is free to *decline*, instead preferring to return to its ongoing infringement. This one-sided approach to judicial intervention in the FRAND context would skew the legal landscape in favor of infringement and against licensing, drastically elevating the interests of infringers over those of patent holders.

Finally, injunctive relief "is an act of equitable discretion." *eBay*, 547 U.S. at 391. This Court has already articulated why it should decline to exercise its discretion to award Apple's requested relief (even assuming *arguendo* it would have power to do so). Awarding the requested relief would be especially inappropriate given Apple's gamesmanship: Apple offered the appearance that the Court would be rendering a judgment that would resolve the dispute between the parties; only when pressed did it give up the game and concede it was reserving rights to decline a license. The Court should not wield its discretion in favor of a party that contemplates using the upshot solely as a one-sided negotiating ploy. *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992)

11

(Posner, J.)  ("[E]quitable relief is costly to the judicial system, especially in a case such as this where the relief sought would cast the court in a continuing supervisory role.").

     C.    The Court Is Correct In Declining To "Declare" A FRAND Rate

Apple may argue that it seeks a declaratory judgment of a FRAND rate.  As this Court held, however, declaring a FRAND rate is inappropriate for the same reasons described above. Dkt. 487 at 5.  The decision to render a declaratory judgment is within the discretion of the Court.  *Id.* (citing 28 U.S.C. § 2201(a)). Here, in addition, the declaration would be a nullity and fail the jurisdictional requirement of redressability—it would resolve no dispute and the parties would continue negotiating.  Indeed, it seems inconceivable that Apple's allegations of FRAND breach—in essence, a claim that Motorola failed to offer licensing within a fair and reasonable *range*—could translate to the relief Apple seeks, declaration of a prescribed FRAND *rate*, where specification of that rate seems gratuitous.  Assuming this Court might otherwise see fit to go as far as imposing a FRAND rate for the sake of ensuring licensing and ending the dispute between the parties, it no longer has reason or occasion to do so in the wake of Apple's indication that it may decline that  rate.

## II.    THERE CAN BE NO TRIAL ON FRAND BECAUSE THERE IS NO REMEDY

The Court correctly recognized the question that flows logically from the lack of remedy: "what purpose would be served by the court's declaring that Motorola's actions constituted a breach of its FRAND contract?"  Dkt. 487 at 6.  There is no purpose.  Without a remedy, there can be no trial.  This was exactly the conclusion reached by Judge Posner in a lawsuit between the same parties.  *Apple, Inc. v. Motorola, Inc.*, -- F. Supp. 2d ---, 2012 WL 2376664, 13 (N.D. Ill. June 22, 2012) ("But as Motorola points out, if a plaintiff fails to establish any basis for an award of relief, the defendant is entitled to a judgment dismissing the case with prejudice even if

a future lawsuit between the parties, continuing their dispute, can be anticipated.").   In the patent-infringement action before Judge Posner (where both parties asserted patents against each other), neither side's damages theory survived *Daubert* and summary judgment, and the Court ruled that neither side was entitled to an injunction.   *Id.*   Because there was no damages or injunction available, there was no remedy and the case was dismissed.

The same holds true in the FRAND case before this Court.   There is no claim for damages and Apple can make out no claim for injunctive or other equitable relief.   This case must therefore be dismissed on the FRAND licensing issues.

Apple may argue that its request for nominal damages provides a reason to hold the trial. That is insufficient, especially for a third party beneficiary.   Judge Posner recognized that a plaintiff in a breach of contract case may be entitled to nominal damages, and cited a case in which consequential damages were sought but not obtained, and the plaintiff had not requested nominal damages.   *Id.* at *6 (citing *MindGames, Inc. v. Western Publishing Co.*, 218 F.3d 652, 654 (7th Cir. 2000)).   But Judge Posner held that seeking only nominal damages is not enough to bring a lawsuit under Article III jurisprudence. *Id.*   Indeed, Judge Posner addressed and rejected an attempt to seek only nominal damages in a contract case:

> You can't go into federal court and say you had a contract with X and X broke it and you're really annoyed even though you sustained no injury of any sort (in fact you made money because you re-contracted at a higher price) so please give me a judgment for $1 that I can pin on my wall. No more can Apple be permitted to force a trial in federal court the sole outcome of which would be an award of $1.

*Id.*   Similarly, nominal damages cannot overcome lack of injury. It is well-established that "if there is … no proof of substantial loss or injury … there is no purpose for allowing damages, and judgment should be rendered for the defendant."  22 Am. Jur. 2d, Damages § 9.

Apple voluntarily chose to drop its claim for damages.  Apple chose to refuse to accept the Court's rate, representing that setting the rate would be, at best, only the beginning of the

negotiation process.  Having distanced itself from its own desired remedies, it cannot now complain that it has no case to try.

## III.   THERE CAN BE NO TRIAL ON THE REMAINING CLAIMS BECAUSE APPLE CANNOT DEMONSTRATE A RIGHT TO THE EXTRAORDINARY REMEDY IT SEEKS

The remaining claim in this case is Apple's allegation that Motorola untimely disclosed U.S. Patent No. 6,359,898 to ETSI, a standards-setting body for cell phones.  It is undisputed, however, that Motorola *did* in fact disclose the '898 patent in 2003 and also committed to license the '898 patent on FRAND terms as part of its essential patents portfolio— all before Apple ever developed and sold the iPhone.[3]  At summary judgment, the Court preserved this breach of contract claim for trial, but expressed skepticism that there was any harm to Apple:

> At this point, it is not clear how Apple intends to prove that it was damaged by Motorola's failure to disclose patents to ETSI in a timely manner.  Additionally, Apple must prove that any litigation damages it seeks to recover are directly attributable to Motorola's breach.

Dkt. 194 at 47. At the time of the ruling, Apple theorized that it suffered damages in the form of its litigation costs in defending against lawsuits.  Following the summary judgment ruling, however, Apple then dropped its claim for damages. Dkt. 255.

As this Court recognized, the only harm identified by Apple is having to defend itself in litigation against the '898 patent.  Apple Trial Brief at 52.  The extraordinary equitable relief and declaratory judgments Apple seeks is out of all proportion to that and thoroughly unjustified.  *Id.* at 53-54 (declaratory judgment that Motorola is not entitled to seek injunctive relief as to the

---

[3]   Apple originally alleged two other essential patents were untimely disclosed and Motorola was therefore in breach of ETSI policy.  *See* Dkt 194 at 37. However, Apple now asserts only a claim for breach for the '898 patent, Apple Trial Brief at 48-51, and seeks a remedy only with respect to the '898 patent.  *Id.* at 53.

'898 patent; injunction that Motorola is not entitled to seek injunctive relief as to the '898 patent; and declaration that the '898 patent is unenforceable).

Apple's requested remedies are all discretionary and fail for much the same reasons that the FRAND remedy fails:  Apple cannot demonstrate the extraordinary circumstances, including a showing of irreparable harm, that would be required.   The remaining claims should be dismissed for additional reasons:  there is no demonstrable harm to Apple and the remedies are, in any event, affirmative defenses that will not be implicated unless and until Apple faces litigation in which the '898 patent is actually asserted.

A.      Apple's Remedies For The '898 Patent Are Simply Affirmative Defenses To Patent Infringement That Have Already Been Raised by Apple In Another Case

Apple is attempting to obtain an injunction to limit how Motorola may assert the '898 patent.   However, the relief that Apple seeks is an affirmative defense to a charge of patent infringement.   This Court should not in *this* case provide the remedies that would be occasioned, if ever, in *other* cases where the '898 patent would be asserted.

Indeed, Motorola <u>did</u> assert the '898 patent against Apple in the case in the Northern District of Illinois before Posner.   *Apple, Inc. v. Motorola, Inc*., 2012 WL 2376664.   In that case Apple sought the same relief as it does here:  a finding that the '898 patent is unenforceable due to untimely disclosure to ETSI.   Judge Posner scheduled a trial on the equitable defenses to patent infringement such as untimely disclosure and FRAND violations to follow the trial on liability.   *Id*. at *1 ("my expectation was that the liability trials (one a trial of Apple's claims of infringement, the other of Motorola's claims of infringement) would be followed immediately (if any claims of infringement were upheld in the liability trials) by trials on issues of relief: a jury trial on damages and a bench trial on equitable relief.").   The case was dismissed for lack of

15

remedies before the trial, however, and  is now on appeal.  Thus, the claims that are defenses in that case (still on appeal), are now being raised as affirmative claims in this case.  This is inappropriate.  If the Northern District of Illinois case proceeds after appeal, or if Motorola files some other patent infringement action for the '898 patent, Apple may raise its defenses then and there.

There is no reason, and certainly no compelling reason, for this Court to hold a trial on extraordinary relief that is not only available to Apple in the ordinary course elsewhere, but in fact already being sought elsewhere, in a more fitting posture.  *See Trippe Mfg. Co. v. Am. Power Conversion*, 46 F. 3d 624, 629 (7th Cir. 1995) (holding that district courts should "administer their dockets so as to conserve scarce judicial resources" and that a district court has "'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation.") (citing *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983) and *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co*., 342 U.S. 180, 183 (1952)).  If the Court accepts Apple's request, then every other patent infringer will have the opportunity to come to Court to preview affirmative defenses for patents that are not being asserted or are being asserted in other cases.

B.      The Court Will Not Be Remedying Any Cognizable Harm

The only harm alleged by Apple from untimely disclosure is having to defend itself in lawsuits.  Such a harm is disconnected from the breach-of-contract allegations and finds no remedy in this Court.  Apple could have articulated a claim for money damages, the normal remedy for breach of contract, but it dropped any claim for damages.

C.      Apple Is Not Entitled To Equitable Relief

16

"Damages are the default remedy for breach of contract; injunctive and other relief… is reserved for extraordinary cases." *Estate of Luster v. Allstate Ins. Co*., 598 F.3d 903, 908 (7th Cir. 2010) (internal citations omitted).  Furthermore, "[a]n injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy that courts may grant at their discretion in the extraordinary situations where legal remedies such as monetary damages are inadequate." *Bedrossian v. Nw. Memorial Hospital*, 409 F.3d 840, 842 (7th Cir. 2005) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  Similarly, "[s]pecific performance is an exceptional remedy [typically] available only when damages constitute an inadequate remedy." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 637 (7th Cir. 2007).

Equitable remedies such as an injunction and specific performance are not granted as a matter of right; rather, the reward of an equitable relief "must be thoroughly justified."  *Polymer Tech., Inc. v. Bridwell*, 103 F.3d 970, 977 (Fed. Cir. 1996).  Apple has not demonstrated any extraordinary circumstances that would justify a reward of equitable remedies.  Rather, any alleged harm suffered by Apple could be remedied by damages.  Therefore, Apple is not entitled to the injunctive or declaratory relief it seeks with respect to allegations of untimely disclosure.

D.     Without A Remedy There Can Be No Trial

As is true for the FRAND trial, because Apple's allegations of untimely disclosure do not translate to any available remedy, there can be no trial on these claims.  *Apple Inc. v. Motorola, Inc.,* 2012 WL 2376664, at *13.

E.     Apple's Patent Misuse Claim Also Fails As A Matter of Law

Along with asserting breach-of-contract claims for untimely disclosure, Apple also alleges that Motorola engaged in patent misuse without alleging any facts other than those allegedly giving rise to breach of contract.  Apple Trial Brief at 52-53.  But patent misuse is an

affirmative defense to a claim for patent infringement.  Donald S. Chisum, CHISUM ON PATENTS § 19.04 (2008); *Windsurfing Int'l Inc. v. AMF, Inc*., 782 F.2d 995, 1001 (Fed. Cir. 1986) ("The doctrine of patent misuse is an affirmative defense to a suit for patent infringement.").  The defense should be raised in the actual case in which the patent is being asserted. Apple seeks a similar injunctive remedy for patent misuse as it does for breach of contract. Apple Trial Brief at 53.  Therefore, the claim for patent misuse fails for the same reason that its claims for breach of contract do— namely, Apple cannot show it is entitled to the extraordinary and discretionary remedies it seeks.   This Court can and should exercise its discretion to decline to issue extraordinary, discretionary remedies for a claim that better belongs in the forum where patent infringement is asserted.  Because there is no appropriate remedy to be found here, or occasioned here, there should be no trial on patent misuse.

*      *      *

For each and all of the foregoing reasons, we respectfully submit that the Court should not proceed and should dismiss Apple's claims in this case.

Respectfully submitted,

18

DATED:    November 4, 2012                    MOTOROLA MOBILITY, LLC


                                             By:    /s/ Stephen A. Swedlow
                                                    Stephen A. Swedlow


Scott W. Hansen                              David A. Nelson
Lynn M. Stathas                              Stephen A. Swedlow
Lisa Nester Kass                             Amanda S. Williamson
Reinhart Boerner Van Deuren S.C.             Quinn Emanuel Urquhart & Sullivan, LLP
22 East Mifflin Street                       500 West Madison Street, Suite 2450
P.O. Box 2018                                Chicago, IL  60661
Madison, WI 53701-2018                       Telephone: (312) 705-7400
Telephone: (608) 229-2200                    Facsimile: (312) 705-7401
Facsimile: (608)229-2100                     Email:   davenelson@quinnemanuel.com
1000 North Water Street, Suite 170                    stephenswedlow@quinnemanuel.com
Milwaukee, WI 53202                                   amandawilliamson@quinnemanuel.com
Telephone: (404) 298-1000
Facsimile: (404) 298-8097                    Edward J. DeFranco
Email: shansen@reinhartlaw.com               Alexander Rudis
        lstathas@reinhartlaw.com             David M. Elihu
        lkass@reinhartlaw.com                51 Madison Avenue, 22nd Floor
                                                New York, NY 10010
                                             Telephone: (212) 849-7000
                                             Facsimile: (312) 849-7100
                                             Email: eddefranco@quinnemanuel.com
                                                     alexanderrudis@quinnemanuel.com
                                                     davidelihu@quinnemanuel.com


                                             Brian C. Cannon
                                             Meghan Bordonaro
                                             555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
                                             Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100
                                             Email: briancannon@quinnemanuel.com
                                                     meghanbordonaro@quinnemanuel.com


                                             *Attorneys for Defendant Motorola Mobility, LLC*