IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> MOTOROLA MOBILITY, INC. <br><br> Defendant. | Case No. 11-CV-178-bbc <br><br> Hon. Barbara B. Crabb |

## APPLE'S RESPONSE TO THE COURT'S ORDER OF NOVEMBER 2, 2012

Apple is acutely sensitive to, and shares, the Court's desire that the result of this trial be meaningful in resolving the extensive disputes between the parties. Apple believes that, under Apple's original conception of the trial, it would have been so. Motorola's refusal to make a FRAND offer was, in Apple's view, the single greatest impediment to a successful negotiation of a worldwide license that would have eliminated all litigation between the parties, and Apple believed that, if the Court set such a FRAND rate, such a successful negotiation was likely. That is the reason Apple brought this case and prepared it for trial as it did. Motorola's motion for "clarification" filed on October 30 sought, for the first time, to bind Apple to whatever FRAND rate the Court set, relief it had not pled and could not have pled given the claims in the case.

When the Court asked Apple on late Tuesday afternoon, October 30, to commit by noon the next day as to whether it would be bound by whatever FRAND finding the Court made, Apple agreed but with caveats as to the amount and scope. The Court's order dated November 2 states that, because Apple would not make an unconditional commitment to be bound, the Court would reverse its prior decisions regarding the availability of specific performance and

declaratory relief should Apple prove that Motorola breached its FRAND commitments, and questioned whether the trial should proceed at all. This submission is in response to the Court's request that the parties comment on the November 2 order.

The fundamental reason that Apple placed conditions on the commitment the Court asked for is that it would have been one-sided, because Motorola would have no similar obligation to pay a FRAND rate for Apple's standards-essential patents (because Motorola had not brought a similar action seeking to establish a FRAND rate for Apple's patents). Thus, even with the unconditional commitment the Court sought, the disputes between the parties regarding standards-essential patents would not have been fully resolved. Apple agrees as to the benefit of a process that effectively binds the parties, but not one that does so only in one direction.

Accordingly, as requested by the Court's November 2 order, Apple makes the following proposal that it believes will address the Court's concerns that the trial effectively resolve the parties' disputes. Apple's proposal is in two alternative forms, depending on the Court's preference:

(1) the trial proceed as planned starting tomorrow with the understanding that the Court will set a FRAND rate according to a methodology that both Apple and Motorola will agree to be bound by, thus effectively eliminating the disputes between the parties as to their standard essential patents; or

(2) if Motorola is unwilling to agree to be bound by the methodology adopted by the Court in option one, the Court defer the trial for a limited period (e.g., 6-9 months) to allow the development of a record as to both parties' standard essential patents such that the Court could determine in one proceeding what the FRAND

payment of each party should be, and both parties would agree to be bound by that determination.

The second alternative allows for the possibility that the Court may conclude that the Chi Mei rate is the appropriate FRAND measure for Motorola's patents because it involves the same patents, the same products, and the same parties, but that a different rate or methodology would be appropriate as a FRAND measure for Apple's standards-essential patents.

The only conditions that Apple would attach to its commitment under either scenario are: (1) that the license in both directions be worldwide; (2) that both parties preserve their rights to appeal the Court's ruling, such that both parties' payment obligations would begin after such appeals are concluded; and (3) that the FRAND royalty obligation apply to both parties only to otherwise unlicensed products (in other words that neither party should have to pay twice for the same product).

Apple believes this proposal addresses the concerns expressed by the Court. The reasons for this are set forth below, and Apple will be prepared to discuss this in more detail on Monday morning as directed.

### A. The Court May Issue a Declaratory Judgment Setting the FRAND Rate Under Apple's Proposal

The Court can issue a declaratory judgment setting the FRAND rate for Motorola's patents; and Apple agrees to be bound by the rate set by the Court if Motorola is similarly bound to pay the FRAND rate set for Apple's patents. As Apple pointed out in its opposition to Motorola's motion in limine to preclude Apple from seeking specific performance, the case law

recognizes that it is appropriate to grant declaratory judgment setting a contract price.[1]  *See* Dkt. No. 377 at 9-10.

The Court has nonetheless suggested it will decline to exercise its discretion to hear Apple's request for declaratory relief on the basis that it will not fully resolve the dispute between the parties.  *See* Dkt. No. 487 at 5.  But if both parties are bound by the FRAND rates set by the Court, this remedy would effectively resolve the dispute between the parties regarding Motorola's infringement claims on its declared standards-essential patents, because Apple and Motorola would each have a cross-license to the other party's patents.

Accordingly, declaratory relief here is supported by one of the principal factors courts consider in determining whether to entertain declaratory relief.  "[I]f the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed."  *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).  A court order setting the FRAND rate that the parties are bound to accept will resolve infringement claims by Motorola that were filed in 2010 that remain alive on appeal; Apple would have a license to Motorola's asserted patents.  It would further resolve the issue that the parties have been disputing in licensing negotiations since Apple released the iPhone in 2007:  what is the FRAND rate for Motorola's declared standards-essential patent portfolio?  And Motorola's

---

[1] *See, e.g.*, *John Hancock Mut. Life Ins. Co. v. Webcor, Inc.*, 311 F.2d 701, 705 (7th Cir. 1962) (holding that the court had jurisdiction to grant plaintiff a declaration setting price the of stock in a contract for the purchase of the stock because it would amount to "specific relief through a decree of a conclusive character"); *Cain Rest. Co. v. Carrols Corp.*, 273 F. App'x 430, 436-37 (6th Cir. 2008) (granting plaintiff summary judgment on its declaratory judgment claim by construing a term in a real estate contract that would determine the proper purchase price).

4

commitment to be bound by the Court's determination of a FRAND rate for Apple's patents would mean the parties need not return to negotiations over that cross-license.[2]

Apple's request for declaratory relief does not raise the concerns the Court identified in connection with specific performance regarding whether Apple can show irreparable harm or an inadequate remedy at law. The Supreme Court has held that "engrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate." *Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (internal citations omitted). Specifically, the Court held that "the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury—a traditional prerequisite to injunctive relief, having no equivalent in the law of declaratory judgments precluded the granting of declaratory relief." *Id.* at 472 (internal citations omitted); *see also Tierney v. Schweiker*, 718 F.2d 449, 457 (D.C. Cir. 1983) ("Although a party must demonstrate irreparable injury before obtaining injunctive relief, such a showing is not necessary for the issuance of a declaratory judgment.").[3]

Declaratory relief likewise does not require a showing that there is no adequate remedy at law in monetary damages. "The existence of another adequate remedy does not preclude a

---

[2] Apple has repeatedly told Motorola in licensing negotiations that it is willing to grant a cross-license to its own declared standards-essential patents. Trial Ex. 434 (WI-178-002651) ("Apple has identified patents that are essential to one or more of the ETSI standards . . . Apple is willing to license these patents on fair reasonable and non-discriminatory terms as requested."); *see also* Dkt. No. 172 (Lutton Tr.) at 71:11-74:9.

[3] Apple maintains its position that the relief it originally sought from the Court (declaratory relief and specific performance seeking to compel Motorola to make the FRAND offer its contracts required) is warranted for the reasons stated at the pretrial conference, but makes the alternative proposals herein to address the concerns expressed by the Court.

declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. In *Tierney*, the district court had declined to entertain declaratory relief in part based on the conclusion that plaintiffs had available a $1000 damages remedy. The D.C. Circuit reversed, holding that "the district court committed reversible error when it held that the availability of such alternative remedies precluded issuance of a declaratory judgment." *Tierney*, 718 F.2d at 457.

The remaining discretionary factors courts consider in deciding to entertain declaratory relief counsel in favor of the Court hearing Apple's claim here. There is no pending parallel state proceeding that would be affected by the Court's granting of relief here. *See, e.g.*, *Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) ("It is an abuse of discretion . . . to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist."). And granting Apple the declaratory relief it seeks here would promote the settlement of (and in fact, would dispense with altogether) Motorola's appeals of its declared-essential patent infringement claims against Apple. *See Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354-55 (S.D.N.Y. 1992). Because Motorola would also be bound to accept a FRAND rate for Apple's essential patents, the declaration would also dispense with the need for any future licensing negotiations regarding the price of a cross-license.

> **B.    The Court May Also Grant Specific Performance Setting the FRAND Rate Under Apple's Proposal**
>
> > **1.    If Motorola Is Permitted to Continue Filing Injunctive Relief Suits Against Apple Rather Than Fulfilling Its Obligation to Offer a FRAND License, Apple Will Suffer Irreparable Harm Not Compensable by Money Damages**

If the Court declines to set the FRAND license rate for Motorola's standards-essential patents, Motorola will be free to pursue additional infringement suits against Apple seeking injunctions or exclusion orders. Such actions would irreparably harm Apple.

The Court's order identifies two problems with Apple's allegation that an injunction or exclusion order against its products would cause Apple irreparable harm: (1) that an order setting the FRAND rate would not prevent Motorola from seeking further injunctions unless Apple agreed to pay the rate; and (2) that the harm that such injunctions would cause Apple might be compensable by money damages. *See* Dkt. No. 487 at 4. At this point, neither problem exists.

a) Because Apple Will Pay the Ordered Rate, Specific Performance Would Remove the Threat of Further Suits

The Court's first concern was motivated by the prospect that "if Apple refuses to be bound by the rate determined by the court, Motorola could continue to sue Apple for patent infringement and request injunctive relief." *Id*. Apple has removed that prospect by committing to be bound by the license rate set by the Court for Motorola's standards-essential patents, so long as Motorola is bound by the rate set by the Court for Apple's patents.

If the Court sets the FRAND rate that Apple is bound to pay for a license to Motorola's standards-essential patents, then Apple will pay that amount (offset by Motorola's payments for a license to Apple's essential patents) and receive a license. As a licensed party, Apple will no longer face the peril of suits for injunctive relief with which Motorola now threatens it.

b) Improper Injunctive and/or Exclusionary Sanctions Are Not Compensable By Money Damages

The second problem identified by the Court "is that Apple has provided no reason why its injuries would not be remedied by an award of money damages." *Id*. The reason that the harm of an improper injunction (or injunctions) against Apple could not be remedied by a money damage award is that such harm is not readily quantifiable. *See, e.g.*, *In re Lewis*, 212 F.3d 980, 984 (7th Cir. 2000) ("Real but hard-to-quantify loss is a standard form of irreparable injury").

The harms caused by injunctive or exclusionary sanctions, specifically, have been held to be non-quantifiable and irreparable. *See Tessera, Inc. v. Advanced Micro Devices, Inc.*, C 05-4063, 2007 WL 3232441, at *6 (N.D. Cal. Nov. 1, 2007) ("There is a high likelihood that even a temporary ban on imports would disrupt the [] Defendants' business and damage relations with their customers. These harms cannot readily be quantified, and thus are irreparable."). The improper injunctive relief threatened by Motorola would cause Apple lost profits, loss of customers and potential customers, loss of goodwill, uncertainty in business planning, and uncertainty among customers and potential customers. These harms are by nature uncertain, not readily quantifiable, and not compensable by money damages. *See, e.g.*, *Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages").

Additionally, the Court states that monetary damages would have been an adequate remedy because any determination at the liability stage that Motorola breached its contracts by failing to offer Apple a FRAND rate would effectively preclude Motorola from seeking injunctive relief by providing Apple with a defense to Motorola's lawsuits. *See* Dkt. No. 487 at 4-5. As an initial matter, this demonstrates the necessity of trying the merits of Apple's claim seeking nominal damages. *See* Section C, *infra*. Moreover, while a determination that Motorola had breached its FRAND obligations (accompanied only by an award of monetary damages) might supply Apple with a defense to future injunction suits, there is no guarantee that such a court sitting in equity would view that defense as dispositive.

### 2. The Public Interest Supports Specific Performance

The Court indicated that, in the absence of a commitment from Apple to pay an ordered rate for a license to Motorola's standards-essential patents, it had particular concerns that the public interest weighed against granting specific performance setting the FRAND rate. The

Court expressed the concern that "it would not be in the public interest for the court to spend such enormous resources to determine a FRAND rate that may ultimately lead only to additional litigation," *id*. at 5, since the practical effect of that relief would not justify the Court's efforts in determining the rate. The parties' commitment to be bound by the license rates set by the Court would resolve this concern. The practical effect of a *binding* determination of the FRAND rate will be to resolve the parties' dispute and avert the inefficient outcomes of serial suits by Motorola for infringement and countersuits by Apple for breach of FRAND, accompanied by ongoing licensing negotiations. *See* Dkt. No. 424 at 8.

> C. **The Court Can Rule on Apple's Breach of Contract Claims on the Basis that Apple Seeks Nominal Damages and Equitable Estoppel**

Even if the Court declines to entertain Apple's requests for specific performance and declaratory judgment, the trial should proceed on Apple's breach of contract claims because Apple is entitled to nominal damages. "The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages." *Felton v. Teel Plastics, Inc.*, 724 F. Supp. 2d 941, 954 (W.D. Wis. 2010) (Crabb, J.) (internal quotations omitted); *see also Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (same).[4]

Nor does the Court's analysis with respect to injunctive relief and specific performance foreclose Apple's ability to obtain the remedy that Motorola be equitably estopped from seeking

---

[4] If the Court determines that Apple's prayer for nominal damages is the only relief it will consider, the Court will retain diversity jurisdiction over this case. This is because "[t]he amount in controversy requirement . . . must be determined by the district court at the beginning of the suit, and is not dependent on subsequent dismissal of individual claims used to satisfy the jurisdictional threshold." *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007) ("Whether § 1332 supplies subject-matter jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction."); *see also Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004).

injunctive relief on its declared standards-essential patents as a remedy for its FRAND violations. *See* Dkt. No. 110 (Apple's First Am. Compl.) ¶¶ 134-141, 197(a).

### D. Apple's Failure to Disclose Claims Should be Tried

At the end of its order, the Court posits that its observations regarding the availability of equitable remedies for Apple's FRAND claims "lead to the question whether a trial should be held regarding Apple's other claims." Dkt. No. 487 at 6. Apple respectfully disagrees that the Court's concerns relating to Apple's equitable FRAND remedies bear on Apple's claims based on Motorola's failure to disclose.

#### 1. The Court's Concerns Regarding Equitable Remedies Do Not Suggest That the Merits of Apple's Failure to Disclose Claims Need Not Be Tried

In the course of its discussion of the continuing viability of Apple's failure to disclose claims, the Court questions "why Apple believes that Motorola could obtain an injunction or exclusionary order against it after this court had determined that Motorola had injured Apple by breaching its duty to disclose its patents to ETSI." *Id*. 487 at 7. Thus, the Court's concern assumes that, and would only arise if, the Court rules on the merits of Apple's failure to disclose claims. As with the FRAND claims, there is no guarantee that a determination of breach would be viewed by every other tribunal as a dispositive defense to an injunction or exclusion order in favor of Motorola.

#### 2. An Order of Unenforceability Is the Only Remedy Available for Motorola's Patent Misuse

As the Court notes, Apple seeks an order rendering Motorola's '898 patent unenforceable for patent misuse. While this relief is equitable in nature, it is the only remedy that may issue on a finding of patent misuse, which is itself an equitable doctrine. *See, e.g.*, *B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997) (When a patent holder commits patent

misuse, the patent is rendered "unenforceable until the misuse is purged."). As Apple noted in its trial brief, misuse cannot be "purged" when the misuse consists of a failure to disclose essential IPR to a standard-setting organization. Dkt. No. 465 at 52-53. Motorola's failure to disclose the '898 patent until years after the standard was set resulted in that patent becoming perceived as a permanent part of the ETSI GPRS standard, allowing Motorola to seek to exclude parties from practicing the entire standard based on patent infringement actions involving only the '898. Thus, the appropriate remedy here is to render the '898 patent and any related successor patents unenforceable against all GPRS-compliant products. *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1026 (Fed. Cir. 2008).

## II. CONCLUSION

For the foregoing reasons, Apple respectfully requests that:

(1) The trial proceed as planned starting tomorrow with the understanding that the Court will set a FRAND rate according to a methodology that both Apple and Motorola will agree to be bound by, thus effectively eliminating the disputes between the parties as to their standard essential patents; or

(2) if Motorola is unwilling to agree to be bound by the methodology adopted by the Court in option one, the Court defer the trial for a limited period (e.g., 6-9 months) to allow the development of a record as to both parties' standard essential patents such that the Court could determine in one proceeding what the FRAND payment of each party should be, and both parties would agree to be bound by that determination.

Dated: November 4, 2012

                              Respectfully submitted,

                              */s/ Samuel F. Ernst*
                              Robert D. Fram (CA Bar No. 126750)

rfram@cov.com
Christine Saunders Haskett (CA Bar No. 188053)
chaskett@cov.com
Samuel F. Ernst (CA Bar No. 223963)
sernst@cov.com
Nathan E. Shafroth (CA Bar No. 232505)
nshafroth@cov.com
Danielle L. Goldstein (CA Bar No. 257486)
dgoldstein@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091

Jason C. Raofield (DC Bar No. 463877)
jraofield@cov.com
Richard Anthony Lopez (DC Bar No. 995719)
rlopez@cov.com
Matthew John Connolly (DC Bar No. 997905)
mconnolly@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

Matthew D. Powers
Matthew.Powers@tensegritylawgroup.com
Paul Ehrlich
Paul.Ehrlich@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone:  (650) 802-6000
Facsimile:  (650) 802-6001

Catherine Cetrangolo
cetrangolo@cetralaw.com
CETRA LAW FIRM LLC
20 North Carroll Street
Madison, WI 53703
Telephone:  (608) 535-9220
*Attorneys for Plaintiff Apple Inc.*

## **CERTIFICATE OF SERVICE**

  I, Samuel F. Ernst, an attorney, do hereby certify that I caused a copy of the foregoing to be electronically filed with the Court and served on all parties on November 4, 2012 using the Court's electronic case filing system.


                    By: */s/ Samuel F. Ernst*
                    Samuel F. Ernst