IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | Case No. 11-CV-178-bbc |
| v. | |
| MOTOROLA MOBILITY, INC. | Hon. Barbara B. Crabb |
| Defendant. | |

## APPLE'S BENCH MEMORANDUM REGARDING THE COURT'S JURISDICTION AND THE NATURE OF ANY DISMISSAL

In the final pretrial conference and in its November 2 Order, the Court questioned whether this case should be tried. The Court's question was premised on concerns regarding whether it would be an appropriate exercise of discretion to decide Apple's claims for equitable relief. Motorola repackaged that concern as a lengthy argument in its November 4 response to the November 2 Order and also argued that the Court lacks jurisdiction to hear Apple's claims. Apple's submission set forth a proposal whereby both parties would be bound to accept a FRAND rate set by the Court for a cross-license to each other's declared standards-essential portfolios. Apple submits this bench memorandum to address Motorola's argument that the Court lacks jurisdiction to hear Motorola's claims.

First, the Court has jurisdiction to hear Apple's claims both under Apple's proposal that the parties be bound by the FRAND rate and under Apple's previous conception of the case. Second, Apple requests that if the Court disagrees with Apple and dismisses the case, that it do so without prejudice. This is what the law requires and would ensure that Apple may assert its

SSO-based defenses in Motorola's infringement suits against Apple, which Motorola argues is the appropriate forum for those questions to be decided.

### *Motorola's Arguments Are Moot In Light of Apple's November 4 Proposals*

Motorola's jurisdictional arguments are all based on the premise that Apple is seeking an order that is binding only on Motorola and would permit Apple to "bargain down." Dkt. 496 at 2. Apple's proposals in its November 4 filing negate this premise and moot any argument that Apple seeks an advisory opinion. Apple has now proposed two alternatives whereby both Apple and Motorola would be bound to license each other's standards-essential patents at a FRAND rate, fully resolving their dispute. Presumably, Motorola will agree to one of these proposals, since it "would welcome a final license agreement with Apple and a process to make that happen," which is what Apple has proposed. Dkt. No. 496 at 1.

### *If Motorola Declines to Be Bound Under Apple's Proposals, the Court Has Jurisdiction to Order Motorola to Offer Apple a FRAND License*

If, however, Motorola declines to be bound by an order requiring it to license its patents to Apple and to pay for a cross-license to Apple's patents, this Court would still have jurisdiction to order Motorola to offer Apple a FRAND license to Motorola's patents. Motorola's arguments to the contrary are based on a basic misunderstanding of the contracts that are at issue in this breach of contract case.

Motorola argues that "[t]his Court lacks jurisdiction to . . . set a rate that Apple is not bound to accept," Dkt. 496 at 5, because that relief would not provide "ultimate redress" by "establish[ing] . . . an actual FRAND license," *id.* at 8. Motorola's argument is based on the misconception that Apple is seeking specific performance of a future licensing agreement

2

between Apple and Motorola. That is incorrect. The contracts on which Apple has sued, and on which it seeks specific performance are *Motorola's contracts with IEEE and ETSI*. Those contracts only obligate Motorola to offer a license to its patents on FRAND terms. Motorola has already obtained the benefit of that bargain: through its participation in SSOs, Motorola has successfully advocated for the adoption of its technical proposals and obtained the intellectual property rights that flow from such adoption. Apple is seeking specific performance to enforce the second half of that bargain – offering a FRAND license to the patents thus obtained. These contracts at issue do not purport to require Apple (or anyone else) to accept Motorola's offers. Thus, the "controversy" presented to the Court by Apple's FRAND claims—Motorola's breach of its SSO contracts—would be fully resolved by an order requiring Motorola to perform those contracts by offering a FRAND license.

Motorola's IEEE FRAND obligation, set forth in its March 1, 1994 "blanket" letter of assurance, states that "Motorola agrees to license [standards-essential] patents on a non-discriminatory basis *offering fair and commercially reasonable terms*." Trial Ex. 14 (emphasis added). Motorola's December 20, 2002 ETSI declaration of intent to offer a FRAND license to IPR including the '559 and '697 patents states that "Motorola hereby declares that it is *prepared to grant* irrevocable licenses on fair, reasonable and non-discriminatory terms and conditions under such IPRs." Trial Ex. 15 (emphasis added). Motorola's ETSI declaration relating to the '898 patent includes the same statement. *See* Trial Ex. 16.

The Motorola SSO contracts that Apple seeks to enforce are thus analogous to option contracts: Motorola promised the SSOs that in exchange for the benefit of participating in the standards process, it would give third parties the option to license its patents on FRAND terms. *Cf.* Rest. 2d Contracts § 25, Illus. 1 ("A promises B under seal or in return for $100 paid or

3

promised by B that A will sell B 100 shares of stock in a specified corporation for $5,000 at any time within thirty days that B selects."). Moreover, as with options contracts, Motorola's obligation to offer a FRAND license was "irrevocable." Trial Exs. 15, 16; *see* Rest. 2d Contracts § 25, comment d ("The principal legal consequence of an option contract is that stated in this Section: it limits the promisor's power to revoke an offer."). It is a non-controversial proposition that options contracts are enforceable. *See, e.g.*, *American Land Holdings of Indiana, LLC v. Jobe*, 604 F.3d 451, 459 (7th Cir. 2010) (Posner, J.) ("The deed we have said permits the purchase of the surface only as may be necessary for mining operations underground. The grant of *that* option is the grant of an appurtenant right that Peabody can exercise at any time.") (emphasis in original).

Accordingly, an order determining the FRAND rate for Motorola's patents and requiring Motorola to offer Apple a license at that rate would not be an advisory opinion, because it would have the binding force of law, resolving the parties' dispute and requiring Motorola to fulfill its contractual obligation to offer Apple (indeed, anyone) a FRAND license. The contracts in question will have been fully performed once Motorola makes a FRAND offer; Motorola has pointed to nothing in the contracts that require Apple to accept an offer to license Motorola's patents. Accordingly, the binding force of the Court's order would not be dependent on future action by Apple.[1]

---

[1] This case is therefore unlike *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948), and the other advisory opinion cases cited in Motorola's November 4 submission. In *Chicago & Southern Air Lines*, the Court held that an administrative regulation was not a final reviewable decision having the force of law because it had not been reviewed by the President. *Id.* at 113. Here, the Court's order would have the force of law, requiring Motorola to fulfill its obligation to offer the FRAND license.

In addition, the harm that Apple has sued to redress is the harm of not receiving a

FRAND offer from Motorola. The order Apple is requesting would redress this harm because it

would give Apple the power to accept Motorola's offer—a power that Apple currently lacks

because of Motorola's breach.[2]

Finally, the case is ripe for adjudication because Motorola has refused to offer Apple a

FRAND license, the parties' negotiations are at an impasse, and Motorola has sued Apple for

patent infringement.[3]


### *If the Court Does Dismiss the Case, It Must Ensure That Its Dismissal Has No Res Judicata Effect by Dismissing Without Prejudice*

Motorola argues that Apple's FRAND and untimely disclosure claims would be more

appropriately raised as affirmative defenses to future patent infringement lawsuits. If the Court

decides to dismiss Apple's claims, Apple seeks to ensure that such a dismissal may not operate

as res judicata to bar Apple doing just that—raising its theories as affirmative defenses or

counterclaims in future cases. Specifically, Apple requests that if the Court dismisses Apple's

claims, it do so *without prejudice*.

---

[2] Accordingly, this case is not like *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410 (D.C. Cir. 1998) and the other redressability cases cited in Motorola's November 4 submission. In *Microwave* the plaintiff sued the FCC to challenging an order approving the transfer of one company to another. *See id.* at 1411. The plaintiff's injury of not being able to acquire the transferred company was not redressable, because even if the FCC did not approve the acquisition, it would not result in the transfer of the company to the plaintiff. Here, the Court's order would result in Motorola offering Apple the FRAND license to which it is entitled.

[3] This case is therefore unlike *Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996), and the other ripeness cases cited in Motorola's November 4 submission. In *Clinton*, the parties had a contract requiring the defendant to liquidate a corporation by 1997. *See id.* at 572. Plaintiff sued to enforce the contract because the liquidation had not yet commenced, but because it was only 1996, the case was not ripe for adjudication. *See id.* Here, Motorola's contractual obligations adhered long ago, when it agreed to be bound by the SSO policies.

Where a court's dismissal of an action does not reach the merits of a claim, that dismissal must be without prejudice. *See, e.g.*, *Rambeau v. Dow*, 553 F.2d 32, 35 (7th Cir. 1977) ("Inasmuch as the court was unable to reach the merits, however, the order should be modified to make it without prejudice."); *Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 576-77 (6th Cir. 2010) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice.") (citation omitted).

Specifically, "dismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice, which is to say that it doesn't foreclose, by operation of the doctrine of res judicata, a future litigation to decide the merits." *In re IFC Credit Corp.*, 663 F.3d 315, 320 (7th Cir. 2011); *see also Sachs v. Ohio Nat. Life Ins. Co.*, 148 F.2d 128, 132 (7th Cir. 1945) ("We think no authority need be cited for the proposition that a ruling is not res adjudicata when made in a case subsequently dismissed for want of jurisdiction."); Fed. R. Civ. P. 41(b) (expressly directing that dismissals for lack of prejudice are not adjudications on the merits).

In addition, when a district court exercises its discretion to decline to entertain a declaratory judgment action on the merits, the court's dismissal must be without prejudice. *See Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (modifying district court's dismissal with prejudice of a declaratory judgment action to a dismissal without prejudice because the district court declined to reach the merits); *Ohio Nat'l Life Assurance Corp. v. Riley-Hagan*, No. H–08–2285, 2008 WL 5158089, at *9 (S.D. Tex. Dec. 9, 2008) ("[N]umerous courts declining to decide declaratory judgment actions under Brillhart and Wilton [absention] have instead elected to dismiss without prejudice.") (citing numerous cases) (emphasis omitted).

For the foregoing reasons, Apple requests that the trial in this matter go forward or, in the alternative, that any dismissal be without prejudice.


Dated:  November 5, 2012

Respectfully submitted,

*/s/ Samuel F. Ernst*
Robert D. Fram (CA Bar No. 126750)
rfram@cov.com
Christine Saunders Haskett (CA Bar No. 188053)
chaskett@cov.com
Samuel F. Ernst (CA Bar No. 223963)
sernst@cov.com
Nathan E. Shafroth (CA Bar No. 232505)
nshafroth@cov.com
Danielle L. Goldstein (CA Bar No. 257486)
dgoldstein@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091

Jason C. Raofield (DC Bar No. 463877)
jraofield@cov.com
Richard Anthony Lopez (DC Bar No. 995719)
rlopez@cov.com
Matthew John Connolly (DC Bar No. 997950)
mconnolly@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

Matthew D. Powers
Matthew.Powers@tensegritylawgroup.com
Paul Ehrlich
Paul.Ehrlich@tensegritylawgroup.com
Azra Hadzimehmedovic
azra@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP

7

555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001

Catherine Cetrangolo
cetrangolo@cetralaw.com
CETRA LAW FIRM LLC
20 North Carroll Street
Madison, WI 53703
Telephone: (608) 535-9220
*Attorneys for Plaintiff Apple Inc.*

## CERTIFICATE OF SERVICE

I, Samuel F. Ernst, an attorney, do hereby certify that I caused a copy of the foregoing to be hand delivered with the Court and opposing counsel on November 5, 2012.

By: */s/ Samuel F. Ernst*
Samuel F. Ernst