UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| APPLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-178-bbc |
| | ) | |
| MOTOROLA MOBILITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTOROLA'S RESPONSE TO APPLE'S BENCH MEMORANDUM REGARDING THE COURT'S JURISDICTION AND THE NATURE OF ANY DISMISSAL**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    APPLE'S CLAIMS SHOULD BE DISMISSED *WITH PREJUDICE* ...............................2

II.    THE COURT PROPERLY DISMISSED APPLE'S CASE................................................7

    A.    Apples Request for a Non-Binding, Advisory FRAND Rate Would Not Redress Apple's Claimed Injury...............................................................8

    B.    Apple's Reliance on the Analogy of an Option Contract is Misplaced..................11

III.    APPLE'S NOVEMBER 4 PROPOSALS LACK ANY LEGAL BASIS, SINCE APPLE'S PATENTS ARE NOT AT ISSUE IN THIS CASE ..........................................12

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Apple, Inc. v. Motorola, Inc., supra*,
 2012 WL. 2376664 (N.D. Ill. June 22, 2012) ................................................................6, 8, 10

*Bird v. Penn Central Co.*,
 351 F. Supp. 700 (E.D. Pa. 1972) ..............................................................................................10

*Cherry v. F.C.C.*,
 641 F.3d 494 (D.C. Cir. 2011) ...................................................................................................10

*Chicago & Southern Air Lines v. Waterman S.S. Corp.*,
 333 U.S. 103 (1948) ......................................................................................................................9

*Clinton v. Acequia, Inc.*,
 94 F.3d 568 (9th Cir.1996) ........................................................................................................10

*H&R Block E. Enters., Inc. v. Raskin*,
 591 F.3d 718 (4th Cir. 2010) .......................................................................................................9

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
 187 F.3d 941 (8th Cir. 1999) .......................................................................................................3

*Horne v. Flores*,
 557 U.S. 433 (2009) ......................................................................................................................3

*Huddy v. F.C.C.*,
 236 F.3d 720 (D.C. Cir. 2001) ...................................................................................................10

*Klein v. Giguere, Civ. A. 09-10412-JLT*,
 2011 WL. 1740054 (D. Mass. Mar. 31, 2011) ..........................................................................4

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ......................................................................................................................8

*Microwave Acquisition Corp. v. F.C.C.*,
 145 F.3d 1410 (D.C. Cir. 1998) .................................................................................................10

*Oppedahl & Larson v. Network Solutions, Inc.*,
 3 F. Supp. 2d 1147 (D. Colo. 1998) .........................................................................................10

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
 427 F.3d 971 (Fed. Cir. 2005) .....................................................................................................6

*Textile Prods, Inc. v. Mead Corp.*,
 134 F.3d 1481 (Fed. Cir. 1998) ...................................................................................................6

*Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.*,
　　276 F. Supp. 2d 1046 (E.D. Cal. 2003)..................................................................................10

*Ysais v. Richardson, Civ. 07-00287 JB/RLP*,
　　2008 WL. 4834921 (D.N.M. July 8, 2008)............................................................................5

*Zagano v. Fordham Univ.*,
　　900 F.2d 12 (2d Cir. 1990)......................................................................................................3

Pursuant to the Court's order of November 8, 2012 (Dkt. 502), Motorola hereby responds to the bench memorandum submitted by Apple (Dkt. 499) concerning the Court's dismissal of Apple's complaint and whether that dismissal should be with prejudice.

## **INTRODUCTION**

At the conclusion of the November 5, 2012 hearing before this Court, Apple submitted a bench memorandum arguing (1) that the Court has jurisdiction to hear Apple's claims, either under Apple's original conception that the Court would impose a non-binding, advisory FRAND rate, or under Apple's more recent proposals that the Court determine a binding FRAND rate that would apply to both Motorola's and Apple's patents (notwithstanding the fact that Apple's patents are not at issue in this action); and (2) that if the Court disagrees with Apple and dismisses the case (as the Court has now done), it should do so without prejudice. *See* Dkt. 499.

This Court has since issued an order explaining in more detail the reasons why Apple's claims for relief in the form of nominal damages, specific performance and declaratory judgment cannot succeed. Dkt. 503. The dismissal of Apple's First Amended Complaint should be with prejudice.

First, the Court reached the merits of Apple's claims. On summary judgment, the Court dismissed Apple's claims directed to antitrust, unfair competition and interference with contract. Dkt. 194 (rendering judgment in favor of Motorola for Counts 5, 6 and 13). It cannot be disputed that those are dismissed with prejudice. Likewise, the Court also reached the merits of whether the FRAND contracts prohibit Motorola from seeking injunctive relief (Count 11), concluding that they do not. Dkt. 424 at pages 28-29. With respect to the remaining claims, Apple had every opportunity to make its claim for relief for the alleged breach of FRAND contracts, and it failed to do so. After summary judgment and discovery proceedings were complete, Apple dropped its claim for damages in September 2012 and sought only equitable

remedies. Apple chose to seek the extraordinary remedy of specific performance while refusing to accept the results of such a judgment; it was that gambit that necessitated the dismissal of Apple's case just as it was otherwise set to be tried. These circumstances warrant dismissal with prejudice. No litigant should be permitted to try to engineer a judgment to its liking on the eve of the trial, then seek to walk away so that it can reengineer and refile its claims elsewhere, at some later date. This Court has the discretion and authority to dismiss Apple's claims with prejudice and should do so.

With respect to the remaining aspects of Apple's bench memorandum, they mirror those made at the November 5 hearing, which this Court correctly rejected in dismissing Apple's claims. *See* Dkt. 503. They are no more persuasive now. This Court properly concluded that "Apple has not shown either that it has a right to the relief that it is seeking or because the discretionary relief it requests would have any practical effect." *Id*. at page 1.

## ARGUMENT

### I.   APPLE'S CLAIMS SHOULD BE DISMISSED *WITH PREJUDICE*

Apple's bench memorandum requests that if the Court dismisses Apple's claims—as the Court has now done, *see* Dkt. 503—it do so without prejudice. *See* Dkt. 499 at 5. In support of this request, Apple argues that "[w]here a court's dismissal of an action does not reach the merits of a claim, that dismissal must be without prejudice." *Id.* at 6 (internal quotation and citation omitted). As a threshold matter, it cannot be disputed that the Court has expressly reached the merits of many of Apple's claims, *e.g.*, Counts 5, 6, 11 and 13. See Dkt. 194 (summary judgment) and 424 (MIL order). With respect to the remaining claims, Apple had every opportunity to present its case, taxing the parties' and the Court's resources in the process, and then made its own voluntary election on the eve of the trial that prompted this dismissal. To dismiss without prejudice would be to permit Apple to press the reset button and claim a do-

over, at some later date, in some different forum, requiring expenditure of the same resources yet again. That would not be a just, fair, or sensible result in these circumstances.

Apple is correct that a dismissal for lack of jurisdiction or standing is *typically* without prejudice; the cases cited by Apple (Dkt. 499 at page 6) concern the lack of subject matter jurisdiction. This, however, is far from the typical case. Standing to sue is a threshold jurisdictional requirement in every federal action. *See Horne v. Flores*, 557 U.S. 433, 445 (2009). As such, standing issues are generally addressed at the outset of the case and jurisdictional dismissals typically occur early in the litigation, before substantial time and money have been spent. The lead case cited by Apple is such an example. *See Rambeau v. Dow*, 553 F.2d 32, 25 (7th Cir. 1977) (complaint by air traffic controllers about working conditions dismissed for lack of jurisdiction because plaintiffs had not yet exhausted administrative remedies). Here, by contrast, no such jurisdictional dismissal could have occurred at the beginning of the lawsuit, because the case as originally pleaded—a breach of contract claim seeking monetary damages—presented a justiciable controversy. Only by deciding (for strategic reasons) to drop its damages claim and instead seek only a non-binding FRAND rate to be used as a bargaining chip in ongoing negotiations did Apple, in essence, affirmatively prompt dismissal by defeating its own claims. Because Apple waited more than a year and a half after removing the case to federal court to implement this litigation strategy, both the Court and the parties have already expended significant resources in actively litigating this case and preparing it for trial. In light of the expense already incurred, it would work a grave injustice to subject Motorola to the risk of repeat litigation. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) (affirming dismissal with prejudice where plaintiff's motion for voluntary dismissal came less than ten days before trial was scheduled to begin, the case had been contested vigorously,

3

and extensive discovery had been taken, and where dismissal without prejudice "would prejudice the defendants because of the resources they had spent in preparing after a trial date was set"); *cf. Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 950-51 (8th Cir. 1999) (district court did not err in denying plaintiff's motion to voluntarily dismiss without prejudice where such dismissal would waste substantial efforts of magistrate judge and district court and prejudice defendants); *Klein v. Giguere*, Civ. A. 09-10412-JLT, 2011 WL 1740054, at *2 (D. Mass. Mar. 31, 2011) *report and recommendation adopted*, Civ. A. 09-10412-JLT, 2011 WL 1672105 (D. Mass. May 3, 2011) ("A lesser sanction in the form of a dismissal without prejudice would prejudice the DOC defendants who have expended a significant amount of time actively litigating this case. Exposing the DOC defendants to the possibility of a future suit based on the January 2009 grievance is unfair and prejudicial."). Likewise, the cases cited by Apple concerning dismissal of an action seeking a declaratory judgment (Dkt 499 at page 6) concern the situation where there is a parallel pending case on the merits in another jurisdiction, and the court dismisses the declaratory judgment without prejudice so that the parallel case can proceed. This is not the case for the claims brought by Apple.

Compounding the prejudice to Motorola was Apple's failure to come clean at the outset about its true posture in this case. This Court has already observed that it had been operating under the "misapprehension" that Apple would abide by any FRAND rate set by the Court. *See* Nov. 1, 2012 Hrg. Tr. at 22:8-12 ("THE COURT: I was laboring under a misapprehension which is that you would take the rate that I determined, and then when I got the response to the motion for clarification, I thought oh, this is a little different from what I had thought it was."); Dkt. 487 at 1 ("From this request for relief, I understood Apple to be requesting an order requiring Motorola to offer a license for its standards-essential patents to Apple and to be representing that

4

Apple was ready and willing to accept such a license, or at least that Apple would be bound by the license rate set by the court for Motorola's standards-essential patents."); Dkt. 503 at 5 ("Perhaps it should have been evident earlier in the case that Apple was seeking only a ceiling on the potential license rate that it could use for negotiating purposes, but it was not."). This belief was eminently reasonable, as it flowed naturally from Apple's representations in this case. *See* Dkt. 110 at ¶ 197(h) (requesting "[a]n order ordering Motorola to specifically perform its contractual commitment to license its essential patents on FRAND terms"); Dkt. 377 at 10 ("Accordingly, Apple seeks an order requiring Motorola to license its declared cellular standard-essential patents to Apple and setting a FRAND royalty rate for that license."); *id.* at 12 ("Accordingly, as in Microsoft, here the court may enforce Apple's 'legal right to a RAND license agreement for Motorola's standard essential patents' by determining the appropriate FRAND rate."). Only in the wake of Motorola's motion for clarification, *see* Dkt. 444, which essentially called Apple out, did Apple candidly reveal for the first time—and on the eve of trial—its true position: Apple need not accept the Court's licensing terms, which Apple itself had requested, and would *not* accept licensing as contemplated by the Court's ruling *unless* the Court ultimately agreed with Apple that the royalty rate should be $1 per phone or less. *See* Dkt. 448.

Whether Apple's conduct is characterized as gamesmanship, opportunism, strategic decision-making, or something else, the reality is that the present circumstances are all of Apple's making: Apple removed this case to federal court, pressed its FRAND licensing claims for trial, offered all indications that it would accept a FRAND license at the rate it was seeking the Court to set, and then—after all concerned had prepared extensively for trial—finally decided, when pressed, that it was not prepared to accept licensing on such terms. Even at the

last, Apple could have been true to the expectations it had founded and committed to licensing, in which event this case could have been tried. But Apple, of course, made a different decision. It should now bear the consequences of its decision in the form of dismissal with prejudice. *Cf. Ysais v. Richardson*, Civ. 07-00287 JB/RLP, 2008 WL 4834921, at *2 (D.N.M. July 8, 2008) (dismissing claims with prejudice where plaintiff "waited almost a year to move for [voluntary] dismissal of certain of the Defendants, during which time the Defendants have spent considerable time and resources responding to his claims"). Certainly Apple has had ample opportunity to establish a justiciable case, but failed to do so. *See* Nov. 5 Hrg. Tr. at 52:13-15 ("THE COURT: You've had a chance to make a case on the claims that you raised and that you amended and I don't think that you've made that case."); *id.* at 50:20-23 ("THE COURT: And that's definitely a problem in my mind. Apple had—has had 20 months to construct a case and here we are gathered for trial and it's trying to expand that case."). This failure further justifies a dismissal with prejudice. *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (holding that the district court was within its discretion to dismiss the case with prejudice where the plaintiff "already had a chance to cure the defect and failed"); *Textile Prods, Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) ("The district court correctly dismissed the infringement claim with prejudice because Textile had its chance to show standing and failed.").

Notably, Judge Posner recently addressed this same issue, between the same parties, in July and dismissed the case with prejudice. *See Apple, Inc. v. Motorola, Inc.*, 1:11-CV-08540, 2012 WL 2376664 (N.D. Ill. June 22, 2012). There, Judge Posner concluded that "[i]t would be ridiculous to dismiss a suit for failure to prove damages and allow the plaintiff to refile the suit so that he could have a second chance to prove damages. This case is therefore dismissed with

prejudice; a separate order to that effect is being entered today." *Id.* at *23. Giving Apple a second bite in the present case would be just as "ridiculous."

Apple claims that the case should be dismissed without prejudice so that it may "[raise] its theories as affirmative defenses or counterclaims in future cases." Dkt. 499 at page 5. Apple cannot dispute that it voluntarily chose to bring its claims in this Court and had every opportunity to make its case. This was the path Apple chose, along with choosing to voluntarily dismiss its claim for damages and failing to establish any entitlement to seek declaratory relief. As a consequence, Apple's claims have now been dismissed. Apple should not be allowed to file these same claims again. Dismissal with prejudice is the appropriate outcome for each of the counts alleged by Apple in its complaint. In the event that Judge Posner's dismissal of the '898 patent assertion in the Illinois case is overturned on appeal, and the issue of infringement is remanded, Apple and Motorola can litigate the matter of an affirmative defenses raised by Apple as to the timing of IPR disclosure, before the court in Illinois.

Motorola respectfully requests that the Court's dismissal of Apple's claims be *with prejudice*.

## II. THE COURT PROPERLY DISMISSED APPLE'S CASE

Although this Court has issued its order explaining in detail the reasons for dismissal, Motorola hereby responds to the points raised in Apple's bench memorandum. The Court was entirely correct in dismissing Apple's case and refusing to accommodate Apple's request to expand the pleadings to somehow encompass, via fiat, Apple's patents.

After dropping its claim for monetary damages, Apple sought only "equitable remedies and declaratory relief."[1] Dkt. 255 at 2. Specifically, Apple asked the Court to set a FRAND rate

---

[1] Apple continued to ask for nominal damages of less than $20. *See* Dkt. 255. But this Court has correctly held that "the request for nominal damages in this case is just another way of

7

for Motorola's patent portfolio that would be binding on Motorola, but that Apple would treat as non-binding and advisory. Apple reserved the right to reject the Court's rate if not to its liking, or else to voluntarily "accept" the rate, still potentially bargaining down from there. As Motorola showed in its November 4, 2012 filing, *see* Dkt. 496, Apple's proposed remedies would translate to an advisory opinion that did not redress any actual grievance or resolve any ripe case or controversy. The Court has now agreed, finding that Apple's claims cannot survive because no remedies remain available to it. Dkt. 503. Apple's bench memorandum offers no valid basis, nor even colorable basis, for reviving them.

> A. <u>Apples Request for a Non-Binding, Advisory FRAND Rate Would Not Redress Apple's Claimed Injury</u>

In its bench memorandum, Apple contends: "Motorola's argument is based on the misconception that Apple is seeking specific performance of a future licensing agreement between Apple and Motorola. That is incorrect. The contracts on which Apple has sued, and on which it seeks specific performance are *Motorola's contracts with IEEE and ETSI*." Dkt. 499 at 3 (emphasis in original). Contrary to Apple's assertion, however, Motorola is well-aware of which contracts are at issue in this case.

The constitutional minimum of Article III standing contains three elements: the actual or imminent invasion of a concrete and particularized legally-protected interest—an injury in fact; a causal connection between the defendant's actions and the injury; and a likelihood that the injury is redressable by a favorable court decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To proceed with its claim, Apple must establish both that Motorola's alleged breach of its contracts with the standard setting organizations caused Apple a concrete injury

---

asking for declaratory relief and, as explained in the November 1, 2012 order, dkt. #487, it is improper to order declaratory relief when it would have no practical effect." Dkt. 503 at 8.

8

beyond the fact of breach itself, and that Apple's proposed remedies would redress that injury. As Judge Posner recently explained:

> You can't go into federal court and say you had a contract with X and X broke it and you're really annoyed even though you sustained no injury of any sort (in fact you made money because you re-contracted at a higher price) so please give me a judgment for $1 that I can pin on my wall.

*Apple, Inc. v. Motorola, Inc.*, *supra*, 2012 WL 2376664, at *6.

The only harm identified by Apple in its trial brief is exposure to Motorola's patent infringement actions against Apple. *See* Dkt. 465 at 35. Likewise, when this Court asked Apple's counsel at the November 5, 2012 hearing to identify the injury that Apple has suffered as a result of Motorola's alleged breach of the SSO contracts, Apple's counsel responded:

> The injury that we've suffered is that we've been subjected to litigations all over the world and threats of additional litigations all over the world that we should not have been subjected to, if, in fact, [Motorola] had made a FRAND offer back in 2007 or 2010.

Nov. 5, 2012 Hrg Tr. at 61:25-62:4. So long as Apple continues to infringe Motorola's valuable intellectual property without just compensation, this potential for future infringement actions will persist. Thus, as the Court acknowledged in its October 29, 2012 Order, Apple's purported injury can be redressed only by establishing a license between the parties and the payment of a reasonable royalty by Apple. *See* Dkt. 424 at 8 ("Unless and until Motorola gives Apple a fair license to its declared-essential patents, Apple will continue to face the threat of patent infringement litigation from Motorola."). Indeed, based on Apple's representations to the Court, it appeared that a license was precisely the remedy it was seeking. *See* Dkt. 377 at 10 ("Apple seeks an order requiring Motorola to license its declared cellular standard-essential patents to Apple and setting a FRAND royalty rate for that license."); *id.* at 12 ("Accordingly, as in

*Microsoft*, here the court may enforce Apple's 'legal right to a RAND license agreement for Motorola's standard essential patents' by determining the appropriate FRAND rate.").

On the eve of trial, however, Apple revealed for the first time that it was not asking the Court for a binding license, but instead "was seeking only a ceiling on the potential license rate that it could use for negotiating purposes." Dkt. 503 at 5. Apple reserved the right to walk away from the rate if it was higher than Apple wanted. Even if Apple "volunteered" to pay the rate, Apple claimed the right to bargain down from there. Given Apple's refusal to commit to the terms of the specific performance that it seeks, any ruling by this Court setting a FRAND rate would be merely advisory and without practical effect.[2] As this Court aptly noted, "[t]he court would be resolving all of the issues raised in this case without necessarily bringing the parties any closer to a license agreement." Dkt. 503 at 6. Unable to establish a license agreement, the Court would could provide no redress for the alleged harm of future patent infringement litigation.[3] *See id.* ("In effect, Apple was asking the court to assist it in negotiating, not in

---

[2] Accordingly, the advisory opinion cases cited in Motorola's November 4 submission are directly on point. *See Chicago & Southern Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, (1948) (President's ability to disregard court's decision rendered the decision an improper advisory opinion); *H&R Block E. Enters., Inc. v. Raskin*, 591 F.3d 718, 72_ (4th Cir. 2010) (opinion was advisory where plaintiff reserved the right to ignore federal court ruling and proceed to state court to further litigate its contention).

[3] Apple's only response in its bench memorandum is its claim that "the harm Apple has sued to redress is the harm of not receiving a FRAND offer from Motorola." Dkt. 499 at 5. The mere occurrence of breach does not qualify as a "concrete and particularized" injury, however, as required for Article III standing. *See Apple, Inc. v. Motorola, Inc.*, *supra*, 2012 WL 2376664, at *6. Rather, as noted above, the alleged injury in this case is the threat of continued patent infringement litigation. A non-binding, advisory FRAND rate will not correct that harm. This case is therefore analogous to the redressability cases cited in Motorola's November 4 brief. *See Microwave Acquisition Corp. v. F.C.C.*, 145 F.3d 1410, 1413 (D.C. Cir. 1998) (plaintiff failed redressability test because court knew of no action it could take to redress claimed injury); *Huddy v. F.C.C.*, 236 F.3d 720, 724 (D.C. Cir. 2001) (where "we have no reason to believe that [the appellant] would even reap his desired [relief], he flunks the redressability criterion"); *Cherry v. F.C.C.*, 641 F.3d 494, 499 (D.C. Cir. 2011) (redressability requirement not met because ultimate redress would depend on factors beyond the court's control).

putting the parties' dispute to rest.").[4] In other words, this Court's remedy—specification of a licensing rate—would not have guaranteed redress for Apple's claimed injury—exposure to claims by Motorola for patent infringement—for there was every prospect that Apple would remain unlicensed and susceptible to suit for continuing infringement.

B.  Apple's Reliance on the Analogy of an Option Contract is Misplaced

Both in its bench memorandum and at the November 5 hearing, Apple analogized Motorola's SSO obligations to an option contract and argued that the court "can order specific performance of an option contract . . . [a]nd that's not advisory, that is completing the circle of the agreement that the option contract created." Nov. 5 Hrg. Tr. at 54:21-55:2. As the Court has indicated, however, "Apple has not cited any authority for this proposition and it has never explained why an order that did no more than 'complete a circle' would justify an order of specific performance." Dkt. 503 at 8.

Moreover, the question of whether specific performance is an appropriate remedy for a claimed breach of an option contract is separate and independent from the question of whether there exists a redressable harm for purposes of Article III. Specific performance of an option contract may, in some instances, fully resolve the dispute between the parties. In many cases,

---

[4] Apple's attempt to distinguish Motorola's ripeness cases likewise fails. As the Court itself recognized, "Apple has not explained how it is possible to determine a rate without knowing the answers to such questions as how a cross-license to the other party's patents may affect that rate or what the scope of the license is (a worldwide license will be more valuable than a license to sell in only one country or only a few countries); what guarantees are incorporated into the agreement; the length of the agreement; or the frequency of payments. In effect, Apple is asking the court to assess one part of a complex contract that has yet to be negotiated." The Court's dismissal was thus proper, because there is no contract in place and Apple would not be bound by any contractual terms this Court might set. *See Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir.1996); *see also Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.*, 276 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003); *Bird v. Penn Central Co.*, 351 F. Supp. 700, 701-02 (E.D. Pa. 1972); *Oppedahl & Larson v. Network Solutions, Inc.*, 3 F. Supp. 2d 1147, 1164 (D. Colo. 1998).

once performance of the option is ordered, a plaintiff will elect either to accept the terms of the underlying contract—such terms having been established in advance or else imposed by the Court—and proceed with the contract, or else reject the terms and walk away from the deal entirely.  Either way, the dispute will have ended.  Here, by contrast, if Apple is unhappy with the Court's FRAND rate, there is no real prospect that Apple will halt production of the iPhone. Apple's infringement of Motorola's patents will persist, license negotiations between the parties will continue, and the possibility of future litigation will continue to loom no differently than it does now.  Indeed, even if Apple was to get its preferred rate of $1 per phone, that still would not end the dispute, as Apple would claim the right to bargain down from there.

Notwithstanding Apple's effort to compare Motorola's obligations to an option contract, the fact remains that its requested remedy would have no practical effect on the parties' dispute. The Court's dismissal of Apple's claims was therefore proper.

### III. APPLE'S NOVEMBER 4 PROPOSALS LACK ANY LEGAL BASIS, SINCE APPLE'S PATENTS ARE NOT AT ISSUE IN THIS CASE

Pointing to its November 4, 2012 filing, Apple's bench memorandum argues that "Apple has now proposed two alternatives whereby both Apple and Motorola would be bound to license each other's standards-essential patents at a FRAND rate."  Dkt. 499 at 2.  According to Apple, these November 4 proposals "moot any argument that Apple seeks an advisory opinion."  *Id.*

The obvious flaw fatal to both of Apple's proposals is that this Court lacks any legal basis to establish a FRAND rate for Apple's standards-essential patents, for those patents are not at issue in this case.  By Apple's own admission, Motorola has no obligation to "pay a FRAND rate for Apple's standards-essential patents (because Motorola ha[s] not brought a similar action seeking to establish a FRAND rate for Apple's patents)."  Dkt. 497 at 2; *see also* Nov. 5 Hrg. Tr. at 5:21-23 ("And you're correct that claim is not in this case because Motorola chose not to bring

12

it."); *id.* at 72:20-22 ("*It would not be the current pleading*, but it would be a pleading that would say the Court would set a rate for both and each would pay it . . .") (emphasis added). Apple cites no authority, and Motorola knows of no authority, suggesting that a plaintiff can conjure a justiciable case or controversy simply by positing one and then importing it from outside the pleadings.[5]

    Legal defects aside, Apple's proposals are also contrary to public policy. If the Court were to accept Apple's invitation to engage in the complex and controversial process of imposing a FRAND rate, it would open the floodgates to other companies filing contract-based declaratory judgment actions and burdening this Court with similar requests for an advisory rate that in many cases would not resolve their disputes. Though Apple seeks to frame its recent proposals for binding cross-licenses as a fair and reciprocal alternative, the circumstances of this case—in which both parties are large, prominent corporations with extensive standards-essential patent portfolios available for cross-licensing—are something of a fortuity. Not all prospective licensees, and not all disputes over FRAND licensing, will be situated the same way. In many cases, the plaintiffs who sue over FRAND will simply complain of the patent-holders' refusal to license, without holding any standards-essential patents of their own. Thus, the question that was before the Court is one to which Apple has no satisfying answer: when a prospective licensee sues over failure to license a standards-essential patent on FRAND terms, to the point of having the Court set the FRAND rate, shouldn't that prospective licensee be committed to take the license at the resulting rate, period and full stop? To hold otherwise would invite a regime of

---

    [5] Apple is also wrong in suggesting that it would be "the simplest thing" for the parties to amend the claims, so that the Court would have a request for a FRAND rate for Apple's portfolio before it. *See* Nov. 5 Hrg. Tr. at 51:22-52:1. Motorola cannot file a claim that does not yet exist. Motorola cannot allege that Apple breached its SSO obligations (and correspondingly, cannot request as a remedy that the Court set a FRAND rate for a cross-license), since Apple has not sued Motorola on its standards-essential patents and failed to offer a FRAND rate.

one-sided judicial intervention, where only the patent holder would face any binding obligation, while the infringer is free to return to its ongoing infringement.

Motorola remains committed to reaching licensing terms—including terms for a cross-license on Apple's patents. But the instant action, as pleaded by Apple, cannot achieve that goal. As Motorola suggested at the November 5 hearing, binding arbitration provides the best vehicle for resolving the parties' global disputes. In its order dismissing Apple's claims, the Court agreed that "[i]f the parties really wish to resolve this licensing dispute, [binding arbitration] is the obvious solution." Dkt. at 12. Motorola stands ready to engage in constructive discussions with Apple toward that end.

Respectfully submitted,

DATED: November 14, 2012                    MOTOROLA MOBILITY LLC

                                            By:  */s/ Stephen A. Swedlow*
                                                    Stephen A. Swedlow

Scott W. Hansen                             David A. Nelson
Lynn M. Stathas                             Stephen A. Swedlow
Lisa Nester Kass                            Quinn Emanuel Urquhart & Sullivan, LLP
Reinhart Boerner Van Deuren S.C.            500 West Madison Street, Suite 2450
22 East Mifflin Street                      Chicago, IL 60661
P.O. Box. 2018                              Telephone: (312) 705-7400
Madison, WI 53701-2018                      Facsimile: (312) 705-7401
Telephone: (608) 229-2200                   Email: davenelson@quinnemanuel.com
Facsimile: (608) 229-2100                          stephenswedlow@quinnemanuel.com
100 North Water Street, Suite 170
Milwaukee, WI 53202                         Edward J. DeFranco
Telephone: (404) 298-1000                   Alexander Rudis
Facsimile: (404) 298-8097                   51 Madison Avenue, 22nd Floor
Email: shansen@reinhartlaw.com              New York, NY 10010
       lstathas@reinhartlaw.com             Telephone: (212) 849-7000
       lkass@reinhartlaw.com                Facsimile: (312) 849-7100
                                            Email: eddefranco@quinnemanuel.com
                                                   alexanderrudis@quinnemanuel.com

Brian C. Cannon
Meghan Bordonaro
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email:  briancannon@quinnemanuel.com
             meghanbordonaro@quinnemanuel.com

*Attorneys for Defendant Motorola Mobility, LLC*