```
              UNITED STATES DISTRICT COURT

           FOR THE WESTERN DISTRICT OF WISCONSIN

 * * * * * * * * * * * * * * * * * * * * * * * * * * * *

  APPLE, INC.,

        Plaintiff,

   -vs-                            Case No. 11-CV-178-BBC

  MOTOROLA MOBILITY, INC.,         Madison, Wisconsin
                                   May 19, 2011
        Defendant.                 10:05 a.m.

 * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
      HELD BEFORE DISTRICT JUDGE BARBARA B. CRABB,


 APPEARANCES:

 For Plaintiff Apple:  Weil Gotschal & Manges
                       BY:  ATTORNEY PENNY REID
                       767 Fifth Avenue
                       New York, New York  10153

                       Godfrey Kahn
                       BY:  ATTORNEY JAMES PETERSON
                       One East Main Street, Ste. 500
                       Madison, Wisconsin  53703

 For Defendant Motorola:  Quinn Emanuel
                       BY:  ATTORNEY KATHLEEN SULLIVAN
                            BRIAN CANNON
                            MEGHAN BORDONARO
                       555 Twin Dolphin Drive, 5th Floor
                       Redwood Shores, California  94065

                       Reinhart Boerner Van Deuren, S.C.
                       BY:  ATTORNEY LYNN STATHAS
                       P.O. Box 2018
                       Madison, Wisconsin  53701

              Lynette Swenson   RMR, CRR, CBC
                    Federal Court Reporter
   U.S. District Court   120 N. Henry St., Rm. 520
           Madison, WI  53703   (608) 255-3821
```

1          THE COURT:  Good morning, Counsel.  This is
2  Judge Crabb.  May I have the appearances.
3          MS. SULLIVAN:  Good morning, Your Honor.  For
4  Motorola, this is Kathleen Sullivan from Quinn Emanuel,
5  together with my colleagues Brian Cannon and Meghan
6  Bordonaro.
7          THE COURT:  Thank you.
8          MS. RIED:  Good morning, Your Honor.  This is
9  Penny Reid with Weil Gotshal on behalf of Apple.  And on
10  the line is also local counsel Jim Peterson.
11          THE COURT:  Thank you.
12          MS. SULLIVAN:  Your Honor, I apologize.  It's
13  Kathleen Sullivan.  Lynn Stathas as local counsel is on
14  the line for Motorola.
15          THE COURT:  Okay.  We have two proposals about
16  severing and realigning the 11-178 case.  I have a
17  couple of questions about the proposals starting with --
18  and this goes back to the hearing that was held a few
19  weeks ago.  At that point I decided that Apple does not
20  have a likelihood of success on the merits of its breach
21  of contract claims and I also decided it would not
22  suffer irreparable harm without a preliminary injunction
23  and it made more sense for it to pursue its *FRAND*
24  arguments and defenses in the ITC proceeding.
25      Turning to Apple, why in light of this decision

1  would you be arguing that I should grant your proposal
2  for an expedited schedule to adjudicate the FRAND
3  claims?
4         MS. REID:  Okay.  Thank you, Your Honor.
5  Again, this is Penny Reid.  The reason is because the
6  ITC cannot hear the claims that we have currently
7  pending before Your Honor.  Specifically, the ITC can't
8  hear any of the breach of contract, the antitrust, any
9  of those type of claims, and under Sec. 1337(c), it
10 specifically granted Apple the statutory right to bring
11 these claims and to proceed in a federal district court,
12 and that's the reason we believe we should go ahead and
13 proceed in the 178 action.
14     We're not really clear, Your Honor, how it's even
15 possible that you could do what Motorola is asking, and
16 that is to sever the '223 and '697 patents and put them
17 in the 661 action, which is stayed.  And that is because
18 that would essentially deprive Apple of the statutory
19 right that it was granted under Section 1337(c).
20     The DC circuit actually was faced with a very
21 similar situation in *Ansell Healthcare v. Simpson*, 567
22 F.Supp 2d 196, and in that case the DC court found that
23 it couldn't transfer the actions into a case that was
24 stayed, and it was actually stayed for the same reasons
25 that 661 is stayed.  And the Court found that that would

1  deprive the plaintiff in that action of its statutory
2  rights under 1337. So that's the first reason we think
3  Motorola's request is not proper.
4      The second reason is we're not sure how severing
5  them and defining them into different cases would be
6  proper if you consider that it would essentially have to
7  litigate the same claims twice in two different actions
8  because it's antitrust, breach of contract. All of
9  those are related to all seven of these patents.
10     I think there might be some confusion because in
11 the ITC, there is a FRAND affirmative defense, but that
12 FRAND affirmative defense is basically an estoppel
13 claim. It is not the same claims that we have asserted
14 in the counterclaims and that we were entitled to assert
15 under 1337. The ITC will never reach the claims that we
16 have before your court. Even if you put them into 662,
17 ultimately you're going to have to look at them because
18 they're never going to be decided by ITC.
19         THE COURT: Ms. Reid --
20         MS. REID: Does that answer your question?
21         THE COURT: No, I still have some more.
22         MS. REID: Okay.
23         THE COURT: You're saying that it would be
24 necessary to litigate some of these things twice, but
25 what I'm wondering about is why not severing and

1  realigning wouldn't -- if I didn't do that, wouldn't I
2  be trying these things three times, a lot of them?
3            MS. REID:  No.  If you did sever and realign,
4  you would be trying them -- you would be trying them
5  twice.  If you just proceed with the counterclaims alone
6  in the 178, you will just be trying them in the 178.
7  They are not the same claims that are in 661 and 662.
8  Again, in 661 and 662, all that is pending in those
9  actions is an affirmative defense for estoppel.  What we
10 have in 178 are separate claims that are for breach of
11 contract, unfair competition, and they involve different
12 facts, different witnesses, and different claims in
13 total.
14     If you do decide those upfront, it will resolve the
15 infringement action and that's why -- that was the
16 purpose of the IPR policies, that the whole design of
17 those was to try to avoid what we are now involved in
18 which is essentially a patent holdup; that if you would
19 decide that Motorola has failed to provide a FRAND offer
20 and therefore they've breached their contract, you can
21 avoid all of the infringement actions that are currently
22 pending as to these essential patents.  Now it won't
23 apply to the other ones that aren't essential patents,
24 but it resolves all of the issues in 178.
25            THE COURT:  But you're not prepared to say that

1 you would drop your invalidity contentions and
2 infringement if my determination was that Motorola was
3 required to grant a FRAND license.
4 　　　　　MS. REID: No, we're not, because we believe
5 they are two different issues, Your Honor. We believe
6 that Motorola's obligation to grant a FRAND license
7 arises upon their assertion that the patents are
8 essential and that isn't our assertion. We've never
9 agreed with that, but that's their obligations under the
10 IPR policies. And if you hear explanations throughout
11 the trial you will learn arise upon their assertion of
12 essentiality, not upon our acquiescence in that
13 conclusion.
14 　　　But if Your Honor determines that there is a FRAND
15 rate or they have failed to issue a FRAND rate, we would
16 avoid all of the infringement actions on those essential
17 patents.
18 　　　　　THE COURT: Could you explain exactly what
19 you're saying there? I thought that was what I had
20 asked you. Would you drop your invalidity contentions
21 and infringement claims if the determination was that
22 Motorola is required to grant a FRAND license?
23 　　　　　MS. REID: I think at that point, if there is a
24 FRAND license in place, we know that there is no longer
25 -- once a license is in place, there is no longer an

1  infringement action because we will have a license for
2  the patent.
3       THE COURT:  And you'd be a happy with a license
4  that was for $100,000 a year on patents that you think
5  are invalid?
6       MS. REID:  I mean I think, Your Honor, again, I
7  think it depends on the specific claim, whether it's a
8  breach of contract, whether it's an antitrust as to
9  exactly when the FRAND rate -- what it applies to.  But
10 I believe once Your Honor -- once a license is in place
11 and it is a FRAND license, there will no longer be a
12 particular -- there won't be an infringement action.
13      THE COURT:  Thank you.  Ms. Sullivan, any
14 comments on these questions I've asked of Apple?
15      MS. SULLIVAN:  Yes, Your Honor.  We agree very
16 much with Your Honor's statements at the conclusion of
17 the preliminary injunction hearing that it is
18 appropriate here to allow the ITC action to proceed and
19 we believe you should grant our motion to sever and
20 consolidate so that we avoid the result of this
21 splintering of actions.  What Apple is trying to do here
22 is create a fourth action while there are already three
23 pending actions, one in the ITC and three in your court,
24 621 and 622 actions, and they're trying to achieve
25 through this expeditious request the very same result

1  that Your Honor properly denied in denying the
2  preliminary injunction and that is to try to have an
3  end-run around a pending ITC proceeding that Congress
4  intended; as Your Honor noted at the PI hearing, that
5  Congress intended to proceed rapidly, and that is
6  scheduled to be completed now -- tried in July,
7  completed to an initial determination by November 2011
8  and to a final determination by March 2012.  So we don't
9  think there should be an expedited separate forced
10 FRAND/unfair competition claim that leap frogs these
11 existing actions.
12      In specific answer to Your Honor's last question,
13 we disagree with Apple and Motorola believes, as we've
14 argued to Your Honor, that you can't get to the FRAND
15 issue until there's a determination that an essential
16 patent has been infringed.  Your Honor correctly notes
17 that Apple is denying that our patents are essential to
18 the standard.  Apple is denying that it infringes and it
19 is denying that our patents are valid and therefore it's
20 premature to get to a FRAND question because FRAND
21 licenses are obligations that can attach only when there
22 is an infringement of an essential patent.
23      So we believe, Your Honor, that the proper sequence
24 here is to allow the patent infringement actions that
25 are already pending on claims and counterclaims, the

1  ITC, and in the 661 and 662 action to proceed in logical
2  sequence.  ITC first, 661 proceeding is stayed pending
3  the proceeding of the ITC proceeding, and 662, the
4  action concerning the nonITC patent can proceed in the
5  ordinary course.
6  Your Honor, the fact that Apple has asserted these
7  FRAND defenses in the ITC proceeding really suggests
8  very clearly that the ITC proceeding may simplify all of
9  the issues that Apple is raising here.  It will simplify
10 the issues of patent infringement and validity; it will
11 simplify the issue of essentiality, and it will simplify
12 the FRAND issues as well.  What Ms. Reid is suggesting
13 is that there may be remedies for any FRAND issue that
14 need to be obtained in federal district court because
15 the ITC can't grant certain remedies.  But having
16 asserted FRAND affirmative defenses in the ITC, Apple
17 really should not be heard to say that -- it needs to
18 come argue FRAND separately and first in this Court.
19 So Your Honor, just one last point.  We don't think
20 we're suggesting any deprivation of Apple's rights under
21 1337.  To the contrary, Apple is already in the 661 and
22 662 actions in your court by virtue of 1337.  What we're
23 suggesting is that there simply be a logical sequence in
24 which the reasons of judicial economy and respect for
25 the ITC proceeding, as Your Honor has already noted, the

1  ITC proceeding will move along in due course. Apple is
2  free to assert FRAND in the ITC proceeding as it has,
3  then the 661 action, once it's unstayed, if there's
4  anything else to litigate, that it proceed in this
5  Court; and 662, which is independent of the ITC,
6  declared essential patents that are in the pending ITC
7  action, that can proceed in due course. We're not
8  depriving Apple of any 1337 rights, we're suggesting a
9  sequence for those 1337 rights to be exercised.
10      And last, Your Honor, just if you were to disagree
11 with this, our suggestion, then we would respectfully
12 suggest that you would then have to reach our motion to
13 dismiss this pending 178 action because we don't think
14 it's right. We think Your Honor correctly noted at the
15 preliminary injunction hearing that there are serious
16 questions of rights and that's where, in Your Honor's
17 words, Apple is trying to jump to the end of the case at
18 the beginning. In other words, it's trying to suggest
19 that there are FRAND obligations before we determine
20 whether there is any infringement of a valid and
21 essential patent.
22      So for all those reasons, Your Honor, we would
23 respectfully suggest that the proper course here, very
24 similar to what Your Honor did in the *SanDisk* case,
25 would be to sever the actions -- sorry -- sever the

patents, the '223 and '679 patents that are alleged here and consolidate those claims, all of those claims into the 661 action that is subject to the stay which Apple jointly sought pending the conclusion of the ITC action.

And then second with respect to the other five patents, '712, '230, '193, '559 and '898, those should be severed and consolidated with the pending 662 action and any FRAND arguments can be raised in due course.

And just last, Your Honor, Apple asserts that well, there are these unfair competition and antitrust claims that crosscuts the patent. We respectfully disagree. We think those can be severed and consolidated along with the underlying contract claims because determinations of antitrust or unfair competition will depend on conclusions about the patents. Obviously if there's a valid patent that's been infringed, that will have an effect on determination of whether anyone has violated the competition laws. It violates the competition laws by asserting your valid intellectual property.

THE COURT: Let me -- I just want to be sure I understood what you were saying about those particular claims. The deceptive actions, the unfair competition, the declaratory judgment, tortious interference with contract, are you saying they could be part of both

1  cases or that --
2           MS. SULLIVAN:  Yes, Your Honor.
3           THE COURT:  -- they would be part of the 662?
4           MS. SULLIVAN:  Your Honor, we think they can be
5  part of both cases.  So Your Honor, I guess what I'd
6  like to suggest is that we think they can be severed and
7  put in both cases or they could all be put in the 661
8  action and subject to the stay because we think that the
9  unfair competition and tortious interference claims will
10 be influenced or simplified by the ITC action for the
11 same reasons as the patent infringement claims will be
12 simplified and clarified by the ITC action.
13          THE COURT:  And if I were to decide just not to
14 do anything about the 178 case in terms of severing,
15 consolidating, realigning, whatever, you're saying that
16 you would move to dismiss it as not ripe?
17          MS. SULLIVAN:  That's correct, Your Honor.  We
18 have a pending motion before Your Honor --
19          THE COURT:  Right.
20          MS. SULLIVAN:  -- that's now been fully brief
21 in which we have moved to dismiss it, both as unripe and
22 as failing to state a claim with sufficient
23 particularity and under *Twombly* and so forth with
24 respect to the contract claims as well as the other
25 claim.  So we don't think you need to reach the motion

1  to dismiss.  If you agree with our procedure to sever
2  and consolidate, that will simply postpone Apple's
3  current contentions regarding FRAND and just postpone
4  them to another day.  But if you were to disagree with
5  us, then we would respectfully suggest that you would
6  have to reach the pending motion to dismiss unless you
7  were to simply decide to stay the entire proceedings
8  pending the outcome of the ITC proceeding.
9         THE COURT:  And it's your belief that that
10 motion would dispose of the entire 178 case, if granted?
11        MS. SULLIVAN:  We do, Your Honor.
12        THE COURT:  Okay.  And Ms. Reid, any comments
13 on the questions that I've asked?
14     (Phone rings in background)
15        MS. REID:  I apologize.  That's my other line.
16 Again, I would just try to explain that I think what is
17 happening is there is a confusion between '659, which
18 allows a plaintiff -- which allows a defendant to say
19 they will stay a proceeding in the ITC or a separate
20 district court proceeding, to allow the infringement
21 claim in the ITC to proceed, which is completely
22 consistent with what we agreed to do with Motorola in
23 1337 which was actually enacted in the same legislation
24 as 1659 which grants Apple the right to bring separate
25 actions that are not infringement-based; that are

1  counterclaims that a plaintiff or a defendant is
2  entitled to bring in a federal district court.  They
3  were both in the same legislation.  They were enacted at
4  the same time, recognizing that you don't want to
5  duplicate what the ITC is doing.
6      We're in complete agreement that we still want to
7  keep the infringement in 661 stayed while ITC proceeds.
8  But again, this is a separate action, separate claims
9  under 1337 and under the holding in *Ansell*, which the DC
10 district court recognized is a separate matter and those
11 should be allowed to proceed.  Whether they proceed in
12 the 178 or whether they all go into the 662, again, we
13 don't think that's the best thing.  We think they should
14 go by themselves in the 178, and once they're resolved,
15 I think Your Honor will find they've resolved a lot of
16 other issues.  But that's my final position.
17     Thank you, Your Honor.
18         THE COURT:  Thank you.  Anything else from
19 either side?
20         MS. SULLIVAN:  Not unless you have questions,
21 Your Honor.  We think it's very clear that we're not
22 depriving Apple of its 1337 lines, we're simply
23 suggesting, in line with *SanDisk* and in line with the
24 statutory scheme, that there be a proper sequence with
25 respect to any district court claims and that the ITC

1 claims and defenses be resolved first, and therefore we
2 think the proper course is to sever and consolidate
3 along the lines we've urged Your Honor.
4         THE COURT: Thank you. And Ms. Reid, anything
5 further?
6         MS. REID: No, Your Honor. Thank you.
7         THE COURT: Thank you. I'll try to get
8 something out fairly promptly. Thank you for your help.
9         MS. SULLIVAN: Thank you, Your Honor.
10         MS. RIED: Thank you.
11         THE COURT: Good-bye.
12     (Proceedings concluded at 10:26 a.m.)

13

14                     * * * * *

15     I, LYNETTE SWENSON, Certified Realtime and Merit
Reporter in and for the State of Wisconsin, certify that
16 the foregoing is a true and accurate record of the
proceedings held on the 19th day of May 2011 before the
17 Honorable Barbara B. Crabb, District Judge for the
Western District of Wisconsin, in my presence and
18 reduced to writing in accordance with my stenographic
notes made at said time and place. Dated 2-1-13.
19

20

21             /s/_____

22              Lynette Swenson, RMR, CRR, CBC
                    Federal Court Reporter
23

24 The foregoing certification of this transcript does not
apply to any reproduction of the same by any means
25 unless under the direct control and/or direction of the
certifying reporter.